## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| SEBASTIAN CORDOBA, individually and on behalf of all others similarly-situated, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO.: |
| vs. | ) ) ) | _____ |
| DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc., JOHN DOE 1, and JOHN DOE 2, | ) ) ) ) | Complaint – Class Action |
| Defendants. | ) ) | Jury Trial Demanded |

_____

## CLASS ACTION COMPLAINT

**COMES NOW**, Sebastian Cordoba, individually and on behalf of all others similarly-situated, and files this Class Action Complaint against DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc. (collectively, "DIRECTV"), John Doe 1, and John Doe 2 (collectively the "Co-Defendants"), and shows this Honorable Court, upon personal knowledge, investigation of counsel, and/or information and belief, as follows:

## THE PARTIES AND CLAIMS

1.

Plaintiff Sebastian Cordoba is a resident of the State of Georgia and this District.

2.

Plaintiff Sebastian Cordoba seeks certification of a national class against the Co-Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the rules and regulations promulgated by the Federal Communication Commission, 47 C.F.R. § 64.1200 (the "FCC Rules"), and the Telemarketing Sales Rule, 16 C.F.R. § 310.4 (the "Telemarketing Sales Rule"), by the Co-Defendants and their present, former, and/or future direct and indirect predecessors, parent companies, subsidiaries, affiliates, agents, and/or related entities. The Co-Defendants have violated the TCPA, FCC Rules, and Telemarketing Sales Rule, by, *inter alia*, making unsolicited and unauthorized telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated on their cellular telephones via an "automatic telephone dialing system" (the "ATDS"), as described and defined in 47 U.S.C. § 227(a)(1).

3.

Co-Defendant DIRECTV is a California limited liability company with its principal place of business located at 2260 E. Imperial Highway, El Segundo, California 90245. Said Co-Defendant may be served with process by delivering a copy of the Summons and Complaint to its duly-appointed registered agent, same being Corporation Service Company, 40 Technology Parkway South Suite 300, Norcross, Gwinnett County, Georgia 30092.

4.

Upon information and belief, effective December 22, 2011, DIRECTV, Inc. merged into Co-Defendant DIRECTV, with the latter becoming the surviving limited liability company. By virtue of this merger, Co-Defendant DIRECTV assumed, and succeeded to, all of the liabilities of DIRECTV, Inc., including liability for DIRECTV, Inc.'s violations of the TCPA and the FCC Rules.

5.

Upon information and belief, after announcing the deal in early 2014, AT&T acquired Co-Defendant DIRECTV for the purchase price of $49,000,000,000 on or about July 24, 2015, following the Federal Communications Commission's approval of the acquisition. To the undersigned's knowledge, no certificate of

merger has been filed by Co-Defendant DIRECTV, and it remains a valid legal entity subject to suit.

6.

Co-Defendant John Doe 1 is a telemarketer which has, upon information and belief, contacted Plaintiff Sebastian Cordoba as an authorized representative, and on behalf, of Co-Defendant DIRECTV with the express purpose of marketing and advertising the goods and services of said Co-Defendant in violation of the TCPA.

7.

Co-Defendant John Doe 2 is a telemarketer which has, upon information and belief, contacted Plaintiff Sebastian Cordoba as an authorized representative, and on behalf, of Co-Defendant DIRECTV with the express purpose of marketing and advertising the goods and services of said Co-Defendant in violation of the TCPA.

8.

At all times relevant hereto, Co-Defendants John Doe 1 and 2 were authorized telemarketers and agents of Co-Defendant DIRECTV, acted within the course and scope of an agency relationship with said Co-Defendant, and were contracted by said Co-Defendant to promote said Co-Defendant's goods and services.

9.

Pursuant to the provisions of 47 C.F.R. § 64.1200(d), liability for violations of the TCPA, the FCC Rules, and the Telemarketing Sales Rule is placed on both the businesses that place the unlawful calls, as well as businesses on whose behalf, and for whose benefit, the calls are placed.

## JURISDICTION AND VENUE

10.

This Court has subject matter jurisdiction over the above-styled class action pursuant to 28 U.S.C. § 1331, as the claims set forth herein arise under the Federal laws codified in the TCPA and the FCC Rules.

11.

This Court has subject matter jurisdiction over the above-styled action pursuant to 28 U.S.C. § 1332(d)(1)(D)(2)(A), because Plaintiff Sebastian Cordoba is a citizen of a different state than Co-Defendant DIRECTV, said Plaintiff alleges a national class for which at least one other member will be a citizen of a different state than said Co-Defendant, and the matter in controversy exceeds $5,000,000, as the proposed Class, the proposed National Do-Not-Call Registry (the "NDNC") Class, and the proposed Internal Do-Not-Call (the "IDNC") Class, defined *infra*,

consists of tens of thousands of claimants, each of which are entitled to up to $1,500 in statutory damages for each violation of the TCPA and the FCC Rules.

12.

The Court has personal jurisdiction over Co-Defendant DIRECTV because, *inter alia*, said Co-Defendant (1) transacts business in the State of Georgia, (2) committed tortious acts within this State, (3) maintains a registered agent within this State, (4) committed tortious acts outside this State which caused injuries to persons within this State, (5) regularly solicits and transacts business in this State, and/or (6) derives substantial revenues from goods and services placed into the stream of commerce in this State. Accordingly, Co-Defendant DIRECTV has sufficient minimum contacts with the Northern District of Georgia to subject it to the personal jurisdiction of this Court, and the claims set forth herein arise from the foregoing actions of Co-Defendant DIRECTV.

13.

Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b), (c), and (d), because Co-Defendant DIRECTV is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the above-styled action is commenced.

14.

Jurisdiction and venue are proper as to Co-Defendants John Doe 1 and 2 because said Co-Defendants are joint tortfeasors with Co-Defendant DIRECTV.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227, THE FCC RULES, 47 C.F.R § 64.1200, AND THE TELEMARKETING SALES RULE, 16 C.F.R § 310.4

15.

In 1991, Congress enacted the TCPA in an effort to regulate the growing telemarketing industry and to deter and curb the invasion of the publics' privacy by placing restrictions on unsolicited telephone calls.

16.

The TCPA and the FCC Rules make it unlawful for companies, and telemarketers acting on their behalf, to initiate "any telephone call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any . . . cellular telephone service . . ." 47 C.F.R. § 64.1200(a)(1)(iii); see also 47 U.S.C. § 227(b)(1)(A)(iii).

17.

There exists a private right of action entitling claimants to statutory damages

of up to $500 per negligent violation and $1,500 per willful or knowing ATDS

violation.

> A person or entity may . . . bring an action in an appropriate Court of that
> State-- (A) an action based on a violation of this subsection [47 U.S.C §
> 227(b)(3)] or the regulations prescribed under this subsection to enjoin such
> violation, (B) an action to recover for actual monetary loss from such a
> violation, or to receive $500 damages in damages for each such violation,
> whichever is greater, or (C) both such actions. If the court finds that the
> defendant willfully or knowingly violated this subsection or the regulations
> prescribed under this subsection, the court may, in its discretion, increase the
> amount of the award to an amount equal to not more than 3 times the amount
> available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

18.

In addition, the TCPA and FCC Rules make it unlawful to "initiate any

telephone solicitation to . . . a residential telephone subscriber who has registered

his or her telephone number on the national-do-not-call registry of persons who do

not wish to receive telephone solicitations that is maintained by the Federal

Government." 47 C.F.R. § 64.1200(c)(2).

19.

47 U.S.C. § 227(c)(5) similarly provides a private right of action to

consumers for violations of the prohibition on calling persons on the NDNC for

statutory damages up to $500 per negligent violation, and up to $1,500 for each willful or knowing violation.

20.

In addition, the TCPA, FCC Rules, and the Telemarketing Sales Rule require that if

> a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.

47 C.F.R. § 64.1200(d)(3); *See also* 16 C.F.R. § 310.4(b)(1)(iii)(A).

21.

There exists a private right of action entitling claimants to statutory damages of up to $500 per negligent violation and $1,500 per willful or knowing NDNC or IDNC violation.

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State – (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions . . . If the court finds that the defendant willfully or knowingly violated the regulations

prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5)(A)-(C).

22.

Accordingly, in addition to the restrictions on the use of an ATDS, the TCPA instructs the FCC to issue regulations concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. See 47 U.S.C. § 227(c)(1). The FCC issued regulations prohibiting persons or entities from initiating any call for telemarketing purposes to a residential telephone subscriber (including cell phones) unless the person or entity has instituted certain listed procedures for maintaining a do-not-call list. 47 C.F.R. § 64.1200(d).

23.

These FCC Rules require, *inter alia*, the telemarketer to (1) provide the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; (2) maintain a do-not-call list; and (3) honor a person's request not to be called. See 47 C.F.R. 64.1200(d)(3), (4), and (6).

24.

Claimants may recover statutory damages of up to $1,500.00 for willful or

knowing violation of the ATDS requirements under 47 U.S.C. § 227(b)(3) and up

to $1,500.00 statutory damages for willful or knowing violation of do-not-call-list

requirements under 47 U.S.C.§ 227(c)(5), even if both violations occurred in the

same telephone call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d

1101, 1106 (11th Cir. 2015) (stating "[i]n plain terms, the statute allows a person to

recover '$500 in damages for each' 'violation of this subsection'. *Id.* §227(b)(3).

Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or

'fax.'") (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) (holding

that a plaintiff can recover under section 227(b)(3) and section 227(c)(5) even

though both violations arose from the same call.).

25.

Under the TCPA and pursuant to the FCC's January 2008 Declaratory

Ruling, the burden is on the Co-Defendants to demonstrate that Plaintiff Sebastian

Cordoba and the members of the Class, the NDNC Class, and the IDNC Class, as

defined *infra*, gave their prior express written consent to an automatic telephone

dialing system call to their cell phone with the meaning of the TCPA.

26.

The TCPA and the FCC Rules impose liability on a person or entity where calls are made on its behalf. The FCC has found that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Indeed, vicarious liability is a critical feature of the TCPA, which does not permit a party to avoid liability by placing it on its expressly, impliedly, or apparently authorized agents. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. And Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27.

As set forth below, due to the number of lawsuits brought by consumers and the government, as well as FCC complaints filed by those injured and annoyed by the conduct of Co-Defendant DIRECTV and its authorized telemarketers, said Co-Defendant is unequivocally aware that it is in knowing violation of the TCPA, FCC Rules, and Telemarketing Sales Rule.

## INTRODUCTION TO THE WILLFUL NATURE OF THE VIOLATIONS

28.

Co-Defendant DIRECTV markets its goods and services through a network of authorized telemarketers.

29.

The Co-Defendants have violated the TCPA, the FCC Rules, and the
Telemarketing Sales Rule by contacting Plaintiff Sebastian Cordoba and all others
similarly-situated on their cellular telephones via an ATDS as said term is defined
by the TCPA, 47 U.S.C. § 227(a)(1), in non-emergency situations and without their
prior express consent within the meaning of the TCPA and the FCC Rules.

30.

In addition to the foregoing, the Co-Defendants have violated the TCPA, the
FCC Rules, and the Telemarketing Sales Rule by continuing to contact Plaintiff
Sebastian Cordoba and others similarly-situated while they were on the NDNC
maintained by the Federal Trade Commission pursuant to 16 C.F.R. §
310.4(b)(1)(iii)(B) and in violation of 47 C.F.R. § 64.1200(c)(2).

31.

In addition to the foregoing, the Co-Defendants have violated the TCPA, the
FCC Rules, and the Telemarketing Sales Rule by continuing to contact Plaintiff
Sebastian Cordoba and others similarly-situated while they were on Co-Defendant
DIRECTV's IDNC in violation of 16 C.F.R. § 310.4(b)(1)(iii)(A) and 47 C.F.R. §
64.1200(d)(3), (6).

32.

Co-Defendant DIRECTV has been sued by the Federal Trade Commission and consumers on multiple occasions for TCPA, FCC Rules, and Telemarketing Sales Rule violations.

33.

On December 12, 2005, the United States Department of Justice filed suit against Co-Defendant DIRECTV on behalf of the Federal Trade Commission (the "First FTC Lawsuit") in the case styled *United States v. DirecTV, Inc., et al.,* No. 05-1211 (C.D. Cal. Dec. 12, 2005).

34.

In the First FTC Lawsuit, the United States sought and obtained civil penalties and injunctive relief against Co-Defendant DIRECTV and the telemarketing companies which marketed said Co-Defendant's goods and service in violation of the TCPA, the FCC Rules, and the Telemarketing Sales Rule, codified in 16 C.F.R. § 310.4.

35.

According to the Complaint in the First FTC Lawsuit,

- Co-Defendant DIRECTV markets its programming through a variety of methods, including telemarketing. Complaint at ¶ 34;

- Co-Defendant DIRECTV entered into oral or written contractual agreements with telemarketing entities. Complaint at ¶ 35;

- Beginning on or about October 17, 2003, the telemarketing Defendants have directly, or through intermediaries, placed outbound telephone calls to consumer's telephone numbers on the National Do Not Call Registry. Complaint at ¶ 39;

- Defendant DIRECT provides substantial assistance to telemarketers by offering to pay or paying hourly rates and commissions for marketing services, allowing telemarketers to market DIRECTV goods or services, entering into contracts with consumers contacted by the telemarketers, providing services to consumers contacted by the telemarketers, and collecting money from consumers contacted by the telemarketers. Complaint at ¶ 46.

36.

On December 14, 2005, Co-Defendant DIRECTV entered into a Stipulated Judgment and Order for permanent Injunction Against DirecTV, Inc. in the First FTC Lawsuit consisting of, *inter alia*, a civil penalty against it in the amount of $5,335,000, and myriad injunctions requiring compliance with the Telemarketing Sales Rule.

37.

Among the injunctions consented to by Co-Defendant DIRECTV in the First FTC Lawsuit are the following:

- A permanent injunction restraining and enjoining Co-Defendant DIRECTV from "engaging in violations of the Telemarketing Sales Rule, including but not limited to . . . Initiating any outbound telephone call to a person when: (1) that person previously has stated to DIRECT or an Authorized Telemarketer that he or she does not wish to receive an

outbound telephone call made by or on behalf of DIRECTV [or] (2) that person's telephone number is on the National Do Not Call Registry. " Order at ¶ I(A)(1)-(2).

- A permanent injunction restraining and enjoining Co-Defendant DIRECTV from to appropriately monitory the actions of their authorized telemarketers to ensure compliance with the Telemarketing Sales Rules, including procedures to prevent the initiation of outbound telemarketing calls to numbers on the National Do Not Call Registry. Order at ¶ II(A).

- A permanent injunction restraining and enjoining Co-Defendant DIRECTV from failing to create a system for managing consumer complaints and to "promptly investigate each consumer complaint relating to telemarketing or the Telemarketing Sales and shall take all reasonable steps to identify the person whose activities prompted the complaint." Order at ¶ IV(B).

- An injunction requiring Co-Defendant DIRECTV to provide quarterly reports to the Federal Trade Commission including, *inter alia*, a list of telephone numbers that said Co-Defendant or any authorized telemarketers used or uses in telemarketing since entry of the Order, a report of all monitoring activity taken by said Co-Defendant pursuant to Paragraphs II, III, and IV of the Order, a description of all outbound telemarketing campaigns conducted said Co-Defendant or its authorized telemarketers during the previous quarter. See generally the Order at ¶ VIII.

- An injunction requiring Co-Defendant DIRECTV to provide upon request of the Federal Trade Commission "business records demonstrating compliance with the terms and provisions of this Order" for a period of six (6) years. Order at ¶ IX.

38.

Despite the severity of the civil penalty and the various injunctions aimed at obtaining compliance with the Telemarketing Sales Rule, the TCPA, and the FCC

Rules, Co-Defendant DIRECTV continued to willfully and/or knowingly violate same.

39.

On April 16, 2009, the United States of America filed a second lawsuit seeking civil penalties and injunctive relief against Co-Defendant DIRECTV on behalf of the Federal Trade Commission (the "Second FTC Lawsuit"), in the case styled *United States of America vs. DIRECTV, Inc. et al*, No. 09-02605 (C.D. Cal. April 23, 2009).

40.

The Second FTC lawsuit basically mirrored the allegations made in the First FTC Lawsuit.

41.

On April 23, 2009, Co-Defendant DIRECTV agreed via a Stipulated Judgment and Order for Permanent Injunction Against DIRECTV, Inc. to pay a civil penalty of $2,310,000 and consented to myriad injunctive relief similar to that of the Fist FTC lawsuit.

42.

In addition, Co-Defendant DIRECTV agreed to maintain the evidence and documents required by the April 23, 2009 Order for a period of eight (8) years, encompassing the period beginning April 23, 2009 and ending April 22, 2017.

43.

Accordingly, Co-Defendant DIRECTV has been acutely aware of the TCPA and the steps required to comply with same and the FCC Rules at all times relevant to the above-styled action.

44.

Despite the First and Second FTC Lawsuits, Co-Defendant DIRECTV has willfully and/or knowingly violated and continues to so violate the TCPA and the FCC Rules by making telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated on their cellular telephones via an automatic telephone dialing system without their prior express consent and/or despite being listed on the National Do Not Call Registry.

## FACTUAL ALLEGATIONS

45.

At all times relevant hereto, Co-Defendant DIRECTV and its authorized telemarketers (including the John Doe Co-Defendants) have initiated non-

emergency telephone calls via an ATDS to Plaintiff Sebastian Cordoba and others similarly-situated on their cell phones without first obtaining prior express consent to receive such calls and for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

46.

At all times relevant hereto, Co-Defendant DIRECTV and its authorized telemarketers (including the John Doe Co-Defendants) have initiated telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated while on the NDNC for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

47.

At all times relevant hereto, Co-Defendant DIRECTV and its authorized telemarketers (including the John Doe Co-Defendants) have initiated telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated while on the IDNC for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

48.

At all times relevant hereto, Co-Defendant DIRECTV has known or consciously disregarded knowledge that its goods and services were being

marketed in violation of the TCPA, the FCC Rules, and the Telemarketing Sales Rule.

49.

Co-Defendant DIRECTV is aware that authorized telemarketers marketing its goods and services are dialing cellular telephone numbers via an ATDS because same is standard in the industry in which said Co-Defendants engages.

50.

Upon information and belief, Co-Defendant DIRECTV or its authorized telemarketers have made thousands of calls (1) via an ATDS to cell phones of consumers who had not previously given their prior express consent to receive such calls, and in non-emergency situations, (2) to consumers on the NDNC, and (3) to consumers on the IDNC.

**PLAINTIFF SEBASTIAN CORDOBA**

51.

Plaintiff Sebastian Cordoba is not, and never has been, a customer of Co-Defendant DIRECTV.

52.

Plaintiff Sebastian Cordoba does not have an established business relationship with Co-Defendant DIRECTV.

53.

Plaintiff Sebastian Cordoba has never given his consent, written, oral, or otherwise, for Co-Defendant DIRECTV or its authorized telemarketers to contact his cellular telephone.

54.

Plaintiff Sebastian Cordoba has been on the NDNC since December 12, 2014.

55.

Plaintiff Sebastian Cordoba has received in excess of one call per twelve (12) month period from Co-Defendant DIRECTV and/or its authorized telemarketers since December 12, 2014. Upon information and belief, said Plaintiff has received more than two dozen calls from said Co-Defendant and/or its authorized telemarketers (including the John Doe Co-Defendants) since December 12, 2014.

56.

Plaintiff Sebastian Cordoba has specifically requested to Co-Defendant DIRECTV and/or its authorized telemarketers that he not be called on his cell phone. Despite this express request, said Co-Defendant has continued to call Plaintiff Sebastian Cordoba.

57.

Upon information and belief, Co-Defendant DIRECTV or its authorized telemarketers have telephoned Plaintiff Sebastian Cordoba over two dozen times since June 2014.

58.

At all times relevant hereto, Plaintiff Sebastian Cordoba paid for the cellular telephone service on which he received the calls from Co-Defendant DIRECTV and/or its authorized telemarketers.

59.

After making repeated oral requests to be placed on Co-Defendant DIRECTV's IDNC, Plaintiff Sebastian Cordoba contacted said Co-Defendant directly by written correspondence dated January 8, 2015 to Co-Defendant DIRECTV Customer Care and, shortly thereafter, the Office of the President of said Co-Defendant.

60.

Co-Defendant DIRECTV responded in writing via the Office of the President on or about January 9, 2015 to Plaintiff Sebastian Cordoba, stating that the unsolicited and unwelcomed calls would cease.

61.

Notwithstanding Co-Defendant DIRECTV's acknowledgement of the calls and promise that they would cease, the Plaintiff Sebastian Cordoba continued to receive unsolicited and unwelcomed calls from the Co-Defendants.

## CLASS ACTION ALLEGATIONS

62.

Plaintiff Sebastian Cordoba brings the above-styled action on behalf of himself and on behalf of all other persons similarly-situated consisting of three separate Classes (respectively, the "ATDS Class", "NDNC Class", and the "IDNC Class").

## THE ATDS CLASS

63.

Plaintiff Sebastian Cordoba proposes the following definition for the ATDS Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of the above-styled action, received a non-emergency telephone call(s) to their cellular telephones from Co-Defendant DIRECTV and/or its authorized telemarketers for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services through the use of an automatic telephone dialing system, who did not provide prior express consent for such call(s), and who were not prior customers of Co-Defendant DIRECTV at the time such call(s) were received.

64.

Plaintiff Sebastian Cordoba represents, and is a member of, the ATDS Class.

65.

Upon information and belief, the ATDS Class is so numerous that joinder of the ATDS Class members is impracticable. Further, the ATDS Class is expected to number in the thousands of individuals based upon the industry standards for automated dialing campaigns. Additionally, the relatively modest value of each individual claim diminishes the ability and likelihood of the ATDS Class members bringing suit individually.

## THE NDNC CLASS

66.

Plaintiff Sebastian Cordoba proposes the following class definition for the NDNC Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of the above-styled action, received more than one telephone call from Co-Defendant DIRECTV and/or its authorized telemarketers in any twelve (12) month period while on the National Do-Not-Call Registry and for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services.

67.

Plaintiff Sebastian Cordoba represents, and is a member of, the NDNC Class.

68.

Upon information and belief, the NDNC Class is so numerous that joinder of the NDNC Class members is impracticable. Further, the NDNC Class is expected to number in the thousands of individuals. Additionally, the relatively modest value of each individual claim diminishes the ability and likelihood of the NDNC Class members bringing suit individually.

## THE IDNC CLASS

69.

Plaintiff Sebastian Cordoba proposes the following class definition for the IDNC Class, subject to amendment as appropriate:

> All persons within the United States who, on or after four years prior to the filing of the above-styled action, requested not to receive calls from Co-Defendant DIRECTV and/or its authorized telemarketers, but who received telephone calls from Co-Defendant DIRECTV and/or its authorized telemarketers in spite of such request for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services.

70.

Plaintiff Sebastian Cordoba represents, and is a member of, the IDNC Class.

71.

Upon information and belief, the IDNC Class is so numerous that joinder of the IDNC Class members is impracticable. Further, the IDNC Class is expected to number in the thousands of individuals. Additionally, the relatively modest value

of each individual claim diminishes the ability and likelihood of the IDNC Class

members bringing suit individually.

72.

Pursuant to the First and Second FTC Lawsuit, Co-Defendant DIRECTV is

required to maintain complete and accurate records of the persons called, telephone

numbers called, and telephone calls made, by it or on its behalf.

73.

Accordingly, the identity of the ATDS Class, NDNC Class, and IDNC Class

members can be readily ascertained from the business records of Co-Defendant

DIRECTV.

74.

Co-Defendant DIRECTV and its authorized telemarketers have caused a

nuisance to, and invaded the privacy of, Plaintiff Sebastian Cordoba and each of

the members of the ATDS Class, NDNC Class, and IDNC Class by initiating

telephone calls in violation of the TCPA, FCC Rules, and Telemarketing Sales

Rule.

75.

Plaintiff Sebastian Cordoba will fairly and adequately represent and protect

the interests of the ATDS Class, NDNC Class, and IDNC Class, and has no

interests which are adverse to any member of the ATDS Class, NDNC Class, or IDNC Class. Said Plaintiff will adequately represent the members each of the three classes stated above because he (1) received numerous automated telephone calls to his cell phone while (2) on the NDNC and (3) after requesting to be placed on the Co-Defendants' IDNC.

76.

Common, well-defined questions of law and fact exist as Plaintiff Sebastian Cordoba and all members of the ATDS Class, NDNC Class, and IDNC Class, and predominate over any questions solely affecting any individual member of the ATDS Class, NDNC Class, or IDNC Class.

77.

The commons questions of law and fact applicable to the ATDS Class members include, but are not limited to, the following:

(1) Whether the calls that are made subject of the above-styled action were made using an ATDS as proscribed by the TCPA and the FCC Rules;

(2) Whether such calls were non-emergency calls;

(3) Whether such calls were made by or on behalf of Co-Defendant DIRECTV;

(4) Whether Co-Defendant DIRECTV can meet its burden of showing

they obtained prior express consent prior to initiating such calls;

(5) Whether the Co-Defendants' are liable under the TCPA, FCC Rules,

and Telemarketing Sales Rule for placing telemarketing calls via the

use of an ATDS to a cell phone;

(6) Whether the Co-Defendants' conduct was knowing and/or willful;

(7) Whether the Co-Defendants are liable for damages, and the amount of

such damages; and

(8) Whether the Co-Defendants should be enjoined from engaging in such

conduct in the future.

78.

The commons questions of law and fact applicable to the NDNC Class

members include, but are not limited to, the following:

(1) Whether Co-Defendant DIRECTV and/or its authorized telemarketers

made the call(s) subject of the above-styled action during a period for

which members of the NDNC Class were on the National Do-Not-

Call Registry;

(2) Whether the members of the NDNC Class received more than one (1)

call during any twelve (12) month period;

(3) Whether the Co-Defendants are liable for placing telemarketing calls to members of the National Do-Not-Call Registry in violation of the TCPA, FCC Rules, and Telemarketing Sales Rule;

(4) Whether the Co-Defendants' conduct was willful and/or knowing;

(5) Whether the Co-Defendants are liable for damages, and in what amount; and

(6) Whether the Co-Defendants should be enjoined from engaging in such conduct in the future.

79.

The common questions of law and fact applicable to the IDNC Class members included, but are not limited to, the following:

(1) Whether Co-Defendant DIRECTV and/or its authorized telemarketers the call(s) subject of the above-styled action after the members of the IDNC Class requested not to receive additional calls from Co-Defendant DIRECTV;

(2) Whether the Co-Defendants are liable for placing telemarketing calls to members of the Co-Defendants' Internal Do-Not-Call Registry in violation of the TCPA, FCC Rules, and Telemarketing Sales Rule;

(3) Whether the Co-Defendants' conduct was willful and/or knowing;

(4) Whether the Co-Defendants are liable for damages, and in what

amount; and

(5) Whether the Co-Defendants should be enjoined from engaging in such

conduct in the future.

80.

Class action treatment is superior to the alternatives available to the

members of the ATDS Class, NDNC Class, and IDNC Class, same representing

the most fair and efficient adjudication of the allegations made in the above-styled

action. Class action treatment will permit a vast number of similarly-situated

persons to prosecute their commons causes of action in a single form

simultaneously and efficiently, and without the duplication of effort and expense

that numerous individual actions would entail.

81.

The interest of any ATDS Class, NDNC Class, and IDNC Class members in

individually controlling the prosecution of separate claims against Co-Defendant

DIRECTV and/or its authorized telemarketers is small because of the relatively

modest amount of statutory damages available for violations of the TCPA, FCC

Rules, and Telemarketing Sales Rule.

82.

No difficulties in the management of the above-styled class action are likely
to be encountered which would preclude its maintenance as a class action lawsuit,
and no superior alternative exists for the fair and efficient adjudication of the
controversy, because the interests of the ATDS Class, NDNC Class, and IDNC
Class members are aligned and the issues are well-defined.

83.

Class certification is appropriate because prosecuting separate actions by
ATDS Class, NDNC Class, and/or IDNC Class members would create a risk of
inconsistent or varying adjudications with respect to individual members.

84.

Absent a representative class action, ATDS Class, NDNC Class, and IDNC
Class members would continue to suffer losses for which they would have no
remedy, and Co-Defendant DIRECTV would unjustly retain the proceeds and
profits obtained via violations of Federal law.

85.

Even if separate actions could be and were to be brought by individual
members of the ATDS Class, NDNC Class, and IDNC Class, the resulting

multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create the risk of inconsistent judgments.

86.

Class certification is also appropriate because Co-Defendant DIRECTV has acted on grounds generally applicable to the entirety of the ATDS Class, NDNC Class, and IDNC Class, thereby making injunctive and monetary relief appropriate with respect to the Class, NDNC Class, and IDNC Class as a whole.

87.

Pursuant to the foregoing Paragraphs, class certification is appropriate with respect to each of the three classes pursuant to Fed. R. Civ. P. 23(b)(1), (2), and (3).

## CAUSES OF ACTION

## COUNT I

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, FCC RULES AND REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. § 64.1200, AND THE TELEMARKETING SALES RULE, 16 C.F.R § 310.4

88.

Plaintiff Sebastian Cordoba re-alleges and incorporates Paragraphs 1 through 87 of the above-styled Class Action Complaint as if expressly set forth herein.

**Page 32 of 39**

89.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the ATDS Class on their cellular telephones without an emergency, without first obtaining their prior express consent, and via an ATDS, for the express purpose of marketing Co-Defendant DIRECTV's goods and/or services.

90.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the NDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services while they were registered with the National Do-Not-Call Registry.

91.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the IDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services after said

members had previously requested to be placed on the Co-Defendants' company-specific IDNC.

92.

As a result of the Co-Defendants' knowing and/or willful violations of the TCPA, FCC Rules, and the Telemarketing Sales Rule, Plaintiff Sebastian Cordoba and the ATDS Class, NDNC Class, and IDNC Class members are entitled to statutory treble damages of up to $1,500.00 for each and every violation perpetrated by the Co-Defendants.

93.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to a permanent injunction prohibiting the Co-Defendants from committing violations of the TCPA, FCC Rules, and Telemarketing Sales Rule in the future.

94.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## COUNT II

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, AND THE FCC RULES AND REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. § 64.1200

95.

Plaintiff Sebastian Cordoba re-alleges and incorporates Paragraphs 1 through 94 of the above-styled Class Action Complaint as if expressly set forth herein.

96.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the ATDS Class on their cellular telephones without an emergency, without first obtaining their prior express consent, and via an ATDS, for the express purpose of marketing Co-Defendant DIRECTV's goods and/or services.

97.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the NDNC Class for the purpose of marketing Co-

Defendant DIRECTV's goods and/or services while they were registered with the NDNC.

98.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the IDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services after said members had previously requested to be placed on the Co-Defendants' company-specific IDNC.

99.

As a result of the Co-Defendants' knowing and/or willful violations of the TCPA, FCC Rules, and the Telemarketing Sales Rule, Plaintiff Sebastian Cordoba and the ATDS Class, NDNC Class, and IDNC Class members are entitled to statutory damages of $500.00 for each and every violation perpetrated by the Co-Defendants.

100.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to a permanent injunction prohibiting the Co-Defendants from committing violations of the TCPA, FCC Rules, and Telemarketing Sales Rule in the future.

Page **36** of **39**

101.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sebastian Cordoba respectfully petitions this Honorable Court for the following relief:

a) That Summons and Process issue as provide by law as to Co-Defendant DIRECTV;

b) That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants in the amount of $1,500.00 in statutory treble damages for each of the Co-Defendants' knowing and/or willful violations of the TCPA, FCC Rules, and/or Telemarketing Sales Rule as averred in Count I of the above-styled Class Action Complaint;

c) That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants in the amount of $500.00 in statutory damages for each of the Co-Defendants'

negligent violations of the TCPA, FCC Rules, and/or Telemarketing Sales Rule as averred in Count II of the above-styled Class Action Complaint;

d) That the Court enjoin the Co-Defendants from committing further violations of the TCPA, FCC Rules, and Telemarketing Sales Rule;

e) That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants for attorneys' fees and expenses of litigation incurred in the prosecution of the above-styled Class Action Complaint;

f) An Order certifying the above-styled action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate ATDS Class, NDNC Class, and IDNC Class as the Court deems appropriate in its discretion, finding that Plaintiff Sebastian Cordoba is a proper representative of the ATDS Class, NDNC Class, and IDNC Class, and appointing the lawyers and law firms representing said Plaintiff as counsel for the ATDS Class, NDNC Class, and IDNC Class;

g) For a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b); and

h) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 27th day of October, 2015.

**KING & YAKLIN, LLP**
Attorneys for Plaintiffs


/s/ STEPHEN A. YAKLIN
Stephen A. Yaklin
Georgia Bar No.: 780125


/s/ MATTHEW M. WILKINS
Matthew M. Wilkins
Georgia Bar No.: 142291


/s/ G. TAYLOR WILSON
G. Taylor Wilson
Georgia Bar No.: 460781


192 Anderson Street, Suite 125
Marietta, Georgia  30060
770-424-9235 office
770-424-9239 facsimile
syaklin@kingyaklin.com
mwilkins@kingyaklin.com
twilson@kingyaklin.com