## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| SEBASTIAN CORDOBA, individually and on behalf of all others similarly-situated, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO.: |
| vs. | ) ) | 1:15-CV-03755-MHC |
| DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc., TELECEL MARKETING SOLUTIONS, INC., and JOHN DOE, | ) ) ) ) ) | Complaint – Class Action |
| Defendants. | ) | Jury Trial Demanded |

## FIRST AMENDED CLASS ACTION COMPLAINT

**COMES NOW**, Sebastian Cordoba, individually and on behalf of all others similarly-situated, and files this First Amended Class Action Complaint ("Amended Complaint") against DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc. (collectively, "DIRECTV"), Telecel Marketing Solutions, Inc. ("Telecel"), and John Doe (collectively the "Co-Defendants"), and shows this Honorable Court, upon personal knowledge, investigation of counsel, and/or information and belief, as follows:

## THE PARTIES AND CLAIMS

### 1.

At the time of filing this action, Plaintiff Sebastian Cordoba resided in the State of Georgia and this District.

### 2.

Plaintiff Sebastian Cordoba seeks certification of a national class against the Co-Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the related rules and regulations promulgated by the Federal Communication Commission, 47 C.F.R. § 64.1200 (the "FCC Rules"), and the Telemarketing Sales Rule, 16 C.F.R. § 310.4 (the "Telemarketing Sales Rule"), by the Co-Defendants and their present, former, and/or future direct and indirect predecessors, parent companies, subsidiaries, affiliates, agents, and/or related entities. The Co-Defendants have violated the TCPA, FCC Rules, and Telemarketing Sales Rule, by, *inter alia*, making unsolicited and unauthorized telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated on their cellular telephones via an "automatic telephone dialing system" (the "ATDS"), as described and defined in 47 U.S.C. § 227(a)(1).

3.

Co-Defendant DIRECTV is a California limited liability company with its principal place of business located at 2260 E. Imperial Highway, El Segundo, California 90245. Said Co-Defendant may be served with process by delivering a copy of the Summons and Amended Complaint to its duly-appointed registered agent, same being Corporation Service Company, 40 Technology Parkway South Suite 300, Norcross, Gwinnett County, Georgia 30092.

4.

Upon information and belief, effective December 22, 2011, DIRECTV, Inc. merged into Co-Defendant DIRECTV, with the latter becoming the surviving limited liability company. By virtue of this merger, Co-Defendant DIRECTV assumed, and succeeded to, all of the liabilities of DIRECTV, Inc., including liability for DIRECTV, Inc.'s violations of the TCPA and the FCC Rules.

5.

Upon information and belief, after announcing the deal in early 2014, AT&T acquired Co-Defendant DIRECTV for the purchase price of $49,000,000,000 on or about July 24, 2015, following the Federal Communications Commission's approval of the acquisition. No certificate of merger has been filed by Co-Defendant DIRECTV, and it remains a valid legal entity subject to suit.

6.

Co-Defendant Telecel is a Maryland corporation and an authorized retailer and marketer for Co-Defendant DIRECTV that has contacted Plaintiff Sebastian Cordoba on behalf and for the benefit of Co-Defendant DIRECTV with the express purpose of marketing and advertising the goods and services of said Co-Defendant in violation of the TCPA. Said Co-Defendant may be served with process by delivering a copy of the Summons and Amended Complaint to its duly-appointed registered agent, same being Corporation Service Company, 40 Technology Parkway South Suite 300, Norcross, Gwinnett County, Georgia 30092.

7.

Co-Defendant John Doe is a telemarketer which has, upon information and belief, contacted Plaintiff Sebastian Cordoba as an authorized representative, and on behalf, of Co-Defendant DIRECTV with the express purpose of marketing and advertising the goods and services of said Co-Defendant in violation of the TCPA. Said Co-Defendant routinely called Sebastian Cordoba's cell phone from the number XXX-XXX-1701 from a Florida area code.

8.

At all times relevant hereto, Co-Defendants Telecel and John Doe were authorized telemarketers, retailers, and/or agents or sub-agents of Co-Defendant

DIRECTV, acted within the course and scope of an agency relationship with said

Co-Defendant, and were contracted by said Co-Defendant to promote said Co-

Defendant's goods and services.

9.

Pursuant to the provisions of 47 C.F.R. § 64.1200(d), FCC opinions, and

construing case law, liability for violations of the TCPA, the FCC Rules, and the

Telemarketing Sales Rule is placed on both the businesses that place the unlawful

calls, as well as businesses on whose behalf, and for whose benefit, the calls are

placed.

## JURISDICTION AND VENUE

10.

This Court has subject matter jurisdiction over the above-styled class action

pursuant to 28 U.S.C. § 1331, as the claims set forth herein arise under the Federal

laws codified in the TCPA and the FCC Rules.

11.

This Court has subject matter jurisdiction over the above-styled action

pursuant to 28 U.S.C. § 1332(d)(1)(D)(2)(A), because Plaintiff Sebastian Cordoba

is a citizen of a different state than Co-Defendants DIRECTV and Telecel, said

Plaintiff alleges a national class for which at least one other member will be a

citizen of a different state than said Co-Defendant, and the matter in controversy exceeds $5,000,000, as the proposed Class, the proposed National Do-Not-Call Registry (the "NDNC") Class, and the proposed Internal Do-Not-Call (the "IDNC") Class, defined *infra*, consists, on information and belief, of tens of thousands of persons, each of which is entitled to up to $1,500 in statutory damages for each violation of the TCPA and the FCC Rules.

12.

The Court has personal jurisdiction over Co-Defendant DIRECTV because, *inter alia*, said Co-Defendant (1) transacts business in the State of Georgia, (2) committed tortious acts within this State, (3) maintains a registered agent within this State, (4) committed tortious acts outside this State which caused injuries to persons within this State, (5) regularly solicits and transacts business in this State, and/or (6) derives substantial revenues from goods and services placed into the stream of commerce in this State. Accordingly, Co-Defendant DIRECTV has sufficient minimum contacts with the Northern District of Georgia to subject it to the personal jurisdiction of this Court, and the claims set forth herein arise from the foregoing actions of Co-Defendant DIRECTV.

13.

The Court has personal jurisdiction over Co-Defendant Telecel because, *inter alia*, said Co-Defendant (1) transacts business in the state of Georgia, (2) committed tortious acts within this State, (3) committed tortious acts outside this State which caused injuries to persons within this State, (4) regularly solicits and transacts business in this State, and/or (5) is a joint tortfeasor or obligor with Co-Defendant DIRECTV. Accordingly, Co-Defendant DIRECTV has sufficient minimum contacts with the Northern District of Georgia to subject it to the personal jurisdiction of this Court, and the claims set forth herein arise from the foregoing actions of Co-Defendant Telecel.

14.

Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b), (c), and (d), because Co-Defendant DIRECTV is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the above-styled action is commenced.

15.

Jurisdiction and venue are proper as to Co-Defendant John Doe because said Co-Defendants are joint tortfeasors with Co-Defendant DIRECTV.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227, THE FCC RULES, 47 C.F.R § 64.1200, AND THE TELEMARKETING SALES RULE, 16 C.F.R § 310.4

16.

In 1991, Congress enacted the TCPA in an effort to regulate the growing telemarketing industry and to deter and curb the invasion of the public's privacy by placing restrictions on unsolicited telephone calls.

17.

The TCPA and the FCC Rules make it unlawful for companies, and telemarketers acting on their behalf, to initiate "any telephone call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any . . . cellular telephone service . . ." 47 C.F.R. § 64.1200(a)(1)(iii); see also 47 U.S.C. § 227(b)(1)(A)(iii).

18.

There exists a private right of action entitling claimants to statutory damages of up to $500 per violation and $1,500 per willful or knowing ATDS violation.

A person or entity may . . . bring an action in an appropriate Court of that State-- (A) an action based on a violation of this subsection [47 U.S.C § 227(b)(3)] or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 damages in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the

defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

19.

In addition, the TCPA and FCC Rules make it unlawful to "initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

20.

47 U.S.C. § 227(c)(5) similarly provides a private right of action to consumers for violations of the prohibition on calling persons on the NDNC for statutory damages up to $500 per violation, and up to $1,500 for each willful or knowing violation.

21.

In addition, the TCPA, FCC Rules, and the Telemarketing Sales Rule require that if:

a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity

must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.

47 C.F.R. § 64.1200(d)(3); *See also* 16 C.F.R. § 310.4(b)(1)(iii)(A).

22.

There exists a private right of action entitling claimants to statutory damages of up to $500 per violation and $1,500 per willful or knowing NDNC or IDNC violation.

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State – (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual  monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions . . . If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5)(A)-(C).

23.

Accordingly, in addition to the restrictions on the use of an ATDS, the TCPA instructs the FCC to issue regulations concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object. *See* 47 U.S.C. § 227(c)(1). The FCC issued

regulations prohibiting persons or entities from initiating any call for telemarketing

purposes to a residential telephone subscriber (including cell phones) unless the

person or entity has instituted certain listed procedures for maintaining a do-not-

call list. 47 C.F.R. § 64.1200(d).

24.

These FCC Rules require, *inter alia*, the telemarketer to (1) provide the

name of the individual caller, the name of the person or entity on whose behalf the

call is being made, and a telephone number or address at which the person or entity

may be contacted; (2) maintain a do-not-call list; and (3) honor a person's request

not to be called. See 47 C.F.R. 64.1200(d)(3), (4), and (6).

25.

Claimants may recover statutory damages of up to $1,500.00 for willful or

knowing violation of the ATDS requirements under 47 U.S.C. § 227(b)(3) and up

to $1,500.00 statutory damages for willful or knowing violation of do-not-call-list

requirements under 47 U.S.C.§ 227(c)(5), even if both violations occurred in the

same telephone call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d

1101, 1106 (11th Cir. 2015) (stating "[i]n plain terms, the statute allows a person to

recover '$500 in damages for each' 'violation of this subsection'. *Id.* §227(b)(3).

Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax.'") (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) (holding that a plaintiff can recover under section 227(b)(3) and section 227(c)(5) even though both violations arose from the same call.)).

26.

Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Co-Defendants to demonstrate that Plaintiff Sebastian Cordoba and the members of the Class, the NDNC Class, and the IDNC Class, as defined *infra*, gave prior express written consent to automatic telephone dialing system calls to their cell phones with the meaning of the TCPA.

27.

The TCPA and the FCC Rules impose liability on a person or entity where calls are made on its behalf. The FCC has found that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Indeed, vicarious liability is a critical feature of the TCPA, which does not permit a party to avoid liability by placing it on its expressly, impliedly, or apparently authorized agents. *See, e.g.,* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. And Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995);

*Campbell-Ewald Co. v. Gomez*, 14-857, 2016 WL 228345, at *9 (U.S. Jan. 20, 2016).

28.

As set forth below, due to the number of lawsuits brought by consumers and the government against Co-Defendant DIRECTV, as well as FCC complaints filed by those injured and annoyed by the conduct of Co-Defendant DIRECTV and its authorized telemarketers, said Co-Defendant is unequivocally aware that it is in knowing violation of the TCPA, FCC Rules, and Telemarketing Sales Rule.

## INTRODUCTION TO THE WILLFUL NATURE OF THE VIOLATIONS

29.

Co-Defendant DIRECTV markets its goods and services through a network of authorized telemarketers and retailers.

30.

The Co-Defendants have violated the TCPA, the FCC Rules, and the Telemarketing Sales Rule by contacting Plaintiff Sebastian Cordoba and all others similarly-situated on their cellular telephones via an ATDS as said term is defined by the TCPA, 47 U.S.C. § 227(a)(1), in non-emergency situations and without their prior express consent within the meaning of the TCPA and the FCC Rules.

31.

In addition to the foregoing, the Co-Defendants have violated the TCPA, the FCC Rules, and the Telemarketing Sales Rule by continuing to contact Plaintiff Sebastian Cordoba and others similarly-situated while they were on the NDNC maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B) and in violation of 47 C.F.R. § 64.1200(c)(2).

32.

In addition to the foregoing, the Co-Defendants have violated the TCPA, the FCC Rules, and the Telemarketing Sales Rule by continuing to contact Plaintiff Sebastian Cordoba and others similarly-situated while they were on the Co-Defendants' IDNC in violation of 16 C.F.R. § 310.4(b)(1)(iii)(A) and 47 C.F.R. § 64.1200(d)(3), (6).

33.

Co-Defendant DIRECTV has been sued by the Federal Trade Commission and consumers on multiple occasions for TCPA, FCC Rules, and Telemarketing Sales Rule violations.

34.

On December 12, 2005, the United States Department of Justice filed suit against Co-Defendant DIRECTV on behalf of the Federal Trade Commission (the

"First FTC Lawsuit") in the case styled *United States v. DirecTV, Inc., et al.,* No. 05-1211 (C.D. Cal. Dec. 12, 2005).

35.

In the First FTC Lawsuit, the United States sought and obtained civil penalties and injunctive relief against Co-Defendant DIRECTV and the telemarketing companies which marketed said Co-Defendant's goods and service in violation of the TCPA, the FCC Rules, and the Telemarketing Sales Rule, codified in 16 C.F.R. § 310.4.

36.

According to the Complaint in the First FTC Lawsuit,

- Co-Defendant DIRECTV markets its programming through a variety of methods, including telemarketing. Complaint at ¶ 34;

- Co-Defendant DIRECTV entered into oral or written contractual agreements with telemarketing entities. Complaint at ¶ 35;

- Beginning on or about October 17, 2003, the telemarketing Defendants have directly, or through intermediaries, placed outbound telephone calls to consumer's telephone numbers on the National Do Not Call Registry. Complaint at ¶ 39;

- Defendant DIRECT provides substantial assistance to telemarketers by offering to pay or paying hourly rates and commissions for marketing services, allowing telemarketers to market DIRECTV goods or services, entering into contracts with consumers contacted by the telemarketers, providing services to consumers contacted by the telemarketers, and collecting money from consumers contacted by the telemarketers. Complaint at ¶ 46.

37.

On December 14, 2005, Co-Defendant DIRECTV entered into a Stipulated

Judgment and Order for permanent Injunction Against DirecTV, Inc. in the First

FTC Lawsuit consisting of, *inter alia*, a civil penalty against it in the amount of

$5,335,000, and myriad injunctions requiring compliance with the Telemarketing

Sales Rule.

38.

Among the injunctions consented to by Co-Defendant DIRECTV in the First

FTC Lawsuit are the following:

- A permanent injunction restraining and enjoining Co-Defendant
  DIRECTV from "engaging in violations of the Telemarketing Sales Rule,
  including but not limited to . . . Initiating any outbound telephone call to a
  person when: (1) that person previously has stated to DIRECTV or an
  Authorized Telemarketer that he or she does not wish to receive an
  outbound telephone call made by or on behalf of DIRECTV [or] (2) that
  person's telephone number is on the National Do Not Call Registry. "
  Order at ¶ I(A)(1)-(2).

- A permanent injunction restraining and enjoining Co-Defendant
  DIRECTV from to appropriately monitor the actions of their authorized
  telemarketers to ensure compliance with the Telemarketing Sales Rules,
  including procedures to prevent the initiation of outbound telemarketing
  calls to numbers on the National Do Not Call Registry. Order at ¶ II(A).

- A permanent injunction restraining and enjoining Co-Defendant
  DIRECTV from failing to create a system for managing consumer
  complaints and to "promptly investigate each consumer complaint relating
  to telemarketing or the Telemarketing Sales Rule and shall take all

reasonable steps to identify the person whose activities prompted the complaint." Order at ¶ IV(B).

- An injunction requiring Co-Defendant DIRECTV to provide quarterly reports to the Federal Trade Commission including, *inter alia*, a list of telephone numbers that said Co-Defendant or any authorized telemarketers used or uses in telemarketing since entry of the Order, a report of all monitoring activity taken by said Co-Defendant pursuant to Paragraphs II, III, and IV of the Order, a description of all outbound telemarketing campaigns conducted said Co-Defendant or its authorized telemarketers during the previous quarter. See generally the Order at ¶ VIII.

- An injunction requiring Co-Defendant DIRECTV to provide upon request of the Federal Trade Commission "business records demonstrating compliance with the terms and provisions of this Order" for a period of six (6) years. Order at ¶ IX.

39.

Despite the severity of the civil penalty and the various injunctions aimed at obtaining compliance with the Telemarketing Sales Rule, the TCPA, and the FCC Rules, Co-Defendant DIRECTV continued to willfully and/or knowingly violate same.

40.

On April 16, 2009, the United States of America filed a second lawsuit seeking civil penalties and injunctive relief against Co-Defendant DIRECTV on behalf of the Federal Trade Commission (the "Second FTC Lawsuit"), in the case styled *United States of America vs. DIRECTV, Inc. et al*, No. 09-02605 (C.D. Cal. April 23, 2009).

41.

The Second FTC lawsuit mirrored the allegations made in the First FTC Lawsuit.

42.

On April 23, 2009, Co-Defendant DIRECTV agreed via a Stipulated Judgment and Order for Permanent Injunction Against DIRECTV, Inc. to pay a civil penalty of $2,310,000 and consented to myriad injunctive relief similar to that of the First FTC lawsuit.

43.

In addition, Co-Defendant DIRECTV agreed to maintain the evidence and documents required by the April 23, 2009 Order for a period of eight (8) years, encompassing the period beginning April 23, 2009 and ending April 22, 2017.

44.

Accordingly, Co-Defendant DIRECTV has been acutely aware of the TCPA, the steps required to comply with same and the FCC Rules, and its obligation to maintain information facilitating discovery in cases such as this at all times relevant to the above-styled action.

45.

Despite the First and Second FTC Lawsuits, Co-Defendant DIRECTV, through its marketers such as Co-Defendant Telecel, has willfully and/or knowingly violated and continues to so violate the TCPA and the FCC Rules by making telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated on their cellular telephones via an automatic telephone dialing system without their prior express consent and/or despite being listed on the NDNC and/or IDNC.

## FACTUAL ALLEGATIONS

46.

At all times relevant hereto, Co-Defendants DIRECTV and Telecel, and their other authorized telemarketers (including Co-Defendant John Doe), have initiated non-emergency telephone calls via an ATDS to Plaintiff Sebastian Cordoba and others similarly-situated on their cell phones without first obtaining prior express consent to receive such calls and for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

47.

Upon information and belief, Co-Defendant DIRECTV and/or its authorized telemarketers utilize an ATDS.

48.

Upon information and belief, Co-Defendant DIRECTV and/or their authorized telemarketers utilized an ATDS to telephone Plaintiff Sebastian Cordoba.

49.

Upon information and belief, Co-Defendant Telecel and/or its authorized agents utilize an ATDS.

50.

Upon information and belief, Co-Defendant Telecel and/or its authorized agents utilized an ATDS to telephone Plaintiff Sebastian Cordoba.

51.

At all times relevant hereto, Co-Defendants DIRECTV and Telecel, and/or their authorized telemarketers (including Co-Defendant John Doe), have initiated telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated while on the NDNC for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

52.

At all times relevant hereto, Co-Defendants DIRECTV and Telecel, and/or their authorized telemarketers (including Co-Defendant John Doe) have initiated

telephone calls to Plaintiff Sebastian Cordoba and others similarly-situated while on the IDNC for the purpose of marketing Co-Defendant DIRECTV's goods and/or services.

53.

At all times relevant hereto, the Co-Defendants have known or consciously disregarded knowledge that Co-Defendant DIRECTV's goods and services were being marketed in violation of the TCPA, the FCC Rules, and the Telemarketing Sales Rule.

54.

Co-Defendant DIRECTV is aware that authorized telemarketers marketing its goods and services are dialing cellular telephone numbers via an ATDS because same is standard in the industry in which said Co-Defendants engage.

55.

Upon information and belief, Co-Defendants DIRECTV and Telecel, and/or their authorized telemarketers, have made thousands of calls (1) via an ATDS to cell phones of consumers who had not previously given their prior express consent to receive such calls, and in non-emergency situations, (2) to consumers on the NDNC, and (3) to consumers on the IDNC.

## PLAINTIFF SEBASTIAN CORDOBA

56.

Plaintiff Sebastian Cordoba is not, and never has been, a customer of Co-Defendant DIRECTV.

57.

Plaintiff Sebastian Cordoba has never had any relationship with Co-Defendant DIRECTV.

58.

Plaintiff Sebastian Cordoba has never given his prior express consent for the Co-Defendants, or their authorized agents, to contact his cellular telephone.

59.

Upon information and belief, the Co-Defendants have telephoned Plaintiff Sebastian Cordoba at least two dozen times since June 2014.

60.

Plaintiff Sebastian Cordoba has been on the NDNC since December 12, 2014.

61.

Plaintiff Sebastian Cordoba has received in excess of one call per 12-month period from Co-Defendants DIRECTV and Telecel, and/or their authorized

telemarketers, since December 12, 2014. Upon information and belief, said Plaintiff has received more than two dozen calls from Co-Defendants DIRECTV and/or Telecel (and/or their authorized agents) since December 12, 2014.

62.

Plaintiff Sebastian Cordoba has specifically requested to the Co-Defendants, and/or their authorized telemarketers, that he not be called on his cell phone. Despite this express request, the Co-Defendants have continued to call Plaintiff Sebastian Cordoba.

63.

At all times relevant hereto, Plaintiff Sebastian Cordoba paid for the cellular telephone service on which he received the calls from Co-Defendants DIRECTV and Telecel and/or their authorized telemarketers. Plaintiff suffered additional harm in the form of the invasion of his privacy and the nuisance these calls placed on him.

64.

After making repeated requests to be placed on the Co-Defendants' IDNC and/or their authorized telemarketers' IDNC, Plaintiff Sebastian Cordoba contacted Co-Defendant DIRECTV directly by written correspondence dated January 8, 2015 to Co-Defendant DIRECTV Customer Care, and, shortly thereafter, the

Office of the President of said Co-Defendant.  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 30 F.C.C.R. 7961, 2015 WL 4387780 (F.C.C. July 10, 2015), at ¶ 47 ("[A] called party may revoke consent at any time and through any reasonable means.").

65.

Co-Defendant DIRECTV responded in writing via the Office of the President on or about January 9, 2015 to Plaintiff Sebastian Cordoba, stating that the unsolicited and unwelcomed calls would cease.

66.

Indeed, and not coincidentally, the telephone calls from Co-Defendant John Doe ceased shortly thereafter, indicating the control that Co-Defendant DIRECTV exerted over Co-Defendant John Doe.

67.

Yet, notwithstanding Co-Defendant DIRECTV's acknowledgement of the calls and its promise that they would cease, Plaintiff Sebastian Cordoba continued to receive several unsolicited and unwelcomed calls from Co-Defendant Telecel on DIRECTV's behalf during the spring and summer of 2015.

## CLASS ACTION ALLEGATIONS

### 68.

Plaintiff Sebastian Cordoba brings this action on behalf of himself and on behalf of all other persons similarly-situated consisting of three separate Classes (respectively, the "ATDS Class", "NDNC Class", and the "IDNC Class").

### THE ATDS CLASS

### 69.

Plaintiff Sebastian Cordoba proposes the following definition for the ATDS Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) to their cellular telephones from Co-Defendants DIRECTV, Telecel, or John Doe, and/or their authorized telemarketers, for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services through the use of an automatic telephone dialing system, who did not provide prior express written consent for such call(s).

### 70.

Plaintiff Sebastian Cordoba represents, and is a member of, the ATDS Class.

### 71.

Upon information and belief, the ATDS Class is so numerous that joinder of the ATDS Class members is impracticable. Further, the ATDS Class is expected to number in the thousands of individuals based upon the industry standards for

automated dialing campaigns. Additionally, the relatively modest value of each individual claim diminishes the ability and likelihood of the ATDS Class members bringing suit individually.

## THE NDNC CLASS

### 72.

Plaintiff Sebastian Cordoba proposes the following class definition for the NDNC Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received more than one telephone call from Co-Defendants DIRECTV, Telecel, or John Doe, and/or their authorized telemarketers, in any 12-month period while on the National Do-Not-Call Registry and for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services.

### 73.

Plaintiff Sebastian Cordoba represents, and is a member of, the NDNC Class.

### 74.

Upon information and belief, the NDNC Class is so numerous that joinder of the NDNC Class members is impracticable. Further, the NDNC Class is expected to number in the thousands of individuals. Additionally, the relatively modest value of each individual claim diminishes the ability and likelihood of the NDNC Class members bringing suit individually.

## THE IDNC CLASS

### 75.

Plaintiff Sebastian Cordoba proposes the following class definition for the

IDNC Class, subject to amendment as appropriate:

> All persons within the United States who, on or after four years prior to the filing of this action, requested not to receive calls from Co-Defendants DIRECTV, Telecel, or John Doe, and/or their authorized telemarketers, but who received telephone calls from said Co-Defendants and/or their authorized telemarketers in spite of such request for the purpose of selling or attempting to sell Co-Defendant DIRECTV's goods and/or services.

### 76.

Plaintiff Sebastian Cordoba represents, and is a member of, the IDNC Class.

### 77.

Upon information and belief, the IDNC Class is so numerous that joinder of

the IDNC Class members is impracticable. Further, the IDNC Class is expected to

number in the thousands of individuals. Additionally, the relatively modest value

of each individual claim diminishes the ability and likelihood of the IDNC Class

members bringing suit individually.

### 78.

Pursuant to the First and Second FTC Lawsuit, Co-Defendant DIRECTV is

required to maintain complete and accurate records of the persons called, telephone

numbers called, and telephone calls made, by it or on its behalf.

79.

Accordingly, the identity of the ATDS Class, NDNC Class, and IDNC Class members can be readily ascertained from the business records of Co-Defendant DIRECTV.

80.

Co-Defendants DIRECTV, Telecel, and John Doe, and/or their authorized telemarketers, have caused a nuisance to, and invaded the privacy of, Plaintiff Sebastian Cordoba and each of the members of the ATDS Class, NDNC Class, and IDNC Class by initiating telephone calls in violation of the TCPA, FCC Rules, and Telemarketing Sales Rule. *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) (recognizing that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used).

81.

Plaintiff Sebastian Cordoba will fairly and adequately represent and protect the interests of the ATDS Class, NDNC Class, and IDNC Class, and has no interests which are adverse to any member of the ATDS Class, NDNC Class, or IDNC Class. Said Plaintiff will adequately represent the members each of the three classes stated above because he (1) received numerous automated telephone calls

to his cell phone while (2) on the NDNC and (3) after requesting to be placed on the Co-Defendants' IDNC.

82.

Common, well-defined questions of law and fact exist as Plaintiff Sebastian Cordoba and all members of the ATDS Class, NDNC Class, and IDNC Class, and predominate over any questions solely affecting any individual member of the ATDS Class, NDNC Class, or IDNC Class.

83.

The common questions of law and fact applicable to the ATDS Class members include, but are not limited to, the following:

(1) Whether the calls that are made subject of the above-styled action were made using an ATDS as proscribed by the TCPA and the FCC Rules;

(2) Whether such calls were non-emergency calls;

(3) Whether such calls were made by or on behalf of Co-Defendant DIRECTV;

(4) Whether Co-Defendant DIRECTV can meet its burden of showing they obtained prior express consent prior to initiating such calls;

(5) Whether the Co-Defendants' are liable under the TCPA, FCC Rules, and Telemarketing Sales Rule for placing telemarketing calls via the use of an ATDS to a cell phone;

(6) Whether the Co-Defendants' conduct was knowing and/or willful;

(7) Whether the Co-Defendants are liable for damages, and the amount of such damages; and

(8) Whether the Co-Defendants should be enjoined from engaging in such conduct in the future.

84.

The common questions of law and fact applicable to the NDNC Class members include, but are not limited to, the following:

(1) Whether the Co-Defendants and/or their authorized telemarketers made the call(s) subject of the above-styled action during a period for which members of the NDNC Class were on the National Do-Not-Call Registry;

(2) Whether the members of the NDNC Class received more than one (1) call during any twelve 12-month period;

(3) Whether the Co-Defendants are liable for placing telemarketing calls to members of the National Do-Not-Call Registry in violation of the TCPA, FCC Rules, and Telemarketing Sales Rule;

(4) Whether the Co-Defendants' conduct was willful and/or knowing;

(5) Whether the Co-Defendants are liable for damages, and in what amount; and

(6) Whether the Co-Defendants should be enjoined from engaging in such conduct in the future.

85.

The common questions of law and fact applicable to the IDNC Class members included, but are not limited to, the following:

(1) Whether the Co-Defendants and/or their authorized telemarketers made the call(s) subject of the above-styled action after the members of the IDNC Class requested not to receive additional calls from the Co-Defendants;

(2) Whether the Co-Defendants are liable for placing telemarketing calls to members of the Co-Defendants' Internal Do-Not-Call Registry in violation of the TCPA, FCC Rules, and Telemarketing Sales Rule;

(3) Whether the Co-Defendants' conduct was willful and/or knowing;

(4) Whether the Co-Defendants are liable for damages, and in what amount; and

(5) Whether the Co-Defendants should be enjoined from engaging in such conduct in the future.

86.

Class action treatment is superior to the alternatives available to the members of the ATDS Class, NDNC Class, and IDNC Class, same representing the fairest and most efficient adjudication of the allegations made in this action. Class action treatment will permit a vast number of similarly-situated persons to prosecute their commons causes of action in a single form simultaneously and efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

87.

The interest of any ATDS Class, NDNC Class, and IDNC Class members in individually controlling the prosecution of separate claims against the Co-Defendants and/or their authorized telemarketers is small because of the relatively modest amount of statutory damages available for violations of the TCPA, FCC Rules, and Telemarketing Sales Rule.

88.

No significant difficulties in the management of the above-styled class action are likely to be encountered which would preclude its maintenance as a class action lawsuit, and no superior alternative exists for the fair and efficient adjudication of the controversy, because the interests of the ATDS Class, NDNC Class, and IDNC Class members are aligned and the issues are well-defined.

89.

Class certification is appropriate because prosecuting separate actions by ATDS Class, NDNC Class, and/or IDNC Class members would create a risk of inconsistent or varying adjudications with respect to individual members.

90.

Absent a class action, ATDS Class, NDNC Class, and IDNC Class members would continue to suffer losses for which they would have no remedy, and the Co-Defendants would unjustly retain the proceeds and profits obtained via violations of Federal law.

91.

Even if separate actions could be and were to be brought by individual members of the ATDS Class, NDNC Class, and IDNC Class, the resulting

multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create the risk of inconsistent judgments.

92.

Class certification is also appropriate because the Co-Defendants have acted on grounds generally applicable to the entirety of the ATDS Class, NDNC Class, and IDNC Class, thereby making injunctive and monetary relief appropriate with respect to the Class, NDNC Class, and IDNC Class as a whole.

93.

Pursuant to the foregoing Paragraphs, class certification is appropriate with respect to each of the three classes pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3).

## **CAUSES OF ACTION**

## **COUNT I**

## **KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*., FCC RULES AND REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. § 64.1200, AND THE TELEMARKETING SALES RULE, 16 C.F.R § 310.4**

94.

Plaintiff Sebastian Cordoba re-alleges and incorporates Paragraphs 1 through 93 of the above-styled Amended Complaint as if expressly set forth herein.

95.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the ATDS Class on their cellular telephones without an emergency, without first obtaining their prior express consent, and via an ATDS, for the express purpose of marketing Co-Defendant DIRECTV's goods and/or services.

96.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the NDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services while they were registered with the NDNC.

97.

As alleged, *supra*, the Co-Defendants knowingly and/or willfully violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the IDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services after said members had previously requested to be placed on the Co-Defendants' IDNC.

98.

As a result of the Co-Defendants' knowing and/or willful violations of the TCPA, FCC Rules, and the Telemarketing Sales Rule, Plaintiff Sebastian Cordoba and the ATDS Class, NDNC Class, and IDNC Class members are entitled to statutory treble damages of up to $1,500.00 for each and every violation perpetrated by the Co-Defendants.

99.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to a permanent injunction prohibiting the Co-Defendants from committing violations of the TCPA, FCC Rules, and Telemarketing Sales Rule in the future.

100.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## COUNT II

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, AND THE FCC RULES AND REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. § 64.1200

### 101.

Plaintiff Sebastian Cordoba re-alleges and incorporates Paragraphs 1 through 100 of the above-styled Class Action Complaint as if expressly set forth herein.

### 102.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the ATDS Class on their cellular telephones without an emergency, without first obtaining their prior express consent, and via an ATDS, for the express purpose of marketing Co-Defendant DIRECTV's goods and/or services.

### 103.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the NDNC Class for the purpose of marketing Co-

Defendant DIRECTV's goods and/or services while they were registered with the NDNC.

104.

As alleged, *supra*, the Co-Defendants violated the TCPA, FCC Rules, and the Telemarketing Sales Rule by making telephone calls to Plaintiff Sebastian Cordoba and the members of the IDNC Class for the purpose of marketing Co-Defendant DIRECTV's goods and/or services after said members had previously requested to be placed on the Co-Defendants' IDNC.

105.

As a result of the Co-Defendants' violations of the TCPA, FCC Rules, and the Telemarketing Sales Rule, Plaintiff Sebastian Cordoba and the ATDS Class, NDNC Class, and IDNC Class members are entitled to statutory damages of $500.00 for each and every violation perpetrated by the Co-Defendants.

106.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to a permanent injunction prohibiting the Co-Defendants from committing violations of the TCPA, FCC Rules, and Telemarketing Sales Rule in the future.

107.

Plaintiff Sebastian Cordoba and each ATDS Class, NDNC Class, and IDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Sebastian Cordoba respectfully petitions this Honorable Court for the following relief:

a)  That Summons and Process issue as provide by law as to Co-Defendants DIRECTV and Telecel;

b)  That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants in the amount of $1,500.00 in statutory treble damages for each of the Co-Defendants' knowing and/or willful violations of the TCPA, FCC Rules, and/or Telemarketing Sales Rule as averred in Count I of the above-styled Class Action Complaint;

c)  That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants in the amount of $500.00 in statutory damages for each of the Co-Defendants'

violations of the TCPA, FCC Rules, and/or Telemarketing Sales Rule as averred in Count II of the above-styled Class Action Complaint;

d) That the Court enjoin the Co-Defendants from committing further violations of the TCPA, FCC Rules, and Telemarketing Sales Rule;

e) That Plaintiff Sebastian Cordoba and the members of the ATDS Class, NDNC Class, and IDNC Class have judgment against the Co-Defendants for attorneys' fees and expenses of litigation incurred in the prosecution of the above-styled Class Action Complaint;

f) An Order certifying the above-styled action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate ATDS Class, NDNC Class, and IDNC Class as the Court deems appropriate in its discretion, finding that Plaintiff Sebastian Cordoba is a proper representative of the ATDS Class, NDNC Class, and IDNC Class, and appointing the lawyers and law firms representing said Plaintiff as counsel for the ATDS Class, NDNC Class, and IDNC Class;

g) For a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b); and

h) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of February, 2016.

**L. LIN WOOD, P.C.**

/s/ L. Lin Wood
L. Lin Wood
State Bar No. 774588
lwood@linwoodlaw.com
Nicole Jennings Wade
State Bar No. 390922
nwade@linwoodlaw.com
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@linwoodlaw.com
G. Taylor Wilson
State Bar No. 460781
twilson@linwoodlaw.com

1180 West Peachtree Street
Suite 2400
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**

Jonathan D. Selbin (*pro hac vice* pending)
jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice* pending)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Daniel M. Hutchinson (*pro hac vice* pending)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

**MEYER WILSON CO., LPA**

Matthew R. Wilson (*pro hac vice* pending)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* pending)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066


**KING & YAKLIN, LLP**

Stephen A. Yaklin
State Bar No. 780125
syaklin@kingyaklin.com
Matthew M. Wilkins
Georgia Bar No. 142291
mwilkins@kingyaklin.com

192 Anderson Street, Suite 125
Marietta, Georgia 30060
770-424-9235 office
770-424-9239 facsimile

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this FIRST AMENDED CLASS ACTION COMPLAINT is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1C.

This 3rd day of February, 2016.

/s/ L. Lin Wood<br>
L. Lin Wood

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing FIRST

AMENDED CLASS ACTION COMPLAINT via the CM/ECF system, which will

automatically send e-mail notification to the attorneys of record.

This 3rd day of February, 2016.

<u>/s/ L. Lin Wood</u>
L. Lin Wood