# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SEBASTIAN CORDOBA, individually and on behalf of all others similarly-situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO.: |
| vs. | ) ) | 1:15-CV-03755-MHC |
| DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc., | ) ) ) ) | |
| Defendant. | ) ) ) | |

_____

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................1

II.   BACKGROUND ...............................................................................3

    A.   The Telephone Consumer Protection Act..................................3

    B.   Telecel's and DIRECTV's Calling Practices............................5

        1.   Telecel Called Consumers on the National Do Not
             Call Registry. ...................................................................5

        2.   Telecel Did Not Maintain an Internal Do Not Call
             List. ..................................................................................6

        3.   DIRECTV Was Legally Obligated to Monitor
             Telecel and Ratified Telecel's Conduct. .........................7

    C.   Background of Plaintiff's Claims .............................................9

III.  LEGAL STANDARD .....................................................................10

IV.   ARGUMENT ..................................................................................11

    A.   The Proposed Classes .............................................................11

    B.   The Class Representative Has Standing. .................................12

    C.   The Proposed Classes Are Ascertainable. ..............................12

    D.   The Requirements of Rule 23(a) Are Met. .............................14

        1.   The Proposed Classes Are Sufficiently Numerous. ......14

        2.   The Proposed Classes Involves Common Issues of
             Law and Fact...................................................................15

        3.   Plaintiff's Claims Are Typical of Those of the
             Classes. ...........................................................................16

        4.   Plaintiff and His Counsel Are Adequate. ......................17

    E.   The Rule 23(b)(3) Requirements Are Satisfied. .....................18

        1.   Common Issues Predominate. ........................................19

            i.   Statutory Violations of the TCPA Will Be
                Resolved With Proof Common to All Class
                Members. ...........................................................20

ii. DIRECTV's Affirmative Defenses Will Be Resolved With Proof Common to All Class Members. ...........................................................21

iii. DIRECTV's Vicarious Liability Will Be Resolved With Proof Common to All Class Members. ...........................................................22

iv. Knowing and/or Willful Violations of the TCPA Will Be Resolved With Proof Common to All Class Members. .........................23

2. A Class Action Is the Superior Method of Adjudicating the Claims of the Class Members. ...........24

V. APPOINTMENT OF CLASS COUNSEL.........................................25

VI. CONCLUSION ...................................................................................25

**TABLE OF AUTHORITIES**

Page

<u>CASES</u>

*Agne v. Papa John's Int'l,*
   286 F.R.D. 559 (W.D. Wash. 2012) ............................................................ 13, 22

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011) ......................................................................... 3

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. passim

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ...................................................................... 11, 19, 20

*Bee, Denning, Inc. v. Capital Alliance Group*,
   310 F.R.D. 614 (S.D. Cal. 2015) .................................................................. 25

*Birchmeier v. Carribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014) ......................................................... 14, 18, 19

*Breslow v. Wells Fargo Bank, N.A.*,
   857 F. Supp. 2d 1316 (S.D. Fla. 2012)
   *aff'd*, 755 F.3d 1265 (11th Cir. 2014) ......................................................... 21

*Carriuolo v. General Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ................................................................ 13, 16

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003) .................................................................. 15

*Comcast v. Behrend*,
   133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) .................................................. 11

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ......................... 15

*Glazer v. Whirlpool Corp.*,
   722 F.3d 838 (6th Cir. 2013) ....................................................................... 11

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ..................................................................................... 10

*Hinman v. M and M Rental Center, Inc.*,
   545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................... 25

1318210.8

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Disposable Contact Lens Antitrust Litig.*,
170 F.R.D. 524 (M.D. Fla. 1996) ..................................................................17

*In re Dynasty Mortg., LLC,*
22 F.C.C.R. 9453, 22 FCC Rcd. 9453,
41 Communications Reg. (P&F) 461,
2007 WL 1427724 ..........................................................................................23

*In re Joint Pet. Filed by Dish Network*,
28 FCC Rcd. 6574 (2013) ..................................................................................5

*In re Terazosin Hydrochloride Antitrust Litig.*,
220 F.R.D. 672 (S.D. Fla. 2004) ....................................................................15

*In The Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991: Request of State Farm for Clarification and Declaratory
Ruling,*
20 FCC Rcd 13664 (FCC 2005) ........................................................................5

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
728 F.3d 682 (7th Cir. 2013) .....................................................................2, 11

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ....................................................... 11, 19, 24

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ......................................................................17

*Krakauer v. Dish Network L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015) ............................................................ passim

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
780 F.3d 1101 (11th Cir. 2015) ......................................................................23

*Little v. T–Mobile USA, Inc.*,
691 F.3d 1302 (11th Cir. 2012) ......................................................................13

*Mais v. Gulf Coast Collection Bureau, Inc.*,
768 F.3d 1110 (11th Cir. 2014) ........................................................................5

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) ....................................................................11

1318210.8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Mims v. Arrow Fin. Servs. LLC*,
132 S. Ct. 740 (2012) .........................................................3

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....................................... 13, 14

*Pottinger v. City of Miami*,
720 F. Supp. 955 (S.D. Fla. 1989)........................................17

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
281 F.R.D. 327 (E.D. Wis. 2012)........................................25

*Rogers v. Capital One Bank (USA), N.A.*,
No. 1:15-CV-4016-TWT, 2016 WL 3162592 (N.D. Ga. June 7, 2016)..............12

*Savanna Group, Inc. v. Trynex, Inc.*,
No. 10–cv–7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013).......................... 15, 16

*Singer v. AT & T Corp.*,
185 F.R.D. 681 (S.D. Fla. 1998) .......................................19

*Sosna v. Iowa*,
419 U.S. 393 (1975) ...........................................................18

*United States v. DIRECTV, Inc.*,
No. 09-02605 (C.D. Cal. May 14, 2009)..............................8

*United States v. DirecTV, Inc.*,
No. 05-1211 (C.D. Cal. Dec. 14, 2005)...............................8

*Valley Drug. Co. v. Geneva Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003)........................................18

*Wagner v. CLC Resorts & Developments, Inc.*,
32 F. Supp. 3d 1193 (M.D. Fla. 2014) ...........................4, 21

*Walco Invs., Inc. v. Thenen*,
168 F.R.D. 315 (S.D. Fla. 1996) .....................................17

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ........................... 11, 15, 19

## **STATUTES**

105 Stat. 2394 ............................................................3

**TABLE OF AUTHORITIES**
**(continued)**

                                                                                    Page

16 C.F.R. § 310.4(b)(3)(iv) ...................................................................... 3

28 U.S.C. § 2342 ...................................................................................... 5

47 C.F.R. § 64.1200 ...................................................................... 3, 4, 22

47 U.S.C. § 227 .................................................................... 1, 2, 3, 4, 21

## **RULES**

Fed. R. Civ. P.
  1 ............................................................................................................ 24
  23(a) .............................................................................. 2, 10, 14
  23(a)(2) .......................................................................................... 15
  23(a)(3) .......................................................................................... 16
  23(a)(4) .......................................................................................... 18
  23(b) ................................................................................................ 10
  23(g)(1) .......................................................................................... 25

## **OTHER AUTHORITIES**

Wright, *et al.*, 7A *Fed. Practice & Proc.*
  § 1751 (3d ed. 2010) ........................................................................ 10

1318210.8

# I.  INTRODUCTION

Plaintiff Sebastian Cordoba brings this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., action against Defendant DIRECTV, LLC ("DIRECTV"), for illegal telemarketing calls to consumers' telephones placed by its authorized vendor Telecel Marketing Solutions, Inc. ("Telecel").  Although the National Do Not Call ("NDNC") Registry grants an unqualified right to avoid unwanted telemarketing calls, Telecel made DIRECTV marketing calls to persons registered on the NDNC Registry and failed to establish the required minimum procedures to stop calling people who request that such calls end.  DIRECTV is a serial violator of the TCPA that seemingly treats enforcement actions, record-breaking FCC fines, and private litigation challenging its repeated TCPA violations as a mere cost of doing business.  Remarkably, DIRECTV continues to employ Telecel's telemarketing services to this day.

With this motion, Plaintiff seeks certification of a limited class of 926 persons who registered for the NDNC Registry, but nonetheless received repeated calls from Telecel marketing DIRECTV products.  Plaintiff also seeks certification of a second class of 16,870 persons called while Telecel lacked the legally required internal Do Not Call list and minimum procedures, which would have permitted it to process and honor do-not-call requests.

This case is well-suited for class treatment. The Supreme Court has held that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Class certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). In similar cases involving alleged do-not-call violations of the TCPA, courts have not hesitated to certify classes. *See, e.g.*, *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (certifying a nationwide TCPA NDNC Registry class and a nationwide TCPA internal Do Not Call list class).

This case accords with those holdings and would further Rule 23's dual goals of efficiency and fairness. As detailed below, the proposed classes are ascertainable; satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy; and satisfy the Rule 23(b)(3) requirements of predominance and superiority. Plaintiff respectfully seeks certification under Rule 23(b)(3) of two classes of persons who received calls from Telecel on behalf of DIRECTV. Plaintiff also requests that the Court appoint him as Class Representative and that his counsel be appointed Class Counsel.

## II.  BACKGROUND

### A.  The Telephone Consumer Protection Act

Congress enacted the TCPA to prevent telemarketing calls by companies

that escaped state invasion of privacy and nuisance statutes by operating interstate.

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).  Congress embedded

the reasons for the TCPA into the statute itself with explicit Congressional

Findings noting that "[u]nrestricted telemarketing  . . . can be an intrusive invasion

of privacy."  105 Stat. 2394, § 5 (notes following 47 U.S.C. § 227).  "The TCPA is

essentially a strict liability statute … [and] does not require any intent for liability

except when awarding treble damages."  *Alea London Ltd. v. Am. Home Servs.,*

*Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted).

The TCPA prohibits sellers from making telephone solicitations to people

who have registered their telephone numbers on the NDNC Registry. 47 U.S.C. §

227(c)(5); *Krakauer*, 311 F.R.D. at 387.  The TCPA prohibits telemarketer calls to

an NDNC registrant unless that registrant provides prior express written consent to

receive the calls in a signed, written agreement.  47 C.F.R. § 64.1200(c)(2)(ii).  To

avoid calling a number listed on the Registry, a telemarketer can easily and

inexpensively "scrub" its call lists against the Registry database at least once every

thirty-one days.  *See* 16 C.F.R. § 310.4(b)(3)(iv).

The TCPA also prohibits *all* telemarketing calls "unless such [company] has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that [company]." 47 C.F.R. § 64.1200(d). The "minimum standards" for these procedures include placing an individual's phone number on an internal do-not-call registry, to honor that request no later thirty days of its receipt—and not calling that number again. 47 C.F.R. § 64.1200(d)(3). A company violates the TCPA when it "initiat[es a] phone call without having implemented the minimum procedures." *Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (citations omitted).

Vicarious liability is well established under the TCPA for all calls "by ***or on behalf of*** the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5) (emphasis added). Congress vested the Federal Communication Commission ("FCC") with authority to issue regulations implementing the TCPA. 47 U.S.C. § 227(b)(2). Under FCC regulations, vicarious liability may be based on the principles of apparent authority, actual authority, and ratification, or, under the express terms of §227(c), when unlawful calls are placed "on behalf of" the seller.

*In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).[1] FCC rulings

are binding on this Court because the federal appellate courts have exclusive

jurisdiction over challenges to FCC rulings. *See* 28 U.S.C. § 2342; *Mais v. Gulf*

*Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014).

### B. Telecel's and DIRECTV's Calling Practices

#### 1. Telecel Called Consumers on the National Do Not Call Registry.

Telecel operates call centers in El Salvador and Maryland. Hutchinson Decl.

("Hutchinson"), ¶ 9 & Ex. B (Diaz Dep. 76:5-12). From these call centers, Telecel

places telemarketing calls to persons with area codes in Maryland, Virginia, and

the District of Columbia. *Id.* at 127:5-14. Telecel did not check any outgoing calls

against the NDNC List. *Id.* at 132:7-9.

Plaintiff obtained a list of telephone calls placed by Telecel on behalf of

DIRECTV from its El Salvador and Maryland call centers between March 27,

2015 and March 3, 2016. Hutchinson, ¶10 & Ex. C ("Telecel Aff."); *see also id.*,

---

[1] *See also In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of State Farm for Clarification and Declaratory Ruling,* 20 FCC Rcd 13664, 13666-13668 (FCC 2005) ("We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the ultimate responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of the company are treated as if the company itself placed the call.").

¶ 9 & Ex. B (Diaz Dep. 76:5-12). In a sworn affidavit drafted by Telecel's counsel, Telecel confirmed: "The purpose of each call included marketing DIRECTV, LLC's services. Hutchinson, ¶ 10 & Ex. C ("Telecel Aff."), ¶¶ 3-6. Plaintiff's expert identified 926 telephone numbers that received at least two calls while registered on the NDNC List. Affidavit of Anya Verkhovskaya, A.B. Data, Ltd. ("Verkhovskaya"), ¶ 13.

### 2. Telecel Did Not Maintain an Internal Do Not Call List.

Telecel's representative confirmed that it did not maintain an internal do-not-call list. Hutchinson, ¶ 9 & Ex. B (Diaz 106:21-25.) Telecel further confirmed that it *did not*: maintain a written policy for handling do-not-call requests, have any procedure for DIRECTV to communicate do-not-call requests to Telecel, train its employees regarding do-not-call requests, record do-not-call requests, honor do-not-call requests, or provide sufficient information to allow called persons to make a do-not-call request. *Id.* at 108:12-17, 111:10-14, 111:19-22, 113:17-114:1. In other words, there is no evidence that DIRECTV or Telecel implemented the minimum procedures – or *any* procedures –required by the TCPA to safeguard against precisely this type of conduct. Telecel confirmed that it would have maintained an internal do-not-call list if DIRECTV had simply requested it, which it did not. *Id.* at Diaz Dep. 115:7-10. Plaintiff's expert identified 16,870 telephone

numbers that received at least two calls while Telecel failed to adhere to any minimum procedures.  *See* Verkhovskaya, ¶ 11.

### 3.    DIRECTV Was Legally Obligated to Monitor Telecel and Ratified Telecel's Conduct.

DIRECTV contracted with, and relied upon, Telecel to place telemarketing calls.  Hutchinson, ¶ 11 & Ex. D (contracts).  Telecel's corporate representative admitted at deposition that "we call on behalf of DIRECTV."  Hutchinson, ¶ 9 & Ex. B (Diaz Dep. 204:4-5).  In a sworn affidavit, Telecel admitted that all telemarketing calls reflected in its calling records were made to market DIRECTV's services.  Hutchinson, ¶ 10 & Ex. C ("Telecel Aff."), ¶¶ 3-6.[2]

As part of its contractual relationship with Telecel, DIRECTV subjected Telecel to constant interaction and oversight.  Hutchinson, ¶ 9 & Ex. C (Diaz 170:9-17).  DIRECTV knew of, and gave *mandatory* prior approval for, Telecel's El Salvador call center before it opened and sent a DIRECTV representative to El Salvador to oversee Telecel's calling operations.  *Id.* at 156:12-157:4, 157:16-18. DIRECTV preapproved all Telecel advertisements.  *Id.* at 204:3-6; *see also* Hutchinson, ¶ 13 & Ex. F (emails documenting other oversight by DIRECTV of

---

[2] At deposition, Telecel's representative, upon questioning from DIRECTV's attorney, claimed that the purpose of each call "could have included" DIRECTV service.  Hutchinson, ¶ 9 & Ex. C (Diaz 86:5-7).

possible fraud involving Telecel).

DIRECTV has been sued by the Federal Trade Commission ("FTC") on multiple occasions for violations of the TCPA. *See United States v. DirecTV, Inc.,* No. 05-1211 (C.D. Cal. Dec. 14, 2005); *United States v. DIRECTV, Inc.*, No. 09-02605 (C.D. Cal. May 14, 2009). The cases ended in civil penalties of $5,335,000 and $2,310,000, respectively, and mandatory injunctive relief. *See* Hutchinson, ¶ 12 & Ex. E. The Permanent Injunction enjoined DIRECTV— both directly and indirectly through its authorized telemarketers— from calling persons whose telephone numbers are on the NDNC Registry and calling persons who request not to receive calls. The Permanent Injunction further required DIRECTV to: (1) conduct a due diligence investigation to ensure its telemarketers established and enforced effective TCPA compliance policies; (2) monitor all outbound telemarketing campaigns to ensure calls are not placed to numbers on the NDNC Registry or to persons who request not to be called; (3) investigate each consumer complaint; and (4) immediately cease doing business with any telemarketer making calls to persons whose numbers are registered on the NDNC Registry. *Id.* (2009 Permanent Injunction at 7-9). DIRECTV did not take any of these steps with respect to Telecel. Hutchinson, ¶ 9 & Ex. C (Diaz at 202:3-203:8). Indeed, DIRECTV never investigated nor audited Telecel's calling practices, despite

knowing that Telecel had engaged in possible fraudulent calling activity. *Id.* at

202:7-12, 20-22; *see also* Hutchinson, ¶ 13 & Ex. F. Finally, Telecel continued

working with Telecel, and permitted Telecel to continue calling Plaintiff, despite

knowing that Telecel was violating the NDNC Registry when it did so. *See*

Hutchinson, ¶ 14 & Ex. G.

Despite this knowledge, DIRECTV did not cease its relationship with

Telecel and continues to employ Telecel to this day. Moreover, DIRECTV did not

instruct Telecel to preserve call data after this lawsuit was initiated. Hutchinson,

¶ 9 & Ex. B (Diaz 190:24-191:2). As a result, Telecel did not begin preserving

relevant call data until *five months after* this lawsuit was filed. *Id.* at 188:15-23.

### C.  **Background of Plaintiff's Claims**

Plaintiff Sebastian Cordoba is not, and never has been, a customer of

DIRECTV nor had any relationship with the company. Declaration of Sebastian

Cordoba, ¶ 4. Neither DIRECTV nor Telecel had a signed written agreement with

Cordoba allowing DIRECTV or Telecel to call him. *Id.*, ¶¶ 6-7. Nonetheless,

Cordoba began receiving unsolicited telemarketing calls from DIRECTV in July

2014. *Id.*, ¶¶ 8-9. Cordoba requested that the calls stop and, in December 2014,

placed his number on the NDNC Registry. *Id.*, ¶ 13. On December 11, 2014,

Cordoba contacted DIRECTV in writing to demand that the calls cease. *Id.*, ¶ 11,

Ex. 1.  On January 8, 2015, Cordoba e-mailed DIRECTV Customer Care that the calls cease.  *Id.*, ¶ 15, Ex. 2.  On January 9, 2015, Cordoba contacted DIRECTV's VP of Customer Service in writing to demand that the calls cease.  *Id.*, ¶ 16, Ex. 2. On January 9, 2015, DIRECTV responded to Cordoba by stating in writing that the unsolicited and unwelcomed calls would cease.  *Id.*, ¶ 17, Ex. 2.  However, from April 6 to November 4, 2015, Telecel called Cordoba 18 times. *Id.*, ¶ 20.

## III.  <u>LEGAL STANDARD</u>

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and Rule 23(b)(3).  The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) ("Class actions serve an important function in our system of civil justice.").

Consumer protection cases, like this one under the TCPA, which arise from a single course of conduct that affects large numbers of consumers, are particularly amenable to class treatment.  *Amchem*, 521 U.S. at 625.  Accordingly, "[c]lass certification is normal in litigation under [the TCPA]."  *Ira Holtzman, C.P.A.,* 728 F.3d at 684; *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674

(S.D. Fla. 2013) (certifying TCPA class).

The Court has considerable discretion in making class certification decisions. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). It must, however, conduct a "rigorous analysis" of the Rule 23 prerequisites. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). Although in some circumstances this "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551, the Supreme Court "admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 851-852 (6th Cir. 2013) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)).

## IV. ARGUMENT

### A. The Proposed Classes

Plaintiffs seek certification of two classes under Rule 23(b)(3):

> Do Not Call Class: All persons residing within the United States who, from March 27, 2015 through the present, received more than one telephone call from Telecel while registered on the National Do Not Call Registry for the purpose of selling or attempting to sell DIRECTV's services.

> Minimum Procedures Violation Class: All persons

within the United States who, from March 27, 2015
through the present, received more than one telephone
call from Telecel for the purpose of selling or attempting
to sell DIRECTV's services.

## B.    The Class Representative Has Standing.

Plaintiff received calls on his telephone while registered for the NDNC

Registry and while Telecel had no system in place to register do-not-call requests.

Plaintiff alleges that those calls violated the TCPA, which provides for statutory

damages to the call recipient.  As such, Plaintiff has properly alleged: (1) an injury-

in-fact (the invasion of privacy caused by the unwanted calls); (2) stemming from

the defendant's unlawful conduct (the telemarketing calls in violation of the

TCPA); and (3) that the injury may be redressed (via the statutory TCPA

damages).  "[T]he Eleventh Circuit has held [that] a violation of the TCPA is a

concrete injury." *Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-

TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (citations omitted).

Accordingly, as a plaintiff who alleges the receipt of unwanted telemarketing

phone calls, Plaintiff has standing to represent the proposed classes.  *See id.*

## C.    The Proposed Classes Are Ascertainable.

"[A] plaintiff seeking to represent a proposed class must establish that the

proposed class is 'adequately defined and clearly ascertainable.'"  *Carriuolo v.*

*General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citing *Little v. T–Mobile*

*USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)).  "Rule 23 requires that a class be defined, and experience has led courts to require that classes be defined clearly and based on objective criteria."  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).  A defendant's argument that identifying class members "may be difficult" is not sufficient to preclude a finding that a TCPA class is ascertainable. *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (finding TCPA class ascertainable).

Plaintiff's proposed Do Not Call Class consists only of individuals who meet four criteria; they received: (1) at least two calls made by Telecel; (2) between March 27, 2015 and March 3, 2016; (3) marketing DIRECTV's services; (4) while registered on the NDNC Registry.   The Minimum Procedures Violation Class includes individuals who meet just three criteria; they received:  (1) at least two calls made by Telecel; (2) between March 27, 2015 and March 3, 2016; (3) marketing DIRECTV's services.[3]  The classes represent "a particular group, harmed during a particular time frame, in a particular location, in a particular way," and thus avoids the problem of a vague class definition.  *See Mullins*, 795

---

[3] *See also Krakauer*, 311 F.R.D. at 393 ("If the Court were to deny certification because [the defendant] does not keep an accurate list as the regulations require. . . ., it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.").

F.3d at 660. These elements can be evaluated based entirely on objective criteria. As such, the proposed classes are ascertainable.

Moreover, the discrete classes here are not only ascertainable, but comprehensively identified through Telecel's records. Plaintiff's expert, using call data obtained from Telecel, identified 926 persons who comprise the Do Not Call Class and 16,870 persons in the Minimum Procedures Violation Class.[4] This showing more than satisfies the ascertainability requirements of Rule 23. *Cf. Birchmeier v. Carribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014), (holding that plaintiff's list of 930,000 phone numbers established a "sufficiently ascertainable" TCPA telemarketing class).

### D. The Requirements of Rule 23(a) Are Met.

The proposed classes meet Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements.

#### 1. The Proposed Classes Are Sufficiently Numerous.

A class is numerous if it is large enough "that joinder of all parties is impractical." Fed. R. Civ. P. 23(a)(1). In the TCPA context, "[a] class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v.*

---

[4] Plaintiff has made this showing despite the fact that DIRECTV and Telecel failed to preserve call data for five months after Plaintiff brought this action.

*Trynex, Inc.,* No. 10–cv–7995, 2013 WL 66181, *4 (N.D. Ill. Jan. 4, 2013).

Telecel's records show calls to 926 telephone numbers on the NDNC Registry, and calls to 16,870 unique numbers placed while Telecel did not maintain do-not-call procedures. This is more than sufficient to satisfy numerosity.

### 2. The Proposed Classes Involves Common Issues of Law and Fact.

"Commonality is satisfied where common questions are capable of generating common answers apt to drive the resolutions of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556; *Carriuolo*, 823 F.3d at 984 (same); *see also Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (commonality threshold is "not high"). Because, by definition, calling programs are carried out on a mass basis, a proposed TCPA class often contains common issues of law and fact. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (collecting cases); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685-86 (S.D. Fla. 2004) (finding commonality satisfied where the defendant is alleged to have "engaged in a standardized course of conduct that affects all class members").

The same is true here. All of the calls at issue for the Do Not Call Class were made: (1) to telephone numbers (2) on the DNC Registry—issues of fact

capable of proof by evidence common to every class member. All of the calls at issue for the Minimum Procedures Violation Class were made while Telecel had none of the minimum do-not-call procedures in place. This common evidence, in conjunction with the evidence of DIRECTV's and Telecel's actions and inactions, permits a classwide merits determination of whether DIRECTV is vicariously liable for Telecel's telemarketing activities. Similarly, whether Telecel's calls constitute "willful" or "knowing" violations of the TCPA—particularly calls made after this case had been filed and DIRECTV indisputably had knowledge of this wrongful conduct—is a legal issue capable of determination on a classwide basis.[5]

Given these common issues, Plaintiff has articulated a "common nucleus of operative fact" that links all class members' claims together. *See Savanna Group,* 2013 WL 66181, at *8. The proposed classes therefore satisfy commonality.

### 3. Plaintiff's Claims Are Typical of Those of the Classes.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust*

---

[5] Should liability be found, damages are simply basic math: in light of the statutory damages provisions of the TCPA, damages can be calculated on a classwide basis simply by multiplying the number of calls received by the statutory penalty. *Cf. Carriuolo*, 823 F.3d at 988 (holding that even "individualized damages calculations are insufficient to foreclose the possibility of class certification").

*Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (citation omitted). The "typicality" requirement is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based upon similar legal theories and are not antagonistic to the class. *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989).

Typicality does not require identical claims or defenses, and a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Any alleged atypicality "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996) (citation omitted).

Here, Plaintiff's claims are typical of the claims of all class members because they arise from the same course of conduct. Plaintiff, like all Class members, received telemarketing calls from Telecel while registered on the National DNC Registry, and while Telecel had no do-not-call procedures in place. Typicality is satisfied.

### 4. Plaintiff and His Counsel Are Adequate.

Rule Fed. R. Civ. P. 23(a)(4) requires that the representative parties will

"fairly and adequately protect the interests of the class." This requirement is

satisfied when (i) the class representatives have no interests conflicting with the

class; and (ii) the representatives and their attorneys will properly prosecute the

case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Valley Drug. Co. v. Geneva

Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). While adequacy and

typicality analysis "tend[ ] to merge," *Amchem*, 521 U.S. at 626 n. 20 (1997),

courts have rejected proposed class representatives due to "conflicts of interest" or

"serious credibility problems." *Birchmeier*, 302 F.R.D. at 252 (internal quotation

marks and citations omitted).

 Plaintiff has no interests that are antagonistic to the classes. There is no

indication of any credibility or other problems with Plaintiff. Mr. Cordoba has

committed to achieving the best result for all members of the classes. He has

received no money or other compensation in return for serving as a class

representative. His interests are aligned precisely with those of the classes.[6]

 **E.**   **The Rule 23(b)(3) Requirements Are Satisfied.**

 Plaintiff seeks certification under Rule 23(b)(3), which requires that

"questions of law or fact common to the class members predominate over any

questions affecting only individual members," and that "a class action is superior

---

[6] The qualifications of Plaintiff's counsel are addressed below in Section V.

to other available methods for fairly and efficiently adjudicating of the controversy." *Birchmeier,* 302 F.R.D. at 252, 255 (quoting the rule) (internal quotation marks omitted). Here, common questions predominate over individual issues and the class action device is superior to other methods of adjudication.

### 1.    Common Issues Predominate.

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. The touchstone for predominance analysis is efficiency. It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *Klay*, 382 F.3d at 1254. "An issue that is central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment." *Id.* (quoting *Dukes*, 131 S. Ct. at 2551). If the liability issue is common to the class, common questions predominate over individual questions. *Singer v. AT & T Corp.*, 185 F.R.D. 681, 690 (S.D. Fla. 1998).

In addition, while Rule 23(b)(3) requires that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 133 S. Ct. at 1191. "[A] Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* Whether

or not this case is ultimately decided in favor of the class, its resolution will be determined by answering questions common to all class members.

In this case, the issues to be resolved pertain to DIRECTV's conduct and knowledge. Resolution of these core issues will turn, respectively, on the same evidence and testimony from key decision-makers. Indeed, it is difficult to imagine how such evidence could possibly vary between class members. For this reason, courts readily certify TCPA class actions such as this one. *See, e.g.*, *Krakauer*, 311 F.R.D. at 387. TCPA claims are particularly well-suited to class treatment because they are entirely about a single uniform course of conduct – telemarketing calls – directed to consumers. These are exactly the type of cases that "the Advisory Committee sought to cover[,] in which a class action would achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to person similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

### i. Statutory Violations of the TCPA Will Be Resolved With Proof Common to All Class Members.

TCPA claims, by their nature, involve large numbers of plaintiffs and a common course of conduct that affected each class member in the same way. A statutory violation of the TCPA contains just two elements: (1) the defendant called a telephone number, and (2) registered to the NDNC Registry. 47 U.S.C. §

227(c)(5). A minimum procedures violation merely requires the initiation of a telemarketing call without having implemented the minimum procedures. *Wagner*, 32 F. Supp. 3d at 1198. Plaintiff bears the burden on these elements. Common issues predominate as to each element. The answer to the central common questions – whether or not (1) Telecel's calls on DIRECTV's behalf to class members registered on the NDNC Registry violate the TCPA and (2) such calls while it did not have the required minimum procedures violate the TCPA – will be the same for both classes.

### ii. DIRECTV's Affirmative Defenses Will Be Resolved With Proof Common to All Class Members.

A defendant bears the burden on affirmative defenses under the TCPA. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (holding that prior express consent of the called party is an affirmative defense to a TCPA action.) *aff'd*, 755 F.3d 1265 (11th Cir. 2014). Common issues predominate that will prevent DIRECTV from establishing any affirmative defense.

There is a complete lack of evidence that any class member provided the required prior express written consent to receive telemarketing calls. Under the relevant FCC regulations, such prior express written consent "*must be* evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone

number to which the calls may be placed."  47 C.F.R. § 64.1200 (emphasis added).

In the absence of such evidence, neither defendant's "speculation" that class

members may have given their prior express consent to receive calls nor "a bare

assertion of individualized issues of consent" are sufficient to defeat class

certification.  *Agne*, 286 F.R.D. at 568 (citations omitted); *accord Krakauer*, 311

F.R.D. at 398 ("[Defendant] has done little more than speculate about the

frequency of this potential issue and the difficulties it would raise in a class

setting.").  Given the complete lack of evidence, the Court may determine on a

classwide basis that DIRECTV cannot meet its burden of establishing prior express

written consent to make telemarketing calls to any class member.  Common issues

regarding DIRECTV's potential affirmative defense of prior express consent

therefore predominate.

### iii.    DIRECTV's Vicarious Liability Will Be Resolved With Proof Common to All Class Members.

Plaintiff has identified common issues that arise from DIRECTV's

relationship with Telecel.  Here, Telecel's corporate representative admitted at

deposition that "we call on behalf of DIRECTV."  Hutchinson, ¶ 9 & Ex. C (Diaz

204:4-5).  The evidence fully supports that conclusion.  Under its contract with

Telecel, DIRECTV maintained constant interaction with, and oversight over,

Telecel.  *Id.* at 170:9-17.  Telecel established its El Salvador call center with

DIRECTV's explicit knowledge, approval, and oversight. *Id.* at 156:12-157:4, 157:16-18. DIRECTV preapproved all Telecel marketing. *Id.* at 204:3-6. And, Telecel admitted that all telemarketing calls reflected in its calling records were made to market DIRECTV's services. Hutchinson, ¶10 & Ex. C ¶¶ 3-6.

Whether or not DIRECTV is vicariously liable for Telecel's actions is a question that can only be resolved on a classwide basis. It is a binary question: DIRECTV either is, or is not, vicariously liable for the calls made on its behalf by Telecel. The answer will not—cannot—vary class member to class member.

### iv. Knowing and/or Willful Violations of the TCPA Will Be Resolved With Proof Common to All Class Members.

For knowing or willful Do-Not-Call List violations, the FCC has held that "'[w]illful' in this context means that the violator knew that he was doing the act in question. . . [a] violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg., LLC*, 22 F.C.C.R. 9453, 22 FCC Rcd. 9453, 41 Communications Reg. (P&F) 461, 2007 WL 1427724, at ¶ 45, fn. 86; *see also Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (discussing willfulness under the separate TCPA provision governing automated calls).

Plaintiff has amassed significant evidence of DIRECTV's knowledge and

willfulness, including employing Telecel to make telemarketing calls on its behalf: (1) *after* a Permanent Injunction prohibited it from contracting with telemarketers violating the TCPA, (2) *after* DIRECTV received complaints of Telecel's repeated TCPA violations on behalf of DIRECTV, and (3) *after* Plaintiff filed this lawsuit detailing the TCPA violations. The central question of whether DIRECTV's conduct was knowing and/or willful is common and predominates.

### 2. A Class Action Is the Superior Method of Adjudicating the Claims of the Class Members.

Rule 23(b)(3)'s superiority prong requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); Fed. R. Civ. P. 1 (noting that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). The superiority analysis focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269.

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating TCPA claims a class proceeding avoids duplicative individual lawsuits. *See, e.g. Hinman v. M and M Rental Center, Inc.,* 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,* 281

F.R.D. 327, 339 (E.D. Wis. 2012). One federal court recently found a TCPA case "highlights one of the strongest justifications for the class action device: its regulatory function . . . [as] individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute." *Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 630 (S.D. Cal. 2015). This observation is particular true where, as here, DIRECTV has engaged in serial violations of the TCPA that cannot be deterred by individual actions. Thus, the proposed classes meet Rule 23(b)(3)'s superiority requirement .

## V.    APPOINTMENT OF CLASS COUNSEL

Plaintiff's counsel satisfy Fed. R. Civ. P. 23(g)(1). Here, Plaintiff's counsel are experienced class action practitioners, fully versed in the intricacies of class actions and TCPA class actions in particular. Wood ¶ 5; Hutchinson, ¶¶ 5-7; Wilson, ¶ 4. Counsel have resolved dozens of similar TCPA cases, including some of the largest cash settlements in the history of the TCPA and will devote those same resources to resolving this case. Hutchinson, ¶¶ 5-8; Wilson, ¶¶ 4-6.

## VI.   CONCLUSION

Plaintiff respectfully requests that the Court certify the proposed classes.

Respectfully submitted,

Dated: October 31, 2016

**L. LIN WOOD, P.C.**

/s/ L. Lin Wood
L. Lin Wood
State Bar No. 774588
lwood@linwoodlaw.com
Nicole Jennings Wade
State Bar No. 390922
nwade@linwoodlaw.com
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@linwoodlaw.com
G. Taylor Wilson
State Bar No. 460781
twilson@linwoodlaw.com

1180 West Peachtree Street, Ste. 2400
Atlanta, GA 30309
(404) 891-1402 (Phone)
(404) 506-9111 (Fax)

**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**

Jonathan D. Selbin (pro hac vice)
jselbin@lchb.com
Douglas I. Cuthbertson (pro hac vice)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson (pro hac vice)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

**MEYER WILSON CO., LPA**

Matthew R. Wilson (pro hac vice)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (pro hac vice)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

**KING & YAKLIN, LLP**

Stephen A. Yaklin
State Bar No. 780125
syaklin@kingyaklin.com
Matthew M. Wilkins
Georgia Bar No. 142291
mwilkins@kingyaklin.com
192 Anderson Street, Suite 125
Marietta, Georgia 30060
770-424-9235 office
770-424-9239 facsimile

*Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern

District of Georgia, that the PLAINTIFF'S MOTION FOR CLASS

CERTIFICATION was prepared in 14-point Times New Roman Font.

October 31, 2016.

*/s/*     G. Taylor Wilson

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing PLAINTIFF'S MOTION FOR CLASS CERTIFICATION to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

October 31, 2016.

*/s/*    G. Taylor Wilson