## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SEBASTIAN CORDOBA, and RENÉ ROMERO, individually and on behalf of all others similarly-situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 1:15-CV-03755-MHC |
| | ) | |
| DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc., | ) ) ) | Third Amended Complaint |
| | ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |
| | ) | |

_____

## THIRD AMENDED CLASS ACTION COMPLAINT

**COME NOW**, Sebastian Cordoba and René Romero, individually and on behalf of all others similarly-situated, and file this Third Amended Class Action Complaint ("Third Amended Complaint") against DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc. ("DIRECTV"), showing this Honorable Court, upon proof adduced through discovery in this Action, personal knowledge, investigation of counsel, and/or information and belief, as follows:

1511776.3

## THE PARTIES AND CLAIMS

### 1.

At all relevant times, Plaintiff Sebastian Cordoba ("Plaintiff Cordoba") resided in the State of Georgia and this District.

### 2.

Plaintiff Cordoba has sought to certify two national classes against DIRECTV for violations of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and the related rules and regulations promulgated by the Federal Communication Commission, 47 C.F.R. § 64.1200 (the "Regulations").

### 3.

With the benefit of certain discovery, Plaintiff Cordoba has brought this action on behalf of himself and on behalf of all other persons similarly situated consisting of one "Internal Do Not Call Class" and one "National Do Not Call Class."

### 4.

DIRECTV engaged Telecel Marketing Solutions, Inc. ("Telecel") in 2003 to market DIRECTV's products and services by telephone.

1511776.3

5.

On July 12, 2017, this Court certified an Internal Do Not Call Class comprised of "all persons within the United States who received more than one telephone call on or after October 27, 2011, from Telecel on behalf of DIRECTV for the purpose of selling or encouraging the sale of DIRECTV'S goods and/or service.  In violation of 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5), DIRECTV failed to implement mandatory minimum procedures required by the TCPA and the Regulations for making telemarketing calls, including the most basic requirement of maintaining a list of persons who request not to receive such calls.  Telecel's calling data shows 52,810 such calls to 16,870 unique numbers.

6.

In addition, this Court  certified a National Do Not Call Class of comprised of "all persons residing within the United States whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone call on or after October 27, 2011, from Telecel on behalf of DIRECTV for the purpose of selling or attempting to sell DIRECTV'S goods and/or services."   In violation of 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c)(5), Telecel's calling data shows 2,829 such calls to 926 unique numbers.

1511776.3

7.

Plaintiff René Romero ("Plaintiff Romero") resides in the State of Maryland.

8.

Plaintiff Romero seeks to certify a national class against DIRECTV for its violations of the Satellite Television Extension and Localism Act of 2010 ("STELA"), 47 U.S.C § 338(i), during the course of this litigation.

9.

With the benefit of certain discovery, Plaintiff Romero has brought this action on behalf of himself and on behalf of all other persons similarly situated consisting of a "Personal Information Disclosure Class."

10.

DIRECTV engaged Debra J. Aron as a paid witness to defend DIRECTV against the TCPA claims of the Internal Do Not Call List Class and the National Do Not Call List Class in this action.  DIRECTV shared Plaintiff Romero's and the Personal Information Disclosure Class's private consumer information with Ms. Aron in a document titled the "Matched Accounts List."

11.

On July 12, 2017, "[t]he Court agree[d] with DIRECTV that, at a minimum, the Matched Accounts List's inclusion of various forms of customer data (including individuals' status as DIRECTV customers, account numbers, and creation and disconnect dates) . . . brings it within the 'consent to disclosure' provisions of [STELA,] 47 U.S.C. § 338(i)(4)(A)."  Accordingly, DIRECTV was strictly prohibited from sharing the data unless DIRECTV satisfied one of the four narrow exceptions under 47 U.S.C. § 338(i)(4)(B).  However, the Court also specifically found that "DIRECTV'S disclosure of the Matched Account List to Dr. Aron, a non-party to this litigation, did not fall within any of the exceptions permitting disclosure of data."  Order at 19 n. 8.  DIRECTV's disclosure of Plaintiff Romero's and the Personal Information Disclosure Class's personal consumer information therefore violated STELA.  DIRECTV's Matched Accounts List contains at least 9,116 STELA violations.

12.

DIRECTV is a California limited liability company with its principal place of business located at 2260 E. Imperial Highway, El Segundo, California 90245.

13.

Effective December 22, 2011, DIRECTV, Inc. merged into DIRECTV, with the latter becoming the surviving limited liability company.  By virtue of this

Page 5 of 52

merger, DIRECTV assumed, and succeeded to, all of the liabilities of DIRECTV, Inc., including liability for DIRECTV, Inc.'s violations of the TCPA and the Regulations.

14.

After announcing the deal in early 2014, AT&T acquired DIRECTV for the purchase price of $49,000,000,000 on or about July 24, 2015, following the Federal Communications Commission's approval of the acquisition.  DIRECTV remains a valid legal entity subject to suit.

15.

At all times relevant hereto, Telecel was an authorized telemarketer, retailer, dealer and/or agent of DIRECTV, acted within the course and scope of an agency relationship with DIRECTV, and was contracted by DIRECTV to promote and sell DIRECTV's goods and services.

16.

DIRECTV is liable for the calls made by Telecel under agency principles of, *inter alia*, actual authority, apparent authority, and ratification.

## JURISDICTION AND VENUE

17.

This Court has subject matter jurisdiction over the above-styled class action pursuant to 28 U.S.C. § 1331, as the claims set forth herein arise under the federal laws codified in the TCPA and the Regulations, and STELA.

18.

The Court has personal jurisdiction over DIRECTV because, *inter alia*, DIRECTV (1) has consented to jurisdiction by filing an Answer in this matter, (2) transacts business in the State of Georgia, (3) committed tortious acts within this State, (4) maintains a registered agent within this State, (5) committed tortious acts outside this State which caused injuries to persons within this State, (6) regularly solicits and transacts business in this State, and/or (7) derives substantial revenues from goods and services placed into the stream of commerce in this State. Accordingly, DIRECTV has sufficient minimum contacts with the Northern District of Georgia to subject it to the personal jurisdiction of this Court, and the claims set forth herein arise from the foregoing actions of DIRECTV.

19.

Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b), (c), and (d), because DIRECTV is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the above-styled action is commenced.

## INTRODUCTION TO THE TCPA AND THE REGULATIONS

20.

In 1991, Congress enacted the TCPA in an effort to regulate the growing telemarketing industry and to deter and curb the invasion of the public's privacy by placing restrictions on unsolicited marketing calls.

21.

The TCPA and the Regulations make it unlawful to, among other things,

initiate any call for telemarketing purposes to a residential telephone subscriber <u>unless</u> such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity; and

initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

*See* 47 C.F.R. §§ 64.1200(d) and (c)(2) (emphasis added); *see also* 47 U.S.C. § 227(c)(5).

22.

The TCPA and the Regulations mandate that all telemarketers institute certain minimum procedures and standards prior to placing any telemarketing call. If such mandatory minimum procedures are not instituted, then each telemarketing call constitutes a violation of the TCPA, 47 U.S.C. § 227(c)(5), and the

Regulations, 47 C.F.R. § 64.1200(d).  Where a violation has occurred, any person receiving two or more calls has a private right of action.

23.

For instance, Telecel was required to institute the following minimum procedures and or take the following actions prior to placing (and during) any telemarketing call:

a.  Maintain a list of persons who request not to receive telemarketing calls made by or on behalf of Telecel or DIRECTV;

b.  Maintain a written policy for maintaining an internal do not call list;

c.  Train personnel engaged in any aspect of telemarketing regarding the existence of, and adherence to, an internal do not call list;

d.  Record requests not to be called by or on behalf of Telecel or DIRECTV;

e.  Honor requests not to be called by or on behalf of Telecel or DIRECTV; and

f.  Provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

See 47 C.F.R. §§ 64.1200(d)(1)-(6).

Page 9 of 52

24.

As more fully set forth below, Telecel did not maintain or institute any of the above mandatory minimum procedures.

25.

DIRECTV knew or should have known that Telecel did not maintain or institute any of the above mandatory minimum procedures.

26.

The failure to institute mandatory minimum standards for compliance with consumer requests not to be called constitutes a violation of the TCPA for which a private right of action lies.

27.

Further, prior express consent is not a defense to any failure to institute the mandatory minimum standards required by 47 C.F.R. § 64.1200(d). Moreover, prior express consent is inapplicable in this matter because neither Telecel nor DIRECTV maintained records of any alleged prior express consent given by any consumer.

28.

1511776.3

47 U.S.C. § 227(c)(5) provides a private right of action to consumers for violations of the 47 C.F.R. §§ 64.1200(d) and (c)(2), and for statutory damages of up to $500 per violation, and up to $1,500 for each willful or knowing violation.

29.

The TCPA and the Regulations impose liability on a person or entity where calls are made on its behalf.  The FCC has found that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.   Indeed, vicarious liability is a critical feature of the TCPA, which does not permit a party to avoid liability by placing it on its expressly, impliedly, or apparently authorized agents.  *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. And Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674-75 (2016).

## DIRECTV'S PATTERN OF TCPA VIOLATIONS

30.

DIRECTV markets its goods and services through a network of authorized telemarketers and retailers.

31.

Page 11 of 52

DIRECTV has been sued by the Federal Trade Commission ("FTC") and consumers on several occasions for violations of the TCPA, the Regulations, and Telemarketing Sales Rule.

32.

On December 12, 2005, the United States Department of Justice filed suit against DIRECTV on behalf of the FTC (the "First FTC Lawsuit") in the case styled *United States v. DIRECTV, Inc.,* No. 05-1211 (C.D. Cal. Dec. 12, 2005).

33.

In the First FTC Lawsuit, the United States sought and obtained civil penalties and injunctive relief against DIRECTV and the telemarketing companies which marketed DIRECTV's goods and service in violation of the TCPA, the Regulations, and the Telemarketing Sales Rule.

34.

According to the Complaint in the First FTC Lawsuit,

-   DIRECTV markets its programming through a variety of methods, including telemarketing.  Compl. ¶ 34;

-   DIRECTV entered into oral or written contractual agreements with telemarketing entities. Compl. ¶ 35;

-   Beginning on or about October 17, 2003, the telemarketing Defendants have directly, or through intermediaries, placed outbound telephone calls

to consumer's telephone numbers on the National Do Not Call Registry. Compl. ¶ 39;

- DIRECTV provides substantial assistance to telemarketers by offering to pay or paying hourly rates and commissions for marketing services, allowing telemarketers to market DIRECTV goods or services, entering into contracts with consumers contacted by the telemarketers, providing services to consumers contacted by the telemarketers, and collecting money from consumers contacted by the telemarketers. Compl. ¶ 46.

35.

On December 14, 2005, DIRECTV entered into a Stipulated Judgment and Order for permanent Injunction Against DIRECTV, Inc. in the First FTC Lawsuit consisting of, *inter alia*, a civil penalty against it in the amount of $5,335,000, and myriad injunctions requiring compliance with the Telemarketing Sales Rule's prohibitions on telemarketing calls to persons who request not to be called and to persons whose numbers are registered on the National Do Not Call Registry.

36.

Despite the severity of the civil penalty and the various injunctions aimed at obtaining compliance with the Telemarketing Sales Rule, the TCPA, and the Regulations, DIRECTV continued to willfully and/or knowingly violate same.

37.

On April 16, 2009, the United States of America filed a second lawsuit seeking civil penalties and injunctive relief against DIRECTV on behalf of the

FTC (the "Second FTC Lawsuit"), in the case styled *United States vs. DIRECTV, Inc.*, No. 09-02605 (C.D. Cal. April 16, 2009).

38.

The Second FTC lawsuit mirrored the allegations made in the First FTC Lawsuit.

39.

On or around May 14, 2009, DIRECTV agreed to a Stipulated Judgment and Order for Permanent Injunction Against DIRECTV, Inc.   (the "Permanent Injunction") in which it agreed to pay a civil penalty of $2,310,000 and consented to myriad injunctive relief similar to that of the First FTC lawsuit.

40.

The Permanent Injunction imposes the following affirmative obligations upon DIRECTV, each establishing the weight of its own misconduct in this matter, and exemplifying the reasons for which it should be held liable for the telemarketing calls placed by Telecel on its behalf:

(a) DIRECTV, directly or indirectly through its authorized telemarketers and marketers, is permanently restrained from placing calls to persons who request not to receive calls by or on behalf of DIRECTV;

(b) DIRECTV, directly or indirectly through its authorized telemarketers and marketers, is permanently restrained from placing calls to persons whose telephone numbers are on the National Do Not Call Registry;

(c) DIRECTV must conduct a reasonable due diligence investigation prior to engaging a telemarketer to ensure that such person or entity has established and actively enforces effective policies and procedures for compliance with the TCPA's restrictions on calls to persons who request not to be called and calls to persons whose numbers are on the National Do Not Call Registry;

(d) DIRECTV must monitor all outbound telemarketing campaigns to determine whether calls are being placed to numbers on the National Do Not Call Registry or to persons who request not to be called;

(e) DIRECTV must monitor its authorized marketers to determine whether they are conducting telemarketing campaigns;

(f) DIRECTV is obligated to promptly investigate each consumer complaint and take all reasonable steps to identify the marketer whose activities prompted the complaint;

1511776.3

(g) DIRECTV is obligated to cease doing business with any telemarketer or marketer that it knows or should know is making calls to persons who have requested not to be called or to persons whose numbers are registered on the National Do Not Call Registry; and

(h) DIRECTV cannot provide any assistance or support to any telemarketer it knows or consciously avoids knowing is engaged in TCPA violations.

41.

DIRECTV failed to perform any of these obligations.  Rather, the FTC received over 8,800 Do Not Call complaints between 2012 and 2017 alleging Do Not Call violations by DIRECTV.

42.

DIRECTV did not inquire as to whether Telecel maintained procedures for complying with requests not to be called and the National Do Not Call Registry.

43.

Throughout the entire relevant period, DIRECTV was aware that Telecel was placing telemarketing calls on its behalf.

44.

1511776.3

DIRECTV received consumer complaints regarding Telecel's practice of cold-calling, yet did not investigate whether Telecel maintained or adhered to a written policy to comply with the TCPA's do not call restrictions.

45.

Despite its awareness of Telecel's conduct, DIRECTV has not terminated Telecel's contract to market DIRECTV products as required by the Permanent Injunction.

46.

DIRECTV continues to provide substantial assistance to Telecel to market DIRECTV's services by, among other things, paying fees for sales generated by Telecel's marketing efforts.

47.

Despite the First and Second FTC Lawsuits, and over 8,800 Do Not Call complaints from consumers, DIRECTV, through its marketers such as Telecel, has willfully and/or knowingly violated the TCPA and the Regulations by making telephone calls to Plaintiff Cordoba and others similarly-situated.

## **FACTUAL ALLEGATIONS**

48.

Page 17 of 52

Telecel placed 60,506 telephone calls to 24,566 unique telephone numbers for the purpose of selling or encouraging the sale of DIRECTV products or services, and pursuant to a contract between Telecel and DIRECTV.

49.

Telecel continues to place calls on behalf of DIRECTV for the purpose of selling or encouraging the sale of DIRECTV's products and/or services.

50.

Telecel did not keep an internal do not call list at any time relevant to this lawsuit.

51.

Telecel did not maintain a written policy for maintaining an internal do not call list at any time relevant to this lawsuit.

52.

Telecel did not train its employees with respect to the existence of, or adherence to, an internal do not call list at any time relevant to this lawsuit.

53.

Telecel did not record requests not to be called at any time relevant to this lawsuit.

54.

Telecel did not adhere to requests not to be called, nor scrub against a list of persons who requested not to be called prior to initiating contact with consumers, at any time relevant to this lawsuit.

55.

DIRECTV was aware that Telecel was placing calls to market and sale DIRECTV products while acting under its contract with DIRECTV.

56.

Telecel made each call that is the subject of this action within the scope of its actual authority from DIRECTV.

57.

DIRECTV ratified Telecel's telemarketing activities and each telemarketing call that is subject of this action.

58.

Between March 27, 2015, and March 3, 2016, Telecel initiated at least two calls to 926 persons on the National Do Not Call Registry.

59.

Between March 27, 2015, and March 3, 2016, Telecel initiated at least two calls to 16,890 persons without instituting the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d).

## PLAINTIFF SEBASTIAN CORDOBA

### 60.

Plaintiff Cordoba is not, and never has been, a customer of DIRECTV or Telecel.

### 61.

Plaintiff Cordoba has never had any relationship with DIRECTV or Telecel.

### 62.

Plaintiff Cordoba has never given his prior express consent for DIRECTV, Telecel, or any other DIRECTV agent to contact his cellular telephone.

### 63.

Plaintiff Cordoba began receiving unsolicited telemarketing calls from DIRECTV in July 2014, more than one month after DIRECTV was made expressly aware of Telecel's cold-calling practices.  These calls originated from a Florida area code.

### 64.

Between April 6, 2015, and November 4, 2015, Telecel called Plaintiff Cordoba eighteen times despite his repeated requests not to be called, and despite his telephone number being registered on the National Do Not Call Registry since December 2014.  These calls originated from a Maryland area code.

1511776.3

65.

Plaintiff Cordoba has received in excess of one call per twelve-month period from DIRECTV and Telecel since December 12, 2014.

66.

Plaintiff Cordoba has received in excess of one call per twelve-month period from DIRECTV and Telecel between the dates of March 27, 2015, and March 3, 2016.

67.

Plaintiff Cordoba has requested verbally to Telecel and DIRECTV, and in writing to DIRECTV, that both companies refrain from calling him.  Despite this express request, DIRECTV and Telecel continued to call Plaintiff Cordoba's cell phone.

68.

At all times relevant hereto, Plaintiff Cordoba paid for the cellular telephone service on which he received the calls from DIRECTV and Telecel.  Plaintiff Cordoba suffered additional harm, among others, from an invasion of his privacy and the nuisance these calls inflicted on him.

69.

After making repeated requests to be placed on the Telecel's and DIRECTV's internal do not call list as a result of the 2014 calls, Plaintiff Cordoba contacted DIRECTV directly by written correspondence dated January 8, 2015, addressed to DIRECTV Customer Care, and, shortly thereafter, to the Office of the President of DIRECTV.

70.

DIRECTV responded to Plaintiff Cordoba in writing via the Office of the President on or about January 9, 2015, stating that the unsolicited and unwelcomed calls would cease.

71.

Yet, notwithstanding DIRECTV's acknowledgement of the calls and its promise that they would cease, Plaintiff Cordoba continued to receive several unsolicited and unwelcomed calls from Telecel on DIRECTV's behalf from spring to fall 2015.

**INTRODUCTION TO STELA**

72.

In 2004, Congress passed the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"), which amended Section 338 of the

1511776.3

Communications Act of 1934 to include privacy protections for consumers who subscribe to satellite television service.

73.

In 2010, Congress passed STELA, which renewed SHVERA's privacy protections.  STELA precludes satellite carries from disclosing subscribers' personally identifiable information.  Specifically, "a satellite carrier shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier." 47 U.S.C. § 338(i) (4)(A).

74.

Disclosure of personally identifiable information is only permitted under four narrow exceptions: (1) if necessary to render or conduct a legitimate business activity related to satellite service; (2) if made pursuant to a court order and with notification to subscribers; (3) if limited to names and addresses so long as the carrier provides subscribers with the opportunity to prohibit or limit the disclosure and it does not reveal the subscribers' viewing habits or transactions; or (4) to an authorized government entity. 47 U.S.C. § 338(i)(4)(B).

1511776.3

75.

As more fully set forth below, DIRECTV disclosed Plaintiff Romero's and the Personal Information Disclosure Class's personally identifiable information without meeting any of STELA's four narrow exceptions.

76.

DIRECTV's disclosure of personally identifiable information violated STELA.

77.

47 U.S.C. § 338(i)(7) provides a private right of action to consumers for violations of the 47 U.S.C. § 338(i)(4), and for statutory damages of "not less than $100 a day for each day of violation or $1,000, whichever is higher," "punitive damages," and reasonable attorneys' fees and costs.

78.

An award of statutory damages under STELA does not require proof of actual damages. *Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209, 1212 (11th Cir. 2005) (considering identical language under the Driver's Privacy Protection Act, 18 U.S.C. § 2724, and holding that statutory liquidated damages are not contingent upon proof of actual damages); *Ela v. Destefano*, 869 F.3d 1198, 1202 (11th Cir. 2017) (same).

Page 24 of 52

1511776.3

## **DIRECTV'S STELA VIOLATIONS**

79.

In or around November 2016, DIRECTV engaged Debra Aron as a paid witness to defend DIRECTV against the TCPA claims of the Internal Do Not Call List Class and the National Do Not Call List Class in this action.

80.

In or around that same time period, DIRECTV created a data file containing "information from DIRECTV's database for account number, first name, last name, create date, activate date, disconnect date, account status, home number, and business number" for Plaintiff Romero and each person in the Personal Information Disclosure Class. *See* Expert Report of Dr. Debra J. Aron, Dkt. No. 70-9, at ¶ 24.

81.

DIRECTV shared this data file containing Plaintiff Romero's and the Personal Information Disclosure Class's private consumer information with Ms. Aron in a document titled the Matched Accounts List. *See* Expert Report of Dr. Debra J. Aron, Dkt. No. 70-9, at ¶ 24.

82.

1511776.3

In Court filings, DIRECTV argued that "the data relied on by Dr. Aron to identify DIRECTV customers contains private customer information subject to strict disclosure restrictions under the Satellite Television Extension and Localism Act of 2010 ("STELA"), 47 U.S.C § 338(i)." Defendant's Opposition to Plaintiff's Objections to the Expert Report of Debra Aron, Dkt. No. 79, at 1.

83.

DIRECTV has confirmed that the "'Matched Account List' list contains approximately 9,100 lines of data" showing Plaintiff Romero's and the Personal Information Disclosure Class's account number, first name, last name, create date, activate date, disconnect date, account status, home number, and business number, such that "[t]urning over those accounts without complying with the statute therefore might subject DIRECTV to at least $9,100,000 in potential liability under the liquidated damages provision of § 338(i)." Defendant's Opposition to Plaintiff's Objections to the Expert Report of Debra Aron, Dkt. No. 79 at 5;Dkt. No. 79-8 at 1-99.

84.

On July 12, 2017, "[t]he Court agree[d] with DIRECTV that, at a minimum, the Matched Accounts List's inclusion of various forms of customer data (including individuals' status as DIRECTV customers, account numbers, and

Page 26 of 52

creation and disconnect dates) . . . brings it within the 'consent to disclosure' provisions of [STELA,] 47 U.S.C. § 338(i)(4)(A)."

85.

DIRECTV was therefore strictly prohibited from sharing the data unless DIRECTV satisfied one of the four narrow exceptions under 47 U.S.C. § 338(i)(4)(B).  The Court, however, also found that "that DIRECTV'S disclosure of the Matched Account List to Dr. Aron, a non-party to this litigation, did not fall within any of the exceptions permitting disclosure of data."  Order at 19 n. 8.

86.

DIRECTV's disclosure of Plaintiff Romero's and the Personal Information Disclosure Class's private consumer information therefore violated STELA.

87.

DIRECTV's Matched Accounts List contains at least 9,116 STELA violations.

**PLAINTIFF ROMERO**

88.

At all relevant times, Plaintiff Romero has been both a "subscriber" within the meaning of 47 U.S.C. § 338(k)(9), and a "person" within the meaning of 47 U.S.C. § 522(15).

Page 27 of 52

89.

At all relevant times, DIRECTV has been a "satellite carrier" within the meaning of 47 U.S.C. § 338(k)(7), and 17 U.S.C. § 119(d)(6).

90.

Plaintiff Romero has never given DIRECTV his prior written or electronic consent to disclose his personally identifiable information.

91.

Plaintiff Romero's account number, first name, last name, create date, activate date, disconnect date, account status, home number, and/or business number are personally identifiable information.

92.

In or around November 2016, DIRECTV disclosed Plaintiff Romero's personally identifiable information to Ms. Aron without his prior written or electronic consent.

93.

DIRECTV's disclosure of Plaintiff Romero's personally identifiable information violated STELA.

94.

Plaintiff Romero has suffered harm from DIRECTV's violations of STELA for, among other reasons, an invasion of his privacy and the potential harm to his legal rights to obtain damages for DIRECTV's TCPA violations.

## CLASS ACTION ALLEGATIONS

### 95.

Plaintiff Cordoba brings this action on behalf of himself and the Internal Do Not Call Class (the "IDNC Class") and the National Do Not Call Class (the "NDNC Class").

## THE IDNC CLASS

### 96.

Plaintiff Cordoba proposed and the Court certified the following class definition for the IDNC Class, subject to amendment as appropriate:

> All persons within the United States who received more than one telephone call on or after October 27, 2011 from Telecel on behalf of DIRECTV for the purpose of selling or encouraging the sale of DIRECTV's goods and/or services.

### 97.

Plaintiff Cordoba represents, and is a member of, the IDNC Class.

### 98.

Based solely on call data already produced in this matter, the IDNC Class consists of 16,870 individuals who received a total of 52,810 calls.

## THE NDNC CLASS

### 99.

Plaintiff Cordoba proposed and the Court certified the following class definition for the NDNC Class, subject to amendment as appropriate:

> All persons residing within the United States whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone call on or after October 27, 2011 from Telecel on behalf of DIRECTV for the purpose of selling or attempting to sell DIRECTV's goods and/or services.

### 100.

Plaintiff Cordoba represents, and is a member of, the NDNC Class.

### 101.

Based solely on call data already produced in this matter, the NDNC Class consists of 926 individuals who received a total of 2,829 calls.

### 102. THE PERSONAL INFORMATION DISCLOSURE CLASS

Plaintiff Romero brings this action on behalf of himself and the Personal Information Disclosure Class.

### 103.

1511776.3

Plaintiff Romero proposes the following class definition for the Personal Information Disclosure Class, subject to amendment as appropriate:

> All persons within the United States whose personally identifiable information was disclosed by DIRECTV to Debra J. Aron on or after four years prior to the filing of this complaint.

104.

Plaintiff Romero represents, and is a member of, the Personal Information Disclosure Class.

105.

106. Based solely on documents already produced in this matter, the Personal Information Disclosure Class consists of approximately 9,116 individuals.

**Ascertainability.** The identity of the IDNC Class, NDNC Class, and Personal Information Disclosure Class members can be readily ascertained from the business records of DIRECTV and Telecel.

107.

**Standing.** Plaintiff Cordoba and all members of the IDNC Class and NDNC Class have been harmed by DIRECTV and Telecel because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls. *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG

Page 31 of 52

Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003) (recognizing that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used).

108.

Plaintiff Romero and all members of the Personal Information Disclosure Class have suffered harm from DIRECTV's violations of STELA for, among other reasons, an invasion of their privacy and the potential harm to their legal rights to obtain damages for DIRECTV's TCPA violations.

109.

**Numerosity**.  The members of the IDNC, NDNC, and Personal Information Disclosure Class are so numerous that individual joinder of all Class members in impracticable.  Additionally, the relatively modest value of each individual claim diminishes the ability and likelihood of the IDNC, NDNC, and Personal Information Disclosure Class members bringing suit individually.

110.

**Adequacy and Typicality.**  Plaintiff Cordoba will fairly and adequately represent and protect the interests of the IDNC Class and NDNC Class, and has no interest which is adverse to any member of the IDNC Class or NDNC Class. Plaintiff Cordoba's claims are typical of other members of the IDNC Class and

Page 32 of 52

NDNC Class because he received numerous telephone calls to his cell phone while registered on the National Do Not Call Registry, despite Telecel having failed to maintain or institute mandatory written procedures.

111.

Plaintiff Romero will fairly and adequately represent and protect the interests of the Personal Information Disclosure Class, and has no interest which is adverse to any member of the Personal Information Disclosure Class.  Plaintiff Romero's claims are typical of other members of the Personal Information Disclosure Class because DIRECTV disclosed his personally identifiable information without his prior written or electronic consent.

112.

**Commonality and Predominance.**  Common, well-defined questions of law and fact exist as to Plaintiff Cordoba and all members of the IDNC and NDNC Classes, and Plaintiff Romero and the Personal Information Disclosure Class, and predominate over any questions solely affecting any individual member of such classes.

113.

The common questions of law and fact applicable to the IDNC Class members include, but are not limited to, the following:

(1)     Whether Telecel instituted mandatory minimum procedures prior to placing telemarketing calls;

(2)     Whether Telecel maintained a list of persons who requested not to receive telemarketing calls by Telecel or on behalf of DIRECTV;

(3)     Whether Telecel maintained a written policy for maintaining an internal do not call list;

(4)     Whether Telecel trained its employees regarding the existence and use of an internal do not call list;

(5)     Whether Telecel made the calls subject of the IDNC Class for the purpose of selling or encouraging the sale of DIRECTV services or products;

(6)     Whether the members of the IDNC Class received more than one call during any twelve-month period;

(7)     Whether DIRECTV is liable for Telecel's telemarketing calls;

(8)     Whether DIRECTV's conduct was willful and/or knowing;

(9)     Whether DIRECTV is liable for damages, and in what amount; and

(10)   Whether DIRECTV should be enjoined from engaging in such conduct in the future.

1511776.3

114.

The common questions of law and fact applicable to the NDNC Class members include, but are not limited to, the following:

(1)     Whether Telecel made the calls subject of the NDNC Class for the purpose of selling or encouraging the sale of DIRECTV services or products;

(2)     Whether the members of the NDNC Class received more than one call during any twelve-month period while registered on the National Do Not Call Registry;

(3)     Whether Telecel maintained necessary procedures for compliance with the National Do Not Call Registry;

(4)     Whether DIRECTV is liable for Telecel's telemarketing calls;

(5)     Whether DIRECTV's conduct was willful and/or knowing;

(6)     Whether DIRECTV is liable for damages, and in what amount; and

(7)     Whether DIRECTV should be enjoined from engaging in such conduct in the future.

115.

The common questions of law and fact applicable to the Personal Information Disclosure Class members include, but are not limited to, the following:

    (1)    Whether DIRECTV disclosed Plaintiff Romero's and the Personal Information Disclosure Class members' personally identifiable information;

    (2)    Whether DIRECTV obtained Plaintiff Romero's and the Personal Information Disclosure Class members' prior written or electronic consent to disclose their personally identifiable information;

    (3)    Whether DIRECTV is liable for actual, statutory, liquidated, and/or punitive damages, and in what amount; and

    (4)    Whether DIRECTV should be enjoined from engaging in such conduct in the future.

116.

**Superiority.** Class action treatment is superior to the alternatives available to the members of the IDNC Class, NDNC Class, and Personal Information Disclosure Class, and is the fairest and most efficient adjudication of the allegations made in this action. Class action treatment will permit a vast number of

Page 36 of 52

1511776.3

similarly-situated persons to prosecute their common causes of action in a single form simultaneously and efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

117.

The interest of any IDNC Class, NDNC Class, and Personal Information Disclosure Class members in individually controlling the prosecution of separate claims against DIRECTV is small because of the relatively modest amount of statutory damages available for violations of the TCPA and the Regulations, and STELA.

118.

No significant difficulties in the management of the above-styled class action are likely to be encountered which would preclude its maintenance as a class action lawsuit, and no superior alternative exists for the fair and efficient adjudication of the controversy, because the interests of the IDNC Class, NDNC Class, and Personal Information Disclosure Class members are aligned and the issues are well-defined.

119.

Absent a class action, IDNC Class, NDNC Class, and Personal Information Disclosure Class members would continue to suffer losses for which they would

have no remedy, and DIRECTV would unjustly retain the proceeds and profits obtained via violations of federal law.

### 120.

Even if separate actions could be and were to be brought by individual members of the IDNC Class, NDNC Class, and Personal Information Disclosure Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create the risk of inconsistent judgments.

### 121.

Pursuant to the foregoing Paragraphs, class certification is appropriate with respect to each of the three classes pursuant to Fed. R. Civ. P. 23(b)(3).

## <u>CAUSES OF ACTION</u>

### COUNT I

### <u>KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*., AND THE REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. §§ 64.1200(c)(2) and (d)</u>

### 122.

Page 38 of 52

Plaintiff Cordoba re-alleges and incorporates Paragraphs 1-6, 12-71, 95-101, 106-107, 109-110, 112-114, and 116-121 of this Third Amended Complaint as if expressly set forth herein.

123.

As alleged, *supra*, DIRECTV knowingly and/or willfully violated the TCPA and the Regulations by having Telecel make telephone calls on its behalf to Plaintiff Cordoba and the members of the IDNC Class for the purpose of selling or encouraging the sale of DIRECTV's goods and/or services, and without maintaining or instituting the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d).

124.

Telecel placed 52,810 telephone calls to 16,870 individuals who received at least two calls during the period March 27, 2015, and March 3, 2016, within the scope of its agency relationship with DIRECTV.

125.

Telecel did not maintain a list of persons who requested not to receive telephone calls from Telecel on behalf of DIRECTV.

126.

Telecel did not maintain an internal do not call list.

Page 39 of 52

127.

Telecel did not maintain a written policy for the creation, use, or adherence to an internal do not call list.

128.

Telecel did not train its personnel regarding the existence of, or use of, an internal do not call list.

129.

Telecel did not honor requests not to be called.

130.

DIRECTV did not investigate Telecel to determine whether it maintained or instituted the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d).

131.

DIRECTV did not monitor Telecel to determine whether it implemented the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d).

132.

DIRECTV did not monitor Telecel to determine whether it was placing telemarketing calls in violation of the TCPA.

133.

DIRECTV continues to provide substantial assistance to Telecel and continues to accept sales generated by Telecel's TCPA violations.

134.

As alleged, *supra*, DIRECTV knowingly and/or willfully violated the TCPA and the Regulations by having Telecel make telephone calls on its behalf to Plaintiff Cordoba and the members of the NDNC Class for the purpose of selling or encouraging the sale of DIRECTV's goods and/or services while said members were registered on the National Do Not Call Registry.

135.

Telecel did not implement minimum standards for compliance with the National Do Not Call Registry prior to initiating telemarketing calls to consumers.

136.

As a result of DIRECTV's knowing and/or willful violations of the TCPA and the Regulations, Plaintiff Cordoba and the IDNC Class and NDNC Class members are entitled to statutory treble damages of up to $1,500.00 for each and every violation perpetrated by DIRECTV and Telecel.

137.

1511776.3

Plaintiff Cordoba and each IDNC Class and NDNC Class member further seek and are entitled to a permanent injunction prohibiting DIRECTV from committing violations of the TCPA and the Regulations in the future.

138.

Plaintiff Cordoba and each IDNC Class and NDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, AND THE REGULATIONS PROMULGATED THEREUNDER, 47 C.F.R. § 64.1200

139.

Plaintiff Cordoba re-alleges and incorporates Paragraphs 1-6, 12-71, 95-101, 106-107, 109-110, 112-114, and 116-121 of this Third Amended Complaint as if expressly set forth herein.

140.

As alleged, *supra*, DIRECTV violated the TCPA and the Regulations by having Telecel make telephone calls on its behalf to Plaintiff Cordoba and the members of the IDNC Class for the purpose of selling or encouraging the sale of

DIRECTV's goods and/or services, and without maintaining or instituting the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d).

141.

As alleged, *supra*, DIRECTV violated the TCPA and the Regulations by having Telecel make telephone calls on its behalf to Plaintiff Cordoba and the members of the NDNC Class for the purpose of selling or encouraging the sale of DIRECTV's goods and/or services while said members were registered on the National Do Not Call Registry.

142.

As a result of the DIRECTV's violations of the TCPA and the Regulations, Plaintiff Cordoba and the IDNC Class and NDNC Class members are entitled to statutory damages of up to $500.00 for each and every violation perpetrated by DIRECTV.

143.

Plaintiff Cordoba and each IDNC Class and NDNC Class member further seek and are entitled to a permanent injunction prohibiting DIRECTV from committing violations of the TCPA and the Regulations in the future.

144.

1511776.3

Plaintiff Cordoba and each IDNC Class and NDNC Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action.

## COUNT III

## VIOLATIONS OF THE SATELLITE TELEVISION EXTENSION AND LOCALISM ACT OF 2010

145.

Plaintiff Romero re-alleges and incorporates Paragraphs 7-14, 17-19, 72-94, 102-106, 108-109, 111-112, and 115-121 of this Third Amended Complaint as if expressly set forth herein.

146.

As alleged, *supra*, DIRECTV violated STELA by:  (1) disclosing Plaintiff Romero's and the Personal Information Disclosure Class members' personally identifiable information without their prior written or electronic consent and (2) not taking  necessary actions to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier, in violation of 47 U.S.C. § 338(i)(4).

147.

1511776.3

As a result of the DIRECTV's violations of 47 U.S.C. § 338(i)(4), Plaintiff Romero and the Personal Information Disclosure Class members are entitled to damages "not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher" pursuant to 47 U.S.C. § 338(i)(7)(A) and 47 U.S.C. § 338(i)(7)(B).

148.

Plaintiff Romero and each Personal Information Disclosure Class member further seek and are entitled to a permanent injunction prohibiting DIRECTV from committing violations of STELA in the future.

149.

Plaintiff Romero and each Personal Information Disclosure Class member further seek and are entitled to an award of attorneys' fees and costs of litigation in prosecuting the above-styled class action pursuant to pursuant to 47 U.S.C. § 338(i)(7)(C).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Cordoba respectfully petitions this Honorable Court for the following relief:

a) That Summons and Process issue as provided by law as to DIRECTV;

Page 45 of 52

1511776.3

b) That Plaintiff Cordoba and the members of the IDNC Class and NDNC Class have judgment against DIRECTV in the amount of $1,500.00 in statutory treble damages for each of DIRECTV's knowing and/or willful violations of the TCPA and the Regulations as averred in Count I of the above-styled Third Amended Complaint;

c) That Plaintiff Cordoba and the members of the IDNC Class and NDNC Class have judgment against DIRECTV in the amount of $500.00 in statutory damages for each of DIRECTV's violations of the TCPA and the Regulations as averred in Count II of the above-styled Third Amended Complaint;

d) That the Court enjoin DIRECTV from committing further violations of the TCPA and the Regulations as averred in Counts I and II of the above-styled Third Amended Complaint;

e) That Plaintiff Cordoba and the members of the IDNC Class and NDNC Class have judgment against DIRECTV for attorneys' fees and expenses of litigation incurred in the prosecution of the above-styled Third Amended Complaint;

f) An Order certifying the above-styled action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate

Page 46 of 52

IDNC Class and NDNC Class as the Court deems appropriate in its discretion, finding that Plaintiff Cordoba is a proper representative of the IDNC Class and NDNC Class, and appointing the lawyers and law firms representing Plaintiff Cordoba as counsel for the IDNC Class and NDNC Class;

g) For a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b); and

h) For such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff René Romero respectfully petitions this Honorable Court for the following relief:

a) That Summons and Process issue as provided by law as to DIRECTV;

b) That Plaintiff Romero and the members of the Personal Information Disclosure Class have judgment against DIRECTV in the amount of $100 a day for each day of violation or $1,000, whichever is higher, for each of DIRECTV's violations of the STELA as averred in Count III of the above-styled Third Amended Complaint;

c) That the Court award punitive damages to Plaintiff Romero and the members of the Personal Information Disclosure Class for DIRECTV's

1511776.3

violations of the STELA as averred in Count III of the above-styled Third Amended Complaint;

d)  That the Court enjoin DIRECTV from committing further violations of STELA as averred in Count III of the above-styled Third Amended Complaint;

e)  That Plaintiff Romero and the members of the Personal Information Disclosure Class have judgment against DIRECTV for attorneys' fees and expenses of litigation incurred in the prosecution of the above-styled Third Amended Complaint;

f)  An Order certifying the above-styled action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Personal Information Disclosure Class as the Court deems appropriate in its discretion, finding that Plaintiff Romero is a proper representative of the Personal Information Disclosure Class, and appointing the lawyers and law firms representing Plaintiff Romero as counsel for the Personal Information Disclosure Class;

g)  For a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b); and

h)  For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 8th day of March, 2018.

**L. LIN WOOD, P.C.**

/s/ L. Lin Wood
L. Lin Wood
State Bar No. 774588
lwood@linwoodlaw.com
Nicole Jennings Wade
State Bar No. 390922
nwade@linwoodlaw.com
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@linwoodlaw.com
G. Taylor Wilson
State Bar No. 460781
twilson@linwoodlaw.com

1180 West Peachtree Street, Ste. 2400
Atlanta, GA 30309
(404) 891-1402 (Phone)
(404) 506-9111 (Fax)

**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**

Jonathan D. Selbin (*pro hac vice*)
jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9592

Daniel M. Hutchinson (*pro hac vice*)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

Telephone:   (415) 956-1000
Facsimile:    (415) 956-1008

**MEYER WILSON CO., LPA**

Matthew R. Wilson (*pro hac vice*)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

**KING & YAKLIN, LLP**

Stephen A. Yaklin
State Bar No. 780125
syaklin@kingyaklin.com
Matthew M. Wilkins
Georgia Bar No. 142291
mwilkins@kingyaklin.com
192 Anderson Street, Suite 125
Marietta, Georgia 30060
770-424-9235 office
770-424-9239 facsimile

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this THIRD AMENDED CLASS ACTION COMPLAINT is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1C.

This 8th day of March, 2018.

<u>/s/ L. Lin Wood</u>
L. Lin Wood

1511776.3

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing

THIRD AMENDED CLASS ACTION COMPLAINT via the CM/ECF system,

which will automatically send e-mail notification to the attorneys of record.

This 8th day of March, 2018.

<u>/s/ L. Lin Wood</u>
L. Lin Wood

1511776.3