## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SEBASTIAN CORDOBA, and RENÉ ROMERO, individually and on behalf of all others similarly-situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 1:15-CV-03755-MHC |
| | ) | |
| DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc., | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO DIRECTV'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND .........................................................................3

    A.    Procedural History.............................................................3

    B.    The Purported Arbitration Clauses....................................5

III.   LEGAL STANDARD ................................................................6

IV.   ARGUMENT..............................................................................7

    A.    Mr. Romero Did Not Assent to the 2015 or 2016 Arbitration Clauses............................................................7

        1.    Romero Never Received DIRECTV's 2015 or 2016 Customer Agreements...............................................9

        2.    Romero Never Assented to DIRECTV's 2015 or 2016 Arbitration Clauses. ...............................................10

        3.    The 2016 Customer Agreement Did Not Form Any Agreement to Arbitrate Privacy Claims Arising in Litigation...............................................................12

    B.    The STELA Claims Based on DIRECTV's Conduct in this Litigation Are Beyond the Scope of the Arbitration Clause..............15

        1.    The Plain Terms of the 2014, 2015, and 2016 Customer Agreements Cannot Be Read to Include STELA Claims........15

        2.    Courts Have Refused to Broaden the Scope of Arbitration Agreements to Include Unrelated Consumer Privacy Violations....................................17

        3.    DIRECTV's "Personal Data" Section Does Not Bring STELA Claims Within the Scope of the Arbitration Provisions........................................19

        4.    In the Alternative, Mr. Romero's STELA Claim is Outside the Scope of the Operative 2014 Customer Agreement...........................................21

## TABLE OF CONTENTS
### (continued)

Page

C.   The Arbitration Clauses Are Procedurally and Substantively Unconscionable. ...........................................................23

1.   The Arbitration Clauses Are Procedurally Unconscionable. ...................................................24

2.   The Arbitration Clauses Are Substantively Unconscionable. ...................................................25

D.   This Litigation Should Not Be Stayed Pending DIRECTV's Motion. ............................................................25

V.   CONCLUSION...........................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bischoff v. DIRECTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................................12

*Brent v. Priority 1 Auto. Grp., BMW of Rockville*,
  98 F. Supp. 3d 833 (D. Md. 2015) ................................................................10

*Brown v. DIRECTV, LLC*,
  2013 WL 3273811 (C.D. Cal. June 26, 2013) ..............................................12

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ......................................................................................11

*Clements v. DIRECTV, LLC*,
  2014 WL 1266834 (W.D. Ark. Mar. 26, 2014) ............................................11

*Cordoba v. DirecTV, LLC*,
  320 F.R.D. 582 (N.D. Ga. 2017) ................................................................3, 4

*Dasher v. RBC Bank (USA)*,
  745 F.3d 1111 (11th Cir. 2014) ......................................................................8

*DIRECTV, Inc. v. Mattingly*,
  829 A.2d 626 (Md. 2003) ..............................................................................22

*Eternal Strategies, LLC v. Clickbooth Holdings, Inc.*,
  8:17-cv-1298-T-36MAP, 2017 WL 7311849 (M.D. Fla. Sept. 20,
  2017) ..........................................................................................................7, 25

*Ferrie v. DIRECTV, LLC*,
  2016 WL 183474 (D. Conn. Jan. 12, 2016) ..................................................11

*First Options of Chicago Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...................................................................................8, 14

*Flagg v. First Premier Bank*,
  1:15-CV-324-MHC, 2015 WL 10906066 (N.D. Ga. Aug. 26, 2015) ................6

*Flecha v. Neighbors Moving Servs., Inc.*,
  944 F. Supp. 2d 1201 (S.D. Fla. Mar. 7, 2013) ..............................................7

*Functional Products Trading, S.A. v. I-Grain, LLC*,
  12-CV-0355-JEC-AJB, 2012 WL 13013592 (N.D. Ga. Mar. 19,
  2012) ............................................................................................................23

*Gamble v. New England Auto Fin., Inc.*,
  No. 17-15343, 2018 WL 2446607 (11th Cir. May 31, 2018) ..................2, 18

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ........................................................................................9

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
  716 F.3d 764 (3d Cir. 2013) ............................................................................6

## TABLE OF AUTHORITIES
### (continued)

Page

*Hill v. Gateway 2000, Inc.*,
   105 F.3d 1147 (7th Cir. 1997) ........................................................11

*Holcombe v. DIRECTV, LLC*,
   159 F. Supp. 3d 1337 (N.D. Ga. 2016)..................................2, 15, 17

*In re Checking Account Overdraft Litig.*,
   754 F.3d 1290 (11th Cir. 2014) ..................................................6, 23

*In re Crescent City Estates, LLC*,
   588 F.3d 822 (4th Cir. 2009) ..........................................................11

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
   847 F. Supp. 2d 1253 (S.D. Cal. 2012)...............................14, 19, 25

*Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*,
   725 F. Supp. 2d 513 (D. Md. 2010) ................................................11

*Joaquin v. DIRECTV Grp. Holdings, Inc.*,
   2016 WL 4547150 (D.N.J. Aug. 30, 2016) .....................................11

*Jones v. Genius Credit Mgmt.*,
   353 F. Supp. 2d 598 (D. Md. 2005)................................................25

*Kennedy v. Compucredit Holdings Corp.*,
   3:12-cv-1128-J-25TEM, 2013 WL 12157869 (M.D. Fla. Feb. 28,
   2013) ..............................................................................................25

*Mattingly v. Hughes Electronics Corp.*,
   810 A.3d 498 (Md. Ct. Spec. App. 2002)..............................8, 11, 22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)........................................................................23

*Mould v. NJG Food Serv. Inc.*,
   986 F. Supp. 2d 674 (D. Md. 2013) ................................................24

*Murphy v. DIRECTV, Inc.*,
   2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) ..................................12

*Regan v. Stored Value Cards, Inc.*,
   85 F. Supp. 3d 1357 (N.D. Ga. 2015)...............................................7

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010)............................................................................8

*Schwartz v. Comcast Corp.*,
   256 F. App'x 515 (3d Cir. 2007) ....................................................11

*Smith v. Steinkamp*,
   318 F.3d 775 (7th Cir. 2003) ..........................................................13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)...........................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
  248 F.3d 1109 (11th Cir. 2001) .........................................................18

*Truitt v. DIRECTV, Inc.*,
  2008 WL 5054570 (E.D. La. Nov. 21, 2008) ...................................12

*Wagner v. Discover Bank*,
  No. 12-cv-02786-MSK-BNB, 2014 WL 128372 (D. Colo. Jan. 13,
  2014) .................................................................................................19

*Walther v. Sovereign Bank*,
  872 A.2d 735 (Md. 2005) .................................................................24

*Wexler v. AT&T Corp.*,
  211 F. Supp. 3d 500 (E.D.N.Y. 2016) ..................................... passim

*Whitten v. Apria Healthcare Grp., Inc.*,
  2015 WL 2227928 (D. Md. May 11, 2015)......................................10

*Wijesinha v. DIRECTV, LLC*,
  2016 WL 10906449 (S.D. Fla. Sept. 29, 2016) ................................11

*Williams v. MetroPCS Wireless, Inc.*,
  2010 WL 1645099 (S.D. Fla. Apr. 21, 2010) ...................................11

## STATUTES

47 U.S.C. § 338 .............................................................................1, 19

## RULES

Fed. R. Civ. P. 1 ................................................................................25

## TREATISES

BLACK's LAW DICTIONARY 1560 (8th ed. 2004) ..........................23

## I.  __INTRODUCTION__

Years into this federal class action lawsuit, DIRECTV violated the privacy of Plaintiff René Romero and 9,100 absent class members by disclosing their private consumer information in violation of section 338 of the Communications Act of 1934 (hereinafter, the Satellite Television Extension and Localism Act ("STELA"), 47 U.S.C. § 338).  DIRECTV admitted, and the Court found, that DIRECTV disclosed this private consumer information to a paid witness in this case.  In permitting Plaintiffs to add this STELA claim, the Court flatly refused to construe STELA in a manner that would "give satellite carriers carte blanche to disclose confidential customer data to non-parties during litigation."  Dkt. 142 ("STELA Order") at 18.

DIRECTV now seeks that very carte blanche.  Having violated the STELA-protected privacy rights of Mr. Romero (and some 9,100 others) by its conduct *in this litigation*, DIRECTV seeks to force that claim *out* of court and into individual arbitration, moving to compel arbitration under a customer agreement that, by its plain terms, governs only the "receipt of and payment for DIRECTV service."  It is difficult to conceive how such a result furthers the purpose or structure of the Federal Arbitration Act, or comports with basic notions of contract interpretation or even Due Process.

Plaintiffs submit that the motion should be denied for three reasons.

*First*, DIRECTV fails to meet its evidentiary burden to show that Mr. Romero agreed to arbitrate his STELA claim.  DIRECTV's declarant simply does not establish that Mr. Romero received or agreed to the 2015 or 2016 DIRECTV Customer Agreements (he does not dispute receiving the 2014 agreement).  And, even if he had, this language *does not form an arbitration agreement* because a reasonable consumer would only agree to arbitrate claims relating to the services he paid for, not claims under a federal statute protecting consumer privacy.  *See Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016).

*Second*, as the Eleventh Circuit recently confirmed, the STELA claim is beyond the scope of any DIRECTV customer agreement.  *See Gamble v. New England Auto Fin., Inc.*, No. 17-15343, 2018 WL 2446607, at *2 (11th Cir. May 31, 2018) (per curiam) (holding, based on an arbitration clause's plain language, that a federal statutory TCPA claim fell outside its scope); *Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337, 1340 (N.D. Ga. 2016) (same).  This is particularly true where, as here, the STELA claim arose based solely on DIRECTV's conduct in this litigation, not the provision of any product or service. The claim, therefore, is not related to nor governed by any customer agreement between Mr. Romero and DIRECTV.

*Third*, the arbitration clauses are not enforceable because they are procedurally and substantively unconscionable.

Finally, a stay of the STELA claim is not warranted because DIRECTV's motion is not "clearly meritorious" – quite the contrary.

## II.   **BACKGROUND**

### A.   **Procedural History.**

On October 27, 2015, Plaintiff Sebastian Cordoba filed this class action against DIRECTV challenging telemarketing calls by Telecel on DIRECTV's behalf.  Class Action Compl., Dkt. 1.  On July 12, 2017, this Court certified an Internal Do Not Call Class ("IDNC Class") and a National Do Not Call Class ("NDNC Class").  *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017).

In an attempt to defeat IDNC and NDNC Class members' claims, DIRECTV created a data file containing the private information of approximately 9,100 consumers, including Mr. Romero, then an unnamed IDNC class member, and then shared this "Matched Accounts List" with its paid witness, Debra J. Aron.  *See* Expert Report of Dr. Debra J. Aron, Dkt. 70-9, ¶ 24.

STELA prohibits satellite carriers like DIRECTV from disclosing "personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned."  DIRECTV admitted that "the data relied on by Dr. Aron to identify DIRECTV customers contains private customer information subject to strict disclosure restrictions under [STELA]."  Def.'s Opp'n to Pl.'s Objs. to the Expert Report of Debra Aron, Dkt.

79 at 1.  In its Class Certification Order, this Court found that "DIRECTV's disclosure of the Matched Account List to Dr. Aron, a non-party to this litigation, did not fall within any of the [STELA] exceptions permitting disclosure of data." *Cordoba*, 320 F.R.D. at 593 n.8.

On May 30, 2018, the Court granted Plaintiff Cordoba's motion for leave to bring a STELA claim.  *See* STELA Order.  In response to DIRECTV's argument that DIRECTV's disclosure of private consumer information was "necessary to render, or conduct a legitimate business activity related to, a satellite service or other service provided by the satellite carrier to the subscriber" within the meaning of STELA, the Court found that there was "no authority to support this broad reading of the statute."  *Id.* at 18.  The Court explained:

> Not only would DIRECTV's construction of [STELA] give satellite carriers carte blanche to disclose confidential customer data to non-parties during litigation; more broadly, it would allow them to characterize nearly any activity as necessary to render, or conduct a legitimate business activity related to, a satellite service or other service provided by the satellite carrier to the subscriber.  In the absence of any limiting principle, case law, or other authority, the Court declines to interpret STELA in such a way.  *Id.*

DIRECTV also submitted the same 2014 Customer Agreement at issue here and the Court found that "DIRECTV has failed to provide any evidence that Mr. Romero agreed to the unauthenticated customer agreement attached to DIRECTV's opposition; therefore, the agreement is not properly before the Court." *Id.* at 16-17.  Accordingly, the Court found that DIRECTV's arguments were

"premature" until "the summary judgment phase." *Id.* at 15, 17.[1]

On June 21, 2018, the Court denied DIRECTV's request to stay this case pending its appeal of the IDNC Class certification. Dkt. 151. The Court ordered the case to proceed and noted that "the steps necessary to prepare these [NDNC and STELA] classes for trial (including class notice, discovery, and the filing of any pretrial motions) appear to be relatively straightforward." *Id.*

Yet, only two weeks later, on July 5, 2018, DIRECTV moved to compel arbitration of Mr. Romero's STELA claim and stay it pending the outcome of arbitration proceedings. *See* Dkt. 154.

### B.   The Purported Arbitration Clauses.

DIRECTV argues that Mr. Romero agreed to the arbitration clause in its Customer Agreement (the "2014 Customer Agreement") when he signed up for DIRECTV service in November 2014 and that he subsequently agreed to the arbitration clauses in DIRECTV's 2015 and 2016 Customer Agreements prior to cancelling DIRECTV service in April 2017. Each of the Customer Agreements "DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV SERVICE." *See* Dkt. 154-2, Exs. 2-4.

While Plaintiff does not believe that DIRECTV has met its evidentiary burden, *see* STELA Order at 16-17 ("DIRECTV has failed to provide any evidence

---

[1]  The Court accordingly denied as moot DIRECTV's motion for leave to file a surreply regarding its argument that Mr. Romero's claims should be in arbitration. *Id.* at 17 n.6.

that Romero agreed to the unauthenticated customer agreement attached to DIRECTV's opposition; therefore, the agreement is not properly before the Court."), Plaintiff has no reason to doubt DIRECTV's assertion that it sent him a customer agreement at account origination.  The 2014 Customer Agreement that DIRECTV claims it sent to Mr. Romero contains a narrow arbitration clause that is explicitly limited to "any legal or equitable claim relating to this Agreement."  Dkt. 154-2, Ex. 2 § 9.  The 2014 (and 2015) arbitration clauses expressly exclude "any dispute involving a violation of the Communications Act of 1934."  *Id.*

The 2016 Customer Agreement contains a broader arbitration clause.  But Mr. Romero has no record of receiving an email or mailed copy of DIRECTV's 2016 (or 2015) Customer Agreements.

## III.   LEGAL STANDARD

A "summary judgment-like" standard governs a motion to compel arbitration.  *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014); *see also Flagg v. First Premier Bank*, 1:15-CV-324-MHC, 2015 WL 10906066, at *4 (N.D. Ga. Aug. 26, 2015) (same).  Particularly where, as here, the complaint does not "establish on its face that the parties agreed to arbitrate," and the moving party relies on evidence, the motion is "judged under the Rule 56 standard."  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013).  As with any summary judgment analysis, the non-moving party is

entitled to "the benefits of all reasonable doubts and inferences that may arise." *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1360 (N.D. Ga. 2015) (internal quotations omitted).  Specifically, "[a] genuine dispute of fact concerning contract formation precludes a court from deciding as a matter of law that the parties did or did not enter into an agreement to arbitrate." *Id.*

In the Eleventh Circuit, district courts take a "preliminary peek" at a motion to compel arbitration to determine whether discovery ought to be stayed pending the motion's resolution.  *See Eternal Strategies, LLC v. Clickbooth Holdings, Inc.*, 8:17-cv-1298-T-36MAP, 2017 WL 7311849, at *2 (M.D. Fla. Sept. 20, 2017) ("From a preliminary look, it appears that Defendants' motions [to compel arbitration] are not so clearly meritorious as to justify a discovery stay."); *see also Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. Mar. 7, 2013) ("Under such circumstances, it is proper for the Court to permit discovery to proceed.").

## IV.   ARGUMENT

### A.   Mr. Romero Did Not Assent to the 2015 or 2016 Arbitration Clauses.

Arbitration is a matter of contract, and a court cannot require a party to arbitrate a dispute unless the party has contracted to do so.[2]  *See, e.g., Stolt-Nielsen*

---

[2]  Although Mr. Romero's claim arises under a federal statute (STELA), federal courts "generally apply ordinary state-law principles that govern the formation of contracts to assess

*Footnote continued on next page*

*S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ("arbitration is a matter of consent, not coercion") (internal quotations omitted).  The "basic objective" of courts in deciding whether a dispute is arbitrable is to ensure that "arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties."  *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (internal citations omitted).  Accordingly, "courts look for evidence that the parties objectively revealed an intent to submit the [particular] dispute to arbitration."  *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (internal quotations omitted).

Under Maryland law,[3] "whether there is an agreement to arbitrate the parties' dispute is a legal question of contract interpretation…When the existence of an arbitration agreement is in dispute, that dispute must be resolved by a court."  *Mattingly v. Hughes Electronics Corp.*, 810 A.3d 498, 503-04 (Md. Ct. Spec. App. 2002) (internal citations omitted).  "When there is a dispute of fact material to determining whether there is an agreement to arbitrate, the court resolves that dispute before determining whether the agreement to arbitrate exists."  *Id.* at 504.

---

*Footnote continued from previous page*
whether the parties agreed to arbitrate a certain matter (including arbitrability)."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 79 (2010) (internal quotations omitted).

[3]  DIRECTV's 2014, 2015, and 2016 Customer Agreements state that the "interpretation and enforcement of this Agreement and any disputes related to your agreements or service with DIRECTV shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you."  *See* Dkt. 154-2, Ex. 2, § 10(b); Dkt. 154-2, Ex. 3, § 10(b); Dkt. 154-2, Ex. 4, § 10(b).  At all relevant times, Mr. Romero resided in Maryland.

Accordingly, for any arbitration agreement to be binding on Mr. Romero, DIRECTV must show (1) that there is no dispute of fact material to determine whether there is an agreement to arbitrate and (2) a mutual manifestation of assent to arbitrate the particular dispute. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.") (internal quotations and citations omitted). DIRECTV cannot make either showing and its motion should therefore be denied.

1. *Romero Never Received DIRECTV's 2015 or 2016 Customer Agreements.*

DIRECTV's assertion that Mr. Romero received Customer Agreements in June 2015 and June 2016 is based on nothing more than the generic statement that DIRECTV purportedly sends updated Customer Agreements to its customers. Mot. at 4 (citing Lateef Decl., Dkt. 70-7 ¶¶ 4-6 ("In 2012, DIRECTV began e-mailing the updated Customer Agreements to all customers with valid e-mail addresses. If DIRECTV does not have a valid e-mail address for a customer or a customer chooses not to receive e-mail from DIRECTV, DIRECTV mails the updated Customer Agreement to the customer.")). DIRECTV has no specific evidence that it ever sent these Customer Agreements to Mr. Romero—in fact, even the unsupported language in its brief, "DIRECTV sent Mr. Romero a copy of

each updated version," Mot. at 4, makes clear that DIRECTV does even know *how* it purportedly sent the updated agreements to Mr. Romero.  Mr. Romero does not have any record of receiving an email or mailed copy of DIRECTV's 2015 or 2016 Customer Agreements.

Because a genuine dispute of material fact exists with respect to Mr. Romero ever receiving DIRECTV's 2015 or 2016 Customer Agreements, much less accepting them, the motion should be denied.  *See Brent v. Priority 1 Auto. Grp., BMW of Rockville*, 98 F. Supp. 3d 833, 837-38 (D. Md. 2015) ("[A] genuine dispute exists regarding this fact, as Defendant provides evidence of Plaintiff's acceptance of the Arbitration Agreement, and Plaintiff questions the reliability of some of that evidence and provides evidence that she did not accept it."); *see also Whitten v. Apria Healthcare Grp., Inc.*, 2015 WL 2227928, at *4 (D. Md. May 11, 2015) (similar).[4]

### 2. Romero Never Assented to DIRECTV's 2015 or 2016 Arbitration Clauses.

DIRECTV makes the amorphous argument that Mr. Romero's "conduct" (i.e., paying his bills and not cancelling DIRECTV service) indicates some sort of implied assent to arbitrate his STELA claim.  Mot. at 12-15.  However, this

---

[4]  Therefore, DIRECTV's motion is, at best, "premature" until the parties conduct full discovery of their respective records regarding this disputed issue.  *See* STELA Order at 15, 17 (finding that DIRECTV's arguments regarding its Customer Agreement were "premature" until "the summary judgment phase").

silence-equals-consent argument fails.  *See, e.g.*, *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) ("In short, silence does not equal consent").[5] This is particularly true with respect to the 2016 Customer Agreement which contains substantially changed terms about which Mr. Romero was not notified (and was the purportedly operative agreement when DIRECTV disclosed to Ms. Aron).  *Mattingly*, 810 A.3d at 507 ("In order for the offeree's silence to be an assent to the revised terms of the contract… the offeree must have had actual or constructive knowledge that there was a proposal to change the contract terms.").

The cases DIRECTV cites involved plaintiffs who actually received the contract terms defendants sought to enforce.[6]  DIRECTV presents no evidence that Mr. Romero received the 2015 or 2016 Customer Agreements.[7]

---

[5] DIRECTV cites cases under Georgia law.  Mot. at 12-13.  However, its Agreements with Mr. Romero follow Maryland law.  *See supra* footnote 3.  Under Maryland law, because Mr. Romero never received the Customer Agreement—DIRECTV's offer—there is no agreement.  *See Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*, 725 F. Supp. 2d 513, 523 (D. Md. 2010) ("the offer must be certain and definite, and the acceptance must in every respect meet and correspond with the offer.").

[6] *See* Mot. at 13-14 (*citing Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (ticket contained forum selection clause); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-50 (7th Cir. 1997) (plaintiff received terms of conditions containing arbitration clause); *Williams v. MetroPCS Wireless, Inc.*, 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) (same); *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518-20 (3d Cir. 2007) (unrebutted evidence found that demonstrated plaintiff was aware of subscription agreement and its arbitration clause)).

[7] The cases DIRECTV cites involving itself similarly involved plaintiffs who actually received the customer agreements.  Mot. at 14-15 (citing *Wijesinha v. DIRECTV, LLC*, 2016 WL 10906449, at *2 (S.D. Fla. Sept. 29, 2016) (received agreement); *Joaquin v. DIRECTV Grp. Holdings, Inc.*, 2016 WL 4547150, at *3 (D. N.J. Aug. 30, 2016) (plaintiff did not point to facts to call agreement to arbitrate into issue); *Ferrie v. DIRECTV, LLC*, 2016 WL 183474, at *3-*11 (D. Conn. Jan. 12, 2016) (evidence that customer agreement mailed to plaintiff's specific address); *Clements v. DIRECTV, LLC*, 2014 WL 1266834, at *3 (W.D. Ark. Mar. 26, 2014)

*Footnote continued on next page*

11

### 3. The 2016 Customer Agreement Did Not Form Any Agreement to Arbitrate Privacy Claims Arising in Litigation.

In 2016, another court analyzed the very same arbitration clause in DIRECTV's 2016 Customer Agreement in a TCPA case between a plaintiff and AT&T, DIRECTV's parent company. *See Wexler*, 211 F. Supp. 3d at 504. Applying contract principles, including judging the words of the arbitration agreement according "to what an objective, reasonable person would have understood them to mean," the court found that the parties could not have formed a contract because the arbitration clause is unconscionably overbroad and because "no reasonable person would think that checking a box accepting the 'terms and conditions' necessary to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or she might have with the service provider[.]". *Id.* (internal citations omitted). "Rather, a reasonable person would be expressing, at most, an intent to agree to arbitrate disputes connected in some way to [his or her] service agreement[.]" *Id.*

In *Wexler*, AT&T attempted to enforce the very same arbitration clause in the 2016 Customer Agreement as DIRECTV does here, which purportedly covers:

---

*Footnote continued from previous page*

(received agreement); *Brown v. DIRECTV, LLC*, 2013 WL 3273811, at *4 (C.D. Cal. June 26, 2013) (received agreement); *Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (evidence showed that plaintiffs received agreements); *Truitt v. DIRECTV, Inc.*, 2008 WL 5054570, at *3 (E.D. La. Nov. 21, 2008) (received agreement); and *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1103-06 (C.D. Cal. 2002*)* (received agreement)).

(1) "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory"; (2) "claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising)"; (3) "claims that are currently the subject of a purported class action litigation in which you are not a member of a certified class"; and (4) "claims that may arise after the termination of this Agreement."

*Compare id.* at 501 *with* Dkt. 154-2 at Ex.4, § 9.2.  *Wexler* found that "absurd results" would ensue from enforcing a clause so untethered to the agreement.  *Id.* at 503 ("If Wexler were hit by a Mobility delivery van, or if she tripped over a dangerous condition in a Mobility store, her tort claim would have to go to arbitration . . . .  And since the arbitration clause purports to survive termination of the underlying service agreement, this obligation to arbitrate any claim whatsoever against Mobility would last forever.").

Other courts have refused to enforce arbitration clauses that are untethered to the underlying agreements.  In *Smith v. Steinkamp*, Judge Posner found that "absurd results" would occur if the scope of an arbitration clause were read as standing free from the underlying loan agreement.  318 F.3d 775, 777 (7th Cir. 2003).  For example, he took issue with the possibility that the clause could cover a wrongful death suit or conversion claim for defendant picking plaintiff's pocket. *Id.*  In *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, the court found that an arbitration clause that purported to apply to "any and all disputes" between the parties would "clearly be unconscionable" if it were to be applied to a "tort action

arising from a completely separate incident."  847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012).

The same absurdity arises here.  DIRECTV litigated this case for nearly three years prior to filing this motion.  Mr. Romero's STELA claim is based entirely on DIRECTV's conduct *in this litigation* in disclosing his private information.  It has nothing to do with any product or service DIRECTV provided, and therefore bears no relationship to anything arising under the Customer Agreements.  DIRECTV's argument furthers neither the purpose nor structure of the FAA or basic rules of contract interpretation.  *First Options*, 514 U.S. at 943 (arbitration "is a way to resolve those disputes-*but only those disputes*-that the parties have agree to submit to arbitration.").

As *Wexler* stated with respect to the *very same language*, "if a company wishes to bind its customers to something broader, it must take steps to secure something that a reasonable person would understand as an objective expression of his or her agreement."  *Wexler*, 211 F. Supp. 3d at 504.  Absent this clear expression, *Wexler* found there was no mutual intent and denied AT&T's motion to compel arbitration.  *Id.*  This same result is appropriate here.

Nor does DIRECTV's attempt to force Mr. Romero into arbitration jibe with basic notions of fairness or Due Process.  Having violated Mr. Romero's rights (and those of some 9,100 others) *in this litigation*, wholly untethered to its

14

provision of any product or service or anything else even arguably arising under the Customer Agreements, it would be manifestly unfair (and inefficient) to allow it to force those claims *out* of court and into individual arbitration.

### B.   The STELA Claims Based on DIRECTV's Conduct in this Litigation Are Beyond the Scope of the Arbitration Clause.

Before enforcing an arbitration clause, the Court must "determin[e] whether the parties agreed to arbitrate the dispute in question."  *Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337, 1340 (N.D. Ga. 2016).  Even if the Court finds that Mr. Romero agreed to any arbitration clause with DIRECTV, his claims are not within the scope of DIRECTV's arbitration clauses because: (1) the plain terms of that clauses cannot be read to encompass claims that do not relate to the parties' agreement; (2) courts have consistently refused to include claims like STELA that only tangentially relate to the arbitration agreement; (3) DIRECTV's personal data clause is mandated by STELA and does not broaden the scope of the Customer Agreement; and (4) the only agreement Mr. Romero could have agreed to—the 2014 Customer Agreement—expressly does not cover STELA claims or claims under the Communications Act of 1934.

#### 1.  *The Plain Terms of the 2014, 2015, and 2016 Customer Agreements Cannot Be Read to Include STELA Claims.*

As the *Wexler* decision makes clear, DIRECTV's 2016 arbitration clause is so broad that it cannot evidence the formation of a contract, at least with respect to

matters beyond the scope of the customer agreement containing that clause. 211 F. Supp. 3d at 504. As discussed above, this alone justifies denying DIRECTV's motion. At a minimum, *Wexler* mandates that the scope of a contract must be judged by what a "reasonable person" would understand it to mean. *Id.* At most, *Wexler* found that *the same language* should be limited to claims "connected in some way to the service agreement." *Id.* Moreover:

> [E]ven if the Court were inclined to infer a limitation to disputes arising from or related to Wexler's former service agreement with Mobility, such a limitation would not benefit AT&T. Wexler's claim is that AT&T unlawfully left her voicemails and sent her text messages. The only connection to Mobility is that Wexler's phone is on Mobility's network. In the Court's opinion, that happenstance does not mean, in any reasonable sense, that the voicemails and text messages arose out of or are related to Wexler's former service agreement with Mobility. *Id.* at 503-04.

Mr. Romero's STELA claim based on DIRECTV's litigation conduct is in no way connected to any customer service agreement with DIRECTV. Each of the 2014, 2015, and 2016 Customer Agreements plainly state that it "DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV SERVICE." *See* Dkt. 154-2, Exs. 2-4. Disclosing Mr. Romero's personal information to a third party to defend itself in litigation obviously does not relate to "receipt of and payment for DIRECTV service" or connect Mr. Romero's STELA claim to any customer agreement. Because the DIRECTV service agreements concern only receiving and paying for DIRECTV service—

nothing more—Mr. Romero's STELA claim is beyond the scope of any agreement.

### 2. *Courts Have Refused to Broaden the Scope of Arbitration Agreements to Include Unrelated Consumer Privacy Violations.*

DIRECTV's argument that the arbitration clauses are all-encompassing regardless of whether it has any logical relationship to the parties' actual agreement for receipt and payment for TV services is wrong.  The Eleventh Circuit, this District, and other courts have rejected other defendants' attempts to broaden consumer agreements in this fashion.

Mr. Romero's STELA claims are on all fours with the TCPA claims in *Holcombe*.  There, Judge May denied DIRECTV's motion to compel arbitration and found that DIRECTV's alleged conduct (robocalling a former subscriber about signing back up for DIRECTV service) was beyond the scope of DIRECTV's arbitration clause.  *Holcombe*, 159 F. Supp. 3d at 1344.  The court limited DIRECTV's arbitration clause to the terms of its relationship with the consumer. *Id.*  In other words, it found that DIRECTV's use of a consumer's information in a manner that allegedly violated his privacy rights —i.e. robocalling his telephone number—fell beyond the scope of the arbitration clause.  *Id.*  Because the facts here are little different from *Holcombe*, DIRECTV simply asserts that *Holcombe* was "wrongly decided."  *See* Mot. at 21.  That assertion is incorrect.  DIRECTV's use of consumer information in a manner that violates STELA's requirements does not fall within the scope of any arbitration clause.

The Eleventh Circuit recently rejected a defendant's argument that TCPA claims could be encompassed by a broad arbitration clause addressing any "claim, dispute or controversy…whether preexisting, present or future, that in any way arises from or relates to this Agreement." *Gamble*, 2018 WL 2446607, at *1. The Eleventh Circuit stated that "Ms. Gamble signed an agreement whereby [Defendant] NEAF promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay NEAF back—with interest—by a later date. The Arbitration Provision only applies to disputes arising out of, or related to, this agreement." *Id.* at *2; *see also Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related-with at least some directness-to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause."). Similarly, Mr. Romero's STELA claims do not arise out of any customer agreement. As the Eleventh Circuit made clear, a mere tangential relationship between the defendant's violation of a federal statute and the parties' agreement does not bring the former with the scope of the latter.

Finally, the argument that "but for" Mr. Romero being a DIRECTV subscriber, DIRECTV would not have obtained his information and thus been able to violate STELA has been rejected by courts in similar contexts. In *In re Jiffy*

*Lube*, the court rejected the argument that but for plaintiff providing his telephone number when signing a contract, he would not have a TCPA claim.  847 F. Supp. 2d at 1263.  It said: "The existence of the original contract may have been the 'but for' cause of the alleged TCPA violation, but this alone is not necessarily enough to establish that the claim arises out of or relates to the contract."  *Id.*; *see also Wagner v. Discover Bank*, No. 12-cv-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. Jan. 13, 2014) (TCPA claim does not fall under arbitration clause even though "existence of the Account may have been the 'but for' cause of the alleged violations, that is not enough to establish that the claims arise from or relate to the Account or the parties' relationship resulting from the Account.").  This Court has already recognized the disconnect between DIRECTV's STELA violations and its customer service agreements with Mr. Romero, when it held that accepting DIRECTV's construction of STELA "would allow them to characterize nearly any activity as 'necessary to render, or conduct a legitimate business activity related to, a satellite or other service'" provided by DIRECTV.  STELA Order at 18.

      3. *DIRECTV's "Personal Data" Section Does Not Bring STELA Claims Within the Scope of the Arbitration Provisions.*

DIRECTV's argument that the "Personal Data" section of its Customer Agreements "governs" the STELA claim is incorrect because STELA requires satellite carriers such as DIRECTV to provide notice if they collect personal data.

19

Mot. at 18-19.[8]  Under STELA, "a satellite carrier shall provide notice in the form of a separate, written statement to such subscriber which clearly and conspicuously informs the subscriber of—(A) the nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information; (B) the nature, frequency, and purpose of any disclosure which may be made of such information…"  47 U.S.C. § 338(i)(1).  DIRECTV's Customer Agreements accordingly state that it 'collect[s] personally identifiable information about [its] customers… The use and disclosure of this Personal Data is governed by our Privacy Policy… ."  Dkt. 154-2, Exs. 2-4 § 6.  DIRECTV being *required* by STELA to provide this notice does not convert a contract for receipt of and payment for DIRECTV services into an express agreement permitting data collection, nor does it bring DIRECTV's subsequent use of personal data in litigation within the arbitration clause.  Rather, the  Customer Agreements relate only to the receipt of and payment for DIRECTV's services.  *Id.*  Federal law requiring DIRECTV to provide notice of data collection does not immunize DIRECTV or mandate arbitration.

---

[8]  DIRECTV argues that "resolving Mr. Romero's TCPA claims" also falls under the Customer Agreement.  Mot. at 19-20.  Mr. Romero does not bring a TCPA claim.  Rather, Mr. *Cordoba*, who is not a DIRECTV customer, Third Amended Complaint, Dkt. 143, ¶ 60, has two TCPA causes of action.  *Id.* ¶¶ 122 ("Plaintiff Cordoba re-alleges…"), 139 (same).

> 4. *In the Alternative, Mr. Romero's STELA Claim is Outside the Scope of the Operative 2014 Customer Agreement.*

Mr. Romero's STELA claim also is outside the scope of the arbitration clause of the 2014 Customer Agreement.

The 2014 Customer Agreement requires DIRECTV to send subscribers a "copy of [their] new Customer Agreement containing its effective date." Dkt. 154-2, Ex. 2 § 4. As detailed *supra*, DIRECTV offers no specific proof that Mr. Romero ever received a copy of the 2015 or 2016 Customer Agreements. At most, DIRECTV points to the broad assertion that it emailed updated Customer Agreements to all customers or mailed the agreement if the customer did not have a valid email or had chosen not to receive emails from DIRECTV. Lateef Decl., Dkt. 70-7 ¶¶ 4-6. The acceptance of subsequent terms and conditions is specifically tied to receiving the new Customer Agreement. Dkt. 154-2, Ex. 2 § 4 ("If you elect not to cancel your Service ***after receiving a new Customer Agreement***, your continued receipt of Service constitutes acceptance of the changed terms and conditions.") (emphasis added). Without receiving the new Customer Agreement, there is no acceptance of the changed terms and conditions.

In similar circumstances, the Maryland Court of Special Appeals and Court of Appeals both held that the prior customer agreement governed, not the updated DIRECTV customer agreement. In *Mattingly v. Hughes Electronics Corp.*, the Maryland Court of Special Appeals held that a plaintiff did not assent to an

updated DIRECTV Customer Agreement containing an arbitration clause where he was not given the contractually mandated notice of the new agreement.  147 Md. App. at 636.  The court held that "DIRECTV agreed that Mattingly would be bound by any changes that it made to the 1996 Agreement only if DIRECTV gave him some sort of written notice advising him about a particular change, and identifying that change clearly enough that he could find and review it in the revised agreement."  *Id.*  The Court of Appeals affirmed the Maryland Court of Special Appeals holding that "As respondent was not given the proper notice of the changes to his initial customer agreement with petitioner, respondent could not have constructively assented to the arbitration provision…and thus the terms of the initial customer agreement, without an arbitration provision, control."  *DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 635 (Md. 2003).  The same result holds true here—Mr. Romero had a contractual right to receive the 2015 Customer Agreement and 2016 Customer Agreement in order to be deemed to have assented to their new terms.  Because DIRECTV fails to prove it provided Mr. Romero with the 2015 and 2016 Customer Agreements, he cannot have accepted the changed terms and conditions in those agreements.

The failure to notify Mr. Romero is key because the STELA claim plainly falls outside of the narrower 2014 Customer Agreement arbitration clause.  That clause is explicitly limited to "any legal or equitable claim relating to this

Agreement." Dkt. 154-2, Ex. 2 § 9.[9]  As discussed in detail above, STELA claims

do not relate to Mr. Romero's agreement.

Moreover, the 2014 clause specifically makes an exception for "any dispute

involving a violation of the Communications Act of 1934." *Id.*  Since STELA is

section 338 of the Communications Act, Mr. Romero's claim is explicitly exempt.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628

(1985) (holding that parties can "exclude[e] statutory claims from the scope of an

agreement to arbitrate").[10]  Accordingly, because the 2014 Customer Agreement is

the only agreement that DIRECTV could possibly enforce against Mr. Romero,

and its arbitration clause does not possibly include STELA claims, DIRECTV's

motion must be denied for that independent reason.

## C.   The Arbitration Clauses Are Procedurally and Substantively Unconscionable.

The FAA preserves state-law grounds for the revocation of any contract,

including unconscionability.  *See, e.g.*, *In re Checking Account*, 685 F.3d at 1276-

79 (post-*Concepcion*).  Under Maryland law, courts look for "'extreme unfairness'

which is made evident by "(1) one party's lack of meaningful choice, and (2)

---

[9] The 2015 clause is also limited to "any legal or equitable claim relating to this Agreement." Dkt. 154-2, Ex. 3 § 9.  As explained above, the terms of the 2016 Customer Agreement must relate to the agreement with Mr. Romero to avoid "absurd results."

[10]  Even if DIRECTV argues that the 2014 Customer Agreement only excludes claims under *Section 605* of the Communications Act, the agreement's language is at best ambiguous and should be construed against DIRECTV, the unilateral drafter.  *See Functional Products Trading, S.A. v. I-Grain, LLC*, 12-CV-0355-JEC-AJB, 2012 WL 13013592, at *12 (N.D. Ga. Mar. 19, 2012) ("one must construe ambiguous contract provisions against the drafter").

contractual terms that unreasonably favor the other party." *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (quoting BLACK's LAW DICTIONARY 1560 (8th ed. 2004)).  Under Maryland law, a "contract is unconscionable only if it is both procedurally and substantively unconscionable." *Mould v. NJG Food Serv. Inc.*, 986 F. Supp. 2d 674, 678 (D. Md. 2013) (post-*Concepcion*).

> ### 1. *The Arbitration Clauses Are Procedurally Unconscionable.*

DIRECTV arbitration clauses with Mr. Romero are procedurally unconscionable because they are contracts of adhesion.  The Customer Agreements were unilaterally drafted by DIRECTV, in DIRECTV's favor, and Mr. Romero had no opportunity to negotiate their terms.  In fact, DIRECTV's 2014, 2015, and 2016 Customer Agreements explicitly state that "If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided for in Section 5, as we cannot offer Service to different customers on different terms, among other reasons."  Dkt. 154-2, Ex. 3 § 4; *see also id.* at Ex. 4 § 4 (same).  By definition, DIRECTV made Mr. Romero a take-it-or-leave-it offer.

Under Maryland law, "a finding that a contract is one of adhesion is sufficient to establish procedural unconscionability." *Mould*, 986 F. Supp. 2d at 678 (citing *Walther*, 872 A.2d at 746-47).  Because DIRECTV, the dominant party, drafted this contract and presented it on a take-it-or-leave-it basis, the arbitration clauses are procedural unconscionable.  *See Jones v. Genius Credit Mgmt. Corp.*,

353 F. Supp. 2d 598, 601 (D. Md. 2005).

      *2.  The Arbitration Clauses Are Substantively Unconscionable.*

The arbitration clauses' absurd overbreadth renders them substantively

unconscionable.  As *Jiffy Lube* held, "a suit by [plaintiff] against [defendant]

regarding a tort action arising from a completely separate incident could not be

forced into arbitration—such a clause would clearly be unconscionable."  847 F.

Supp. 2d at 1263 (post-*Concepcion*); *Smith*, 318 F.3d at 777-78.

Because DIRECTV's arbitration clauses are procedurally and substantively

unconscionable, they cannot be enforced and the motion must be denied.

    **D.**   <u>**This Litigation Should Not Be Stayed Pending DIRECTV's**</u>
<u>**Motion.**</u>

Under Eleventh Circuit precedent, motions to stay pending the outcome of a

motion to compel arbitration are only appropriate where the arbitration motion is

"clearly meritorious."  *Kennedy v. Compucredit Holdings Corp.*, 3:12-cv-1128-J-

25TEM, 2013 WL 12157869, at *2 (M.D. Fla. Feb. 28, 2013); *see also Eternal*

*Strategies, LLC*, 2017 WL 7311849, at *2.  Because Defendant's motion to compel

is not clearly meritorious—nor meritorious at all—there is no basis to stay

discovery pending the Court's resolution of this motion.  The reasoning of the

Court's order denying DIRECTV's stay request remains sound.  *See* Dkt. 151.

**V.**   <u>**CONCLUSION**</u>

For the foregoing reasons, DIRECTV's Motion should be DENIED.

Respectfully submitted,

Dated:  July 19, 2018

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson (*pro hac vice*)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Jonathan D. Selbin (*pro hac vice*)
jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

26

**L. LIN WOOD, P.C.**
L. Lin Wood
State Bar No. 774588
lwood@linwoodlaw.com
Nicole Jennings Wade
State Bar No. 390922
nwade@linwoodlaw.com
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@linwoodlaw.com
G. Taylor Wilson
State Bar No. 460781
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2400
Atlanta, GA 30309
Telephone:  (404) 891-1402
Facsimile:  (404) 506-9111

**MEYER WILSON CO., LPA**
Matthew R. Wilson (pro hac vice)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (pro hac vice)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

**KING & YAKLIN, LLP**
Stephen A. Yaklin
State Bar No. 780125
syaklin@kingyaklin.com
Matthew M. Wilkins
Georgia Bar No. 142291
mwilkins@kingyaklin.com
192 Anderson Street, Suite 125
Marietta, Georgia 30060
Telephone:  (770) 424-9235
Facsimile:  (770) 424-9239

27

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing PLAINTIFFS' OPPOSITION TO DIRECTV'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION was prepared in 14-point Times New Roman Font.

July 19, 2018.

*/s/ Daniel M. Hutchinson*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing PLAINTIFFS'

OPPOSITION TO DIRECTV'S MOTION TO COMPEL ARBITRATION AND

TO STAY LITIGATION to be electronically filed with the Clerk of the Court

using the CM/ECF system, which will automatically send notification of such

filing to all attorneys of record.

July 19, 2018.

*/s/ Daniel M. Hutchinson*