**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **SEBASTIAN CORDOBA, individually and on behalf of all others similarly situated, and RENE ROMERO, individually and behalf of all others similarly situated,** | **CIVIL ACTION FILE** |
| **Plaintiffs,** | **NO. 1:15-CV-3755-MHC** |
| **v.** | |
| **DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc.,** | |
| **Defendant.** | |

## <u>ORDER</u>

This matter comes before the Court on Plaintiffs' Renewed Motion for Class Certification Addressing Class Member Standing ("Pl.'s Renewed Mot.") [Doc. 183].

## I.    BACKGROUND

### A.    Factual Background

This action involves a proposed class action lawsuit against Defendant DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc.

("DIRECTV") for, in relevant part, violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and related rules and regulations promulgated by the Federal Communication Commission, 47 C.F.R. § 64.1200. Third Am. Class Action Compl. ("Third Am. Compl.") [Doc. 143] ¶ 2.  According to the allegations in the Third Amended Complaint, DIRECTV engaged Telecel Marketing Solutions, Inc. ("Telecel")—which operates call centers in El Salvador and Maryland—to market DIRECTV's products and services by telephone beginning in or around 2003.  Third Am. Compl. ¶ 4, Tr. Dep. of Fredy Diaz (Sept. 21, 2016) ("Diaz Dep.") [Doc. 64-1] at 76.  Telecel placed 60,506 telephone calls to 24,566 unique telephone numbers for the purpose of selling or encouraging the sale of DIRECTV products or services, pursuant to a contract between DIRECTV and Telecel.  Third Am. Compl. ¶ 48.

Plaintiff Sebastian Cordoba ("Cordoba") alleges that, at all times relevant to this lawsuit, Telecel did not institute the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d)—specifically, that Telecel (1) did not keep an internal do-not-call list; (2) did not maintain a written policy for maintaining an internal do-not-call list; (3) did not train its employees with respect to the existence of, or adherence to, an internal do-not-call list; (4) did not record requests not to be called; and (5) neither adhered to requests not to be called nor "scrubbed" these

requests against a list of persons who requested not to be called prior to initiating

contact with consumers.  Id. ¶¶ 5, 50-54; Diaz Dep. at 106.  Cordoba alleges that

between March 27, 2015, and March 3, 2016, Telecel (1) initiated at least two calls

to 16,890 persons without instituting the mandatory minimum procedures required

by 47 C.F.R. § 64.1200(d),[1] and (2) initiated at least two calls to 926 persons on

the National Do Not Call Registry.  Third Am. Compl. ¶¶ 58-59.  Cordoba alleges

that DIRECTV was aware that Telecel was placing these calls, Telecel made each

call within the scope of its actual authority from DIRECTV, and DIRECTV

ratified Telecel's marketing activities including each call that is the subject of this

action.  Id. ¶¶ 55-57.

### B.    Procedural Background

On July 12, 2017, the Court granted Cordoba's Motion for Class

Certification [Doc. 63], certifying two representative classes: the Internal Do Not

Call ("IDNC") Class and the National Do Not Call ("NDNC") Class.  Cordoba v.

DirecTV, LLC, 320 F.R.D. 582, 589, 603 (N.D. Ga. 2017), vacated in part, 942

F.3d 1259 (11th Cir. 2019).  DIRECTV petitioned the United States Court of

Appeals for the Eleventh Circuit for permission to appeal pursuant to Federal Rule

---

[1] Cordoba also alleges that "Telecel's calling data shows 52,810 such calls to
16,870 unique numbers."  Third Am. Compl. ¶ 5.

of Civil Procedure 23(f).  See Order, DIRECTV, LLC v. Cordoba, No. 17-90020-J

(11th Cir. May 21, 2018) [Doc. 139].  The Eleventh Circuit granted DIRECTV

permission to appeal certification of the IDNC Class,[2] as to the question of

"[w]hether a recipient of a telemarketing call who did not request to be placed on a

caller's internal [do-not-call] list has standing under Article III to maintain a claim

that the caller failed to institute appropriate internal [do-not-call] list procedures."

Id.; see also Def.'s Rule 23(f) Pet. for Permission to Appeal from an Order on

Class Certification at 6, Cordoba v. DIRECTV, LLC, No. 17-90020-J (11th Cir.

July 26, 2017).

On November 15, 2019, the Eleventh Circuit vacated this Court's

certification of the IDNC class.  See Cordoba v. DIRECTV, LLC, 942 F.3d 1259,

1277 (11th Cir. 2019).  Following issuance of the Eleventh Circuit's mandate, this

Court denied Cordoba's Motion for Class Certification.  Dec. 18, 2019, Order

[Doc. 180].  On January 31, 2020, Cordoba renewed his motion to certify the

IDNC Class.  Pl.'s Renewed Mot. at 1.

---

[2] The IDNC was defined as "[a]ll persons within the United States who received
more than one telephone call on or after October 27, 2011, from Telecel on behalf
of DIRECTV for the purpose of selling or encouraging the sale of DIRECTV's
goods and/or services."  Cordoba, 320 F.R.D. at 589.

## II.   LEGAL STANDARD

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'"  Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)[3]).

If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then meet the requirements listed in Federal Rule of Civil Procedure 23.  "A class action may be maintained only when it satisfies all the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the alternative requirements of Rule 23(b)."  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted).  Rule 23(a) requires Plaintiffs to show that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

    (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  "Those four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims."  <u>Piazza v. Ebsco Indus., Inc.</u>, 273 F.3d 1341, 1346 (11th Cir. 2001) (internal punctuation omitted).

If Rule 23(a) is satisfied, Rule 23(b) further provides that a class action may be maintained only where one of the three following requirements is met:

    (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation, <u>see</u> FED. R. CIV. P. 23(b)(1);

    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole, <u>see</u> FED. R. CIV. P. 23(b)(2); or

    (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy, <u>see</u> FED. R. CIV. P. 23(b)(3).

The party seeking class certification bears the burden of showing that these requirements are met.  <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d 1181,

1187 (11th Cir. 2003).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and the merits of a suit may be considered "only to the extent" they pertain to the Rule 23 analysis. Amgen Inc. v. Conn. Retirement Plans & Tr. Funds, 133 S. Ct. 1184, 1194-95 (2013). Nevertheless, courts must perform a "rigorous analysis" to ensure that Rule 23's requirements are satisfied before certifying a class, Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982), even where some of the requirements are not in dispute, Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003), or where the Court must decide disputed questions of fact that bear on the inquiry, Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233–34 (11th Cir. 2016). See also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). This "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying

claim." M. H. v. Berry, No. 1:15-CV-1427-TWT, 2017 WL 2570262, at *3 (N.D.

Ga. June 14, 2017) (citing Dukes, 564 U.S. at 351-52).

## III.   DISCUSSION

DIRECTV's appeal concerned the unnamed IDNC Class members' standing

in light of Rule 23(b)(3)'s predominance factor.  Cordoba, 942 F.3d at 1273-74

& n.4.  The Eleventh Circuit noted that the IDNC Class' definition was likely

overbroad and vacated certification of the IDNC Class "[i]nasmuch as the district

court did not address the significant individualized standing question when it

certified the class under Rule 23(b)(3)."  Id. at 1276.  The court held

> only (1) that calls placed in violation of the Telephone Consumer
> Protection Act are injuries in fact under the framework explicated by
> the Supreme Court in Lujan[ v. Defs. of Wildlife, 504 U.S. 555 (1992)]
> and Spokeo[, Inc. v. Robins, 136 S. Ct. 1540 (2016)] and our own case
> law, but (2) that recipients of such calls who never asked the
> telemarketer to stop calling them do not have standing to sue over
> violations of the internal do-not-call list regulations because their
> injuries are not fairly traceable to the telemarketer's failure to maintain
> an internal do-not-call list.

Id.  Because the Eleventh Circuit did not grant DIRECTV permission to appeal

certification of the NDNC Class, the NDNC Class remains certified for the reasons

discussed in this Court's order granting Cordoba's Motion for Class Certification.

See generally Cordoba, 320 F.R.D. at 593-603.

Cordoba now seeks certification of an IDNC Class comprised of "[a]ll

persons within the United States who, from March 27, 2015, through the present, received more than one telephone call from Telecel for the purpose of selling or attempting to sell DIRECTV's services." Pl.'s Renewed Mot. at 10. The Eleventh Circuit upheld this Court's finding that Cordoba has standing as the class representative. Cordoba, 942 F.3d at 1264; see also Cordoba, 320 F.R.D. at 594-97. The Eleventh Circuit focused on the issue of unnamed IDNC Class members' standing in light of Rule 23(b)(3)'s predominance factor. Cordoba, 942 F.3d at 1273-74 & n.4. Because the Eleventh Circuit did not address this Court's remaining findings, they need not be relitigated and the Court reaffirms them here. Specifically, the Eleventh Circuit did not address this Court's finding that Rule 23(a) was satisfied or that a class action was superior to other available methods for adjudication of the controversy. Thus, Cordoba may maintain a class action for the IDNC Class if the Court finds that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy." See FED. R. CIV. P. 23(b)(3).

The Eleventh Circuit instructed that, when considering whether common issues predominate,

> the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the

> common issues in the case, when it appears that a large portion of the class does not have standing, as it seems at first blush here, and making that determination for these members of the class will require individualized inquiries.

Cordoba, 942 F.3d at 1277.  Article III standing consists of three elements: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560-61.  The Eleventh Circuit held that receipt of more than one telemarketing call "is enough to establish the injury in fact prong of standing for Cordoba and all of the absent class members who received calls from Telecel."  Cordoba, 942 F.3d at 1270.  Since each IDNC Class member received "more than one" such call, injury in fact is established on a class-wide basis.  In addition, the IDNC Class members' injuries may be redressed through statutory damages.  47 U.S.C. § 227(c)(5).

Thus, the only remaining issue is whether that this injury is fairly traceable to DIRECTV's conduct can be determined on a class-wide basis.  The Eleventh Circuit held that the injuries of call recipients who do not ask a telemarketer to stop calling are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list.  Cordoba, 942 F.3d at 1276.  Accordingly, this Court must consider what proportion of IDNC Class members asked Telecel not to call them anymore and how the class members intend to prove that they made these requests.  Id.

at 1275.

> If most class members [asked Telecel not to call them anymore], or if
> there is a plausible straightforward method to sort them out at the back
> end of the case, then the class might appropriately proceed as it is
> currently defined.  If, however, few made these requests, or if it will be
> extraordinarily difficult to identify those who did, then the class would
> be overbroad and these individualized determinations might
> overwhelm issues common to the class.

Id.  "That is not to say that a class action cannot move forward if there are some

uninjured members in the class as it is currently defined."  Id. at 1274; see also id.

at 1276-77 (citation omitted) ("We do not hold today that a court is required to

ensure that the class definition does not include any individuals who do not have

standing before certifying a class.  Such a rule would run the risk of promoting so-

called 'fail-safe' classes, whose membership can only be determined after the

entire case has been litigated and the court can determine who actually suffered an

injury.").  However, "there is a meaningful difference between a class with a few

members who might not have suffered an injury traceable to the defendants and a

class with potentially many more, even a majority, who do not have Article III

standing."  Id. at 1277.

Cordoba proposes two methods this Court can use "to make its traceability

determination 'at the back end'" of the case: (1) review evidence in Telecel's

records showing that most class members made internal do-not-call requests, or

11

(2) allow IDNC Class members to self-identify in a survey whether they would have been placed on an internal do-not-call list if DIRECTV had maintained one. Pl.'s Renewed Mot. at 12.  As explained below, neither of these methods enable the Court to determine now, when considering certification, how many or what proportion of the IDNC Class members asked Telecel not to call them anymore. While each class member's standing may be confirmed at a later time, the Eleventh Circuit has made clear that this Court "must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case." Cordoba, 942 F.3d at 1277.  The Court cannot do so without some evidence that IDNC Class members asked Telecel not to call them.

Cordoba's first proposed method—look to Telecel's records—cannot work because, as Cordoba alleges in the Third Amended Complaint, Telecel did not maintain an internal do-not-call list and did not record requests not to be called.[4] Cordoba contends that certification is appropriate because "defendant has not provided any evidence that even a single IDNC Class member provided express

---

[4] The Court notes that DIRECTV asserts in its Opposition that "[t]here is no evidence that DIRECTV fails to keep an internal do-not-call list (and, in fact, it keeps one)."  Def.'s Opp'n at 18.  Nothing indicates how many of the 16,870 (or 16,890) unique numbers that Telecel called more than once were on DIRECTV's internal do-not-call list.

prior written consent" to be called.  Pl.'s Renewed Mot. at 18.  Cordoba relies upon

47 C.F.R. § 64.1200(c) & f(8) for the proposition that IDNC Class members' prior

express written consent was required.  See id. at 17-18.

The first cited subsection of the regulation states, in relevant part:

(c) No person or entity shall initiate any telephone solicitation to:
. . . .
(2) A residential telephone subscriber who has registered his or her telephone number <u>on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government</u>.  Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.  Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:
. . . .
(ii) It has obtained the subscriber's prior express invitation or permission.  Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed[.]

47 C.F.R. § 64.100(c)(2)(ii) (emphasis added).  This provision is inapplicable to

the IDNC class; it governs telephone solicitations with respect to the national do-

not-call registry and is relevant only to the NDNC class.

Cordoba also cites to the regulation's definition of "prior express written

consent."  See id. § 64.100(f)(8).  However, that term is used only in subsection

13

(a) of this regulation, which states, in relevant part:

> (a) No person or entity may:
>
>> . . . .
>>
>> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, <u>using an automatic telephone dialing system or an artificial or prerecorded voice</u>, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . .
>>
>> (3) Initiate any telephone call to any residential line <u>using an artificial or prerecorded voice</u> to deliver a message without the prior express written consent of the called party, unless . . . .
>>
>> . . . .
>>
>> (7) Abandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign. . . .
>>
>>> . . . .
>>>
>>> (ii) A call for telemarketing purposes <u>that delivers an artificial or prerecorded voice message</u> to a residential telephone line or to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section after the subscriber to such line has granted prior express written consent for the call to be made shall not be considered an abandoned call if the message begins within two (2) seconds of the called person's completed greeting.

<u>Id.</u> § 64.100(a) (emphasis added).

It is clear from the regulation that prior express written consent is required before certain calls can be made using an automatic telephone dialing system or artificial or prerecorded voices. However, as DIRECTV points out, Cordoba does not allege that Telecel made calls using an autodialer or a prerecorded voice. The

14

Third Amended Complaint alleges only, in relevant part, that DIRECTV failed to implement mandatory minimum procedures for making telemarketing calls in violation of 47 C.F.R. § 64.1200(d).  Third Am. Compl. ¶ 5.  Thus, even if DIRECTV had no prior written consents from IDNC Class members, this does not indicate that some proportion of the IDNC Class asked Telecel not to call them.

Cordoba's second method fares no better because it would not provide any indication now that some proportion of the IDNC Class asked Telecel not to call them.  Cordoba emphasizes that the survey "is a common, reliable, reasonable, and administratively feasible method to ensure IDNC members have standing before awarding damages."  Pl.'s Renewed Mot. at 21.  It may be.  The problem, however, is that a survey administered after resolving this case on the merits does not aid the Court in determining now whether some proportion of the IDNC has standing and thus whether common issues of law and fact predominate.

It is true that the INDC Class members' standing is just one factor to be considered in determining whether common factual and legal issues predominate over individual ones.  However, in vacating this Court's prior certification order, the Eleventh Circuit stated that "[t]he record on appeal is sorely lacking in information" about "how many class members (or what proportion of them) asked Telecel not to call them anymore, like Cordoba did[.]"  <u>Cordoba</u>, 942 F.3d at 1275.

15

The court did not "know enough to say one way or the other." Id.  This Court

remains unable to answer the Eleventh Circuit's first "key question"; without doing

so, it cannot grant Plaintiff's Renewed Motion to certify the IDNC class. See id.

("If, however, few made these requests, or if it will be extraordinarily difficult to

identify those who did, then the class would be overbroad and these individualized

determinations might overwhelm issues common to the class.").  To be clear, the

Court expresses no view on whether Cordoba's proposed survey would make it

difficult to identify which class members asked Telecel not to call them anymore

and thus confirm each class member's standing before awarding relief.  That

remains an open question.  Rather, the Court is unable to certify the IDNC Class at

this time because there is no indication in the record how many or what proportion

of the proposed IDNC Class members asked Telecel not to call them anymore.

Cordoba also contends that DIRECTV's failure to maintain the required

records warrants burden shifting as a sanction.  Pl.'s Renewed Mot. at 22.

Cordoba contends that DIRECTV should be sanctioned by "(1) burden-shifting

from Plaintiff to DIRECTV on the issue of whether the IDNC Class members

consented to be called, (2) summary adjudication against DIRECTV on this issue,

and/or (3) full payment of all costs to administer a class member survey." Id.

at 22.  DIRECTV contends that this argument is barred by the law of the case

because Cordoba made this argument to the Eleventh Circuit, which "necessarily rejected it."  Def.'s Opp'n at 16.

> Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.  Furthermore, the law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication.

This That And The Other Gift And Tobacco, Inc. v. Cobb Cty., 439 F.3d 1275, 1283 (11th Cir. 2006) (internal quotation marks and citation omitted).  "An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument."  United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005) (citations omitted).  This includes where the court "did not address that argument in so many words, or in any words for that matter, but we did reject it 'by necessary implication,' which is enough under our decisions to bring the law of the case doctrine to bear."  Id. (citations omitted).

DIRECTV contends that the Eleventh Circuit's holding necessarily rejected Cordoba's argument "that the standing of all class members should be presumed since DIRECTV failed to maintain required records—the same argument Cordoba makes in his renewed motion."  Def.'s Opp'n at 17-18.  Cordoba contends that the Eleventh Circuit could not have rejected his burden-shifting argument because he "did not make it."  Reply in Supp. of Pl.'s Renewed Mot. for Class Certification

17

Addressing Class Member Standing [Doc. 195] ("Pl.'s Reply") at 7.  On appeal,

Cordoba argued that "this [c]ourt may, for purposes of class certification, presume

that all class members have standing because DIRECTV failed to maintain records.

The alternative is untenable. . . . Plaintiff respectfully submits that DIRECTV, and

only DIRECTV, must bear the burden of its decision not to keep the required

records."  Br. of Pls.-Appellees at 18-19, Cordoba v. DIRECTV, LLC, No.

18-12077-J (11th Cir. Aug. 1, 2018).  Pages eighteen through twenty-three

elaborate on this argument.  See id. at 18-23.  Accordingly, the Court finds that

Cordoba previously made the burden-shifting argument he advances here.

DIRECTV admits that the Eleventh Circuit did not "expressly address

Cordoba's argument," but contends that it "necessarily rejected it through its

holding."  Def.'s Opp'n at 17.  The Court agrees.  The Eleventh Circuit directed

this Court on remand to consider the unnamed class members' standing "under

Rule 23(b)(3)'s predominance factor."  Cordoba, 942 F.3d at 1273-74, 1277.  The

Eleventh Circuit observed that the record "does not give us any indication of how

many members of the class would have been on the internal do-not-call list if it had

existed, and thus it does not tell us how many members of the putative class have

standing to sue."  Id. at 1277 (emphasis added).  The necessary implication is that

the Court may not presume for purposes of class certification that the members of

18

the IDNC Class have standing.  In other words, the burden does not shift to DIRECTV to prove that IDNC class members consented to be called.

If the Eleventh Circuit had accepted Cordoba's argument, it would not have remanded the case with directions for the court to answer the "key question" of "how many class members (or what proportion of them) asked Telecel not to call them anymore, like Cordoba did?"  See id. at 1275.  DIRECTV admitted on appeal that Telecel did not keep an internal do-not-call list; thus, had the Eleventh Circuit adopted Cordoba's argument and presumed that all IDNC Class members had asked Telecel not to call them anymore, the court would not have vacated certification of the IDNC Class due to concerns that many class members may lack standing.  See id. at 1264 ("But the fact that many, perhaps most, members of the class may lack standing is extremely important to the class certification decision.").  Since Cordoba's burden-shifting argument is barred by the law of the case doctrine, shifting the burden to DIRECTV to prove that IDNC Class members consented to be called is inappropriate.[5]

---

[5] This does not foreclose Cordoba's argument that when confirming each class member's standing before awarding relief, the court can infer from class members' statements that they asked Telecel not to call them anymore and DIRECTV then has the burden to prove that the class member did not do so.  See generally Pl.'s Renewed Mot. at 25.

Cordoba contends, without any explanation or citation to authority, that estoppel or a summary adjudication on the issue of whether the IDNC Class members consented to be called is appropriate.  Pl.'s Renewed Mot. at 23.  Cordoba also contends that sanctions for spoliation are appropriate.  Id.[6]

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011) (internal quotation marks omitted) (quoting Graff v. Baja Marine Corp., 310 F. App'x. 298, 301 (11th Cir. 2009)).  "Spoliation sanctions are 'intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.'"  United States v. Lanzon, 639 F.3d 1293, 1302 (11th Cir. 2011) (quoting Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005)).  Potential sanctions include: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of

---

[6] In his Reply, Cordoba contends for the first time that the Court could sanction DIRECTV pursuant to Federal Rule of Civil Procedure 37 for its failure to preserve electronically stored information.  See Pl.'s Reply at 8.  However, Rule 37 permits the court to order measures to cure prejudice where, under certain circumstances, "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost."  FED. R. CIV. P. 37(e).  Cordoba does not contend, and nothing in the record indicates, that records of IDNC Class members' do-not-call requests were lost during or in anticipation of litigation.

evidence which raises a presumption against the spoliator.  Flury, 427 F.3d at 945.

"A party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time; (2) the defendant had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff's prima facie case."  Marshall v. Dentfirst, P.C., 313 F.R.D. 691, 694 (N.D. Ga. 2016) (citing In Re Delta/AirTran, 770 F. Supp. 2d at 1305).  In considering the particular spoliation sanction to impose, this Court must consider the following factors: (1) whether Plaintiffs were prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether Defendants acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence provided by the spoliator was not excluded.  Flury, 427 F.3d at 945.  "With regard to the fourth factor, [the] law does not require a showing of malice in order to find bad faith.  The court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party."  Id. at 946 (citations omitted).  "The sanctions extend to negligent, reckless, and intentional evidence destruction."  Scruggs v. Int'l Paper Co., No. CV411-203, 2012 WL 1899414, at *1 (S.D. Ga. May 24, 2012).  Only under "extraordinary" circumstances is a sanction of dismissal appropriate.  Id.

Cordoba alleges that DIRECTV spoliated records that show the IDNC Class

members' do-not-call requests.  Pl.'s Renewed Mot. at 24.  Pretermitting whether

DIRECTV had a duty to preserve this evidence and whether it is critical to

Cordoba's *prima facia* case, Cordoba has not shown that this evidence ever

existed.  On the contrary, the Third Amended Complaint alleges that Telecel did

not keep an internal do-not-call list and did not record requests not to be called.

Third Am. Compl. ¶¶ 50, 53.  Furthermore, Telecel's owner, President, and Chief

Executive Officer testified at his deposition that Telecel never maintained such a

list.  Diaz Dep. at 11, 106, 114-14; see also Aff. of Fredy Diaz [Doc. 70-8] ¶ 7.

Because Cordoba has not shown that records of IDNC Class members' do-not-call

requests ever existed, Cordoba has not shown that spoliation sanctions are

appropriate.[7]

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Renewed

Motion for Class Certification Addressing Class Member Standing [Doc. 183] is

---

[7] Cordoba also contends that if the Court makes its traceability determination on
the back end using a survey, it should order DIRECTV to pay the survey
administration costs.  Pl.'s Renewed Mot. at 24-25.  Because the Court finds that a
survey administered at some later time before awarding relief would not help the
Court determine now whether common issues of law and fact predominate, it need
not address this argument.

**DENIED WITHOUT PREJUDICE**.

      **IT IS SO ORDERED** this 23rd day of July, 2020.

_____

MARK H. COHEN
United States District Judge